# LAW OFFICES OF JOEL B. RUDIN, P.C.

600 FIFTH AVENUE
10TH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN

STEVEN R. AQUINO

GEORGE R. GOLTZER
(Of Counsel)

JABBAR COLLINS
(Legal Analyst)

September 15, 2015

**ECF**

Honorable Allyne R. Ross
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:   *Nnodimele v. City of New York*
            No. 13 Civ. 3461(ARR)(RLM)

Dear Judge Ross:

     This office represents Martin Nnodimele, the Plaintiff in the above-referenced action. We enclose for the Court's consideration a copy of the Second Circuit's recent decision in *Morse v. Fusto*, No. 13-4074, which is relevant to Plaintiff's § 1983 evidence manufacturing claims. Thank you.

                                Respectfully submitted,

                                Joel B. Rudin

JBR/sa
Encl.

cc:   Karl J. Ashanti, Esq.
       Susan Scharfstein, Esq. (by ECF)
       Attorneys for Defendants

2015 WL 5294862
Only the Westlaw citation is currently available.
United States Court of Appeals,
Second Circuit.

Dr. Leonard MORSE, Plaintiff–Appellee,
v.
John FUSTO and Jose Castillo,
Defendants–Appellants.\*

Docket No. 13–4074.  |  Argued: Oct. 7, 2014.  |  Decided: Sept. 11, 2015.

The defendants, John Fusto, a former prosecutor with the New York State Attorney General's Office Medicaid Fraud Control Unit, and Jose Castillo, a former audit-investigator with the Unit, appeal from the September 16, 2013, judgment of the United States District Court for the Eastern District of New York (Carol Bagley Amon, *Chief Judge* ) denying their motions for judgment as a matter of law and a new trial. The defendants argue that the district court erred in failing to accord them qualified immunity as a matter of law and in failing to order a new trial as a result of the court's conclusion that one of the factual bases offered in support of the plaintiff's claims lacked a sufficient evidentiary basis to permit it to be considered by the jury for that purpose. We conclude that the defendants were not entitled to qualified immunity because the plaintiff's constitutional rights were violated and the law giving rise to the violation was clearly established at the time of the violation. We also conclude that the district court did not err by declining to order a new trial despite its conclusion that one of the factual assertions upon which the verdict was based was insufficiently supported by the evidence.
We therefore AFFIRM the judgment of the district court.

**Attorneys and Law Firms**

Cecilia C. Chang, New York City Law Department, Andrew W. Amend, New York State Office of the Attorney General, New York, NY, for Defendants–Appellants.[1]

Jon Norinsberg, Law Offices of Jon L. Norinsberg, New York, NY, for Plaintiff–Appellee.

Before JACOBS, SACK, and DRONEY, Circuit Judges.

**Opinion**

SACK, Circuit Judge:

\*1 This is an appeal from a judgment of the United States District Court for the Eastern District of New York (Carol Bagley Amon, *Chief Judge* ) in an action involving the alleged fraudulent alteration of evidence by the defendants, John Fusto, then a Special Assistant Attorney General with the Medicaid Fraud Control Unit ("MFCU") of the New York State Attorney General's Office, and Jose Castillo, then an audit-investigator with the MFCU, during the course of MFCU's investigation of the plaintiff, Dr. Leonard Morse.

The defendants suspected that Morse, a dentist with a practice in Brooklyn, New York, was perpetrating Medicaid fraud by submitting false billing to Medicaid. During the course of their investigation, the defendants conducted an audit of Morse's billings and created spreadsheet summary charts containing the billing details of eight of his patients. Those charts were later presented to a Kings County, New York, grand jury. Based in part on that evidence, Morse was indicted by the grand jury on one count of Grand Larceny in the First Degree and eleven counts of Offering a False Instrument for Filing in the First Degree. Although Morse was later acquitted of all charges, as a result of the prosecution, he lost his dental practice and sustained other injuries.

After his acquittal, Morse filed the instant action against the defendants in federal district court in Brooklyn alleging that the defendants deprived him of his constitutional right to a fair trial by intentionally manipulating the information contained on the spreadsheet summary charts before they were presented to the grand jury in order to create the false impression that Morse billed Medicaid for dental services that he did not provide.

A jury rendered a verdict in his favor, and the defendants moved for judgment as a matter of law under Fed.R.Civ.P. 50 or, in the alternative, a new trial under Fed.R.Civ.P. 59. The district court concluded that one of the factual bases underpinning Morse's claim was not sufficiently supported by the evidence to have been properly considered by the jury in reaching its verdict, but nonetheless denied both of the defendants' motions.

On appeal, the defendants principally contend that their conduct was not clearly prohibited by the Constitution, and that they are therefore entitled to qualified immunity as a matter of law. The defendants also assert that the district court should have ordered a new trial pursuant to the so-called general-verdict rule because the court decided as a matter of law that one of the three factual bases

upon which Morse's allegation that the defendants "false[ly] or fraudulently altered documents" rested lacked a legally sufficient basis in the evidence.

We reject these challenges. As the district court held in a careful, detailed, and persuasive post-trial opinion, *Morse v. Fusto,* No. 07–CV–4793, 2013 WL 4647603, at *7, 2013 U.S. Dist. LEXIS 123823, at *18 (E.D.N.Y. Aug. 29, 2013), the actions of the defendants upon which Morse bases his claims were the knowing creation of false or misleading evidence by a government officer acting in an investigative capacity. We have held that such activity by a government official qualifies as an unconstitutional deprivation of the victim's rights. This right was, moreover, clearly established at the time of the defendants' conduct. The defendants are therefore not entitled to qualified immunity. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993) (immunity for prosecutors performing investigative functions is not absolute). We also conclude that the defendants waived their general-verdict rule argument and are therefore not entitled to a new trial despite the district court's conclusion that one of the three factual bases for the jury's conclusion as to liability was insufficiently substantiated by the evidence presented at trial.

## BACKGROUND

### *The Investigation and Prosecution of Dr. Morse*

*2 In 2002, the MFCU initiated an investigation into the professional financial affairs of Morse, a dentist, then practicing with another dentist in the Park Slope neighborhood of Brooklyn as "580 Dental, P.C." The defendant John Fusto, then a Special Assistant Attorney General with the MFCU, was assigned to the case, as was the defendant Jose Castillo, then an MFCU audit-investigator. As part of the investigation, the defendants audited Morse's 2000–2002 patient billings, creating summaries of the billings designed to highlight those they considered suspicious. They also interviewed Morse's patients, inquiring into the professional services that he had rendered to them and the related billings for those services.

The investigation drew to a close in late 2005. In March 2006, Fusto presented to a Kings County grand jury evidence of Morse's allegedly unlawful billing practices. In the course of the grand jury proceedings, Fusto called Castillo as a witness to testify about a billings analysis that Castillo had prepared which, according to the defendants, showed that through illegal billing, Morse had unlawfully obtained some $1.1 million from New York State Medicaid. Several of Morse's former patients also testified that he had not performed denture work for them, despite billings that appeared to indicate otherwise. Finally, and central to the present case, Fusto presented two exhibits, denominated in those proceedings as Exhibit 7 and Exhibit 11, to the grand jury. They contained spreadsheet summary charts purporting to detail the billings associated with eight of Morse's patients. The summary charts contained the following fields:

- Client identification number (denominated "CIN NUMBER")
- Patient last name
- Patient first name
- Amount paid
- Date of service
- Invoice number
- Julian date [2]
- Procedure code
- Procedure description

Fusto called Dr. Linda DeLuca, a dentist, to testify as to her opinion of the legitimacy of the billings based on the summaries contained in these exhibits. Dr. DeLuca testified that the billings struck her as unusual and excessive.

On April 5, 2006, the grand jury returned an indictment charging Morse with one count of Grand Larceny in the First Degree in violation of New York Penal Law section 155.42 and eleven counts of Offering a False Instrument For Filing in violation of New York Penal Law section 175.35. The charges were predicated on Morse's alleged theft of $1.1 million from Medicaid and his alleged submission of false written statements to the Computer Sciences Corporation, a fiscal agent of the State of New York, with intent to defraud the State of New York, respectively.

Morse was acquitted of these charges after an August 2007 bench trial before Kings County Supreme Court Justice John Walsh. Despite his ultimate acquittal, Morse suffered serious financial, reputational, and emotional harm as a result of the high-profile indictment and trial.

### The Action Commenced against the Defendants

*3 On November 16, 2007, following his acquittal, Morse initiated the instant action in the United States District Court for the Eastern District of New York, asserting claims of, *inter alia,* false arrest, malicious prosecution, and denial of the right to a fair trial. On November 23, 2009, the defendants moved for partial summary judgment under Fed.R.Civ.P. 56(b). The district court granted the defendants' motion for summary judgment on the malicious prosecution and false arrest claims, but denied it with respect to the fabrication of evidence claim.[3] *Morse v. Spitzer,* No. 07–CV–4793, 2013 WL 359326, at *2, 2011 U.S. Dist. LEXIS 112574, at *4 (E.D.N.Y. Sept. 30, 2011, as corrected Jan. 29, 2013). On February 4, 2013, the parties proceeded to trial before a jury on the fabrication of evidence claim.

At trial, Morse focused his fabrication of evidence claim on the billing spreadsheet summaries—labeled Exhibits 7 and 11—that Castillo and Fusto had prepared during the investigation. Morse argued that the defendants knowingly created the billing summaries to create the false impression that he had billed Medicaid for services that he had not in fact rendered. He pointed to three examples of allegedly false or misleading assertions of "facts" included in these summaries:

- *The Stacy Rodriguez "Triple Billing Claim":* The billing summary for patient Stacy Rodriguez included nine entries, each purportedly representing a distinct procedure performed on the same day, even though records show that Morse billed Medicaid for only three such procedures.

- *The Edwin Gonzalez "Super Patient Claim":* The billing summary for patient "Edwin Gonzalez" contained the billing details for services rendered to three different patients, all named Edwin Gonzalez. The records with respect to those three patients were merged and aggregated to look as though they belonged to one "super patient."

- *The Tooth Number Problem:* For all of the patients listed in the billing summaries, a "tooth number" field was excluded from the spreadsheet. This created the impression that Morse billed Medicaid repeatedly for the same procedure when in fact Morse was billing per tooth for a procedure performed on different teeth of the same patient.

At the close of trial, the jury was given a verdict sheet which asked whether, based on a preponderance of the evidence, each defendant was liable for creating "false or fraudulently altered documents," "consisting of [the allegedly fraudulent documents], knowing that such information was false or fraudulent," and, if so, whether that evidence was "material" to "the grand jury's decision to indict." Verdict Sheet at 1; J.A. 557.

The court also instructed the jury as to the defendants' requisite state of mind:

> Plaintiff must show that the defendants acted knowingly or with reckless disregard. An act is done knowingly if it is done voluntarily and deliberately and not because of mistake, accident, negligence or other innocent reason. An act is done with reckless disregard if it is done in conscious disregard of its known probable consequences. The plaintiff does not need to show that the defendants specifically intended to deprive him of a constitutional right.

*4 Jury Inst. at 9; J.A. 546.[4]

The court defined "false" and "fraudulent" as follows:

> A document is false if it is untrue when made and was known to be untrue when made by the person making it or causing it to be made. A document is fraudulent if it is falsely made with intent to deceive. Deceitful half-truths or the deliberate concealment of material facts may also constitute false or fraudulent information.

*Id.* The court also instructed the jury that "false or fraudulent evidence was material," if "it was likely to influence the [grand] jury's decision to indict." *Id.*

The jury returned a verdict in favor of Morse based on its finding that both defendants knowingly created "false or fraudulently altered documents." Verdict Sheet at 1; J.A. 557. The jury awarded Morse $6,724,936 in compensatory damages—$1,733,941 for past lost earnings; $2,490,995 for future lost earnings; and $2,500,000 for "mental/emotional pain and suffering." Verdict Sheet at 2; J.A. 558. It further

awarded Morse $1,000,000 in punitive damages - $750,000 of which was against Fusto, and the remaining $250,000 of which was against Castillo.[5] *Id.* In response to the question on the verdict sheet, "Have defendants, John Fusto and Jose Castillo, proven by a preponderance of the evidence that the billing summaries ... were created in connection with the preparation for the presentation of evidence to the grand jury, and not earlier as part of the investigation?", the jury answered "No." Verdict Sheet at 3; J.A. 559.

***Post–Judgment Motions***

After the jury rendered its verdict, the defendants moved for judgment as a matter of law ("JMOL") pursuant to Fed.R.Civ.P. 50, or a new trial pursuant to Fed.R.Civ.P. 59, or a reduction in the damage award. The defendants argued that they were entitled to JMOL with respect to liability on three grounds: first, the contents of the spreadsheet summary charts were facially true and thus could not have been reasonably found to be either "false or fraudulent"; second, the defendants are entitled to qualified immunity; and third, the defendants are entitled to absolute immunity.

The district court concluded that "as a matter of law, the Stacy Rodriguez page [was] not a 'false' or 'fraudulently altered' document that can support a fabrication of evidence claim." *Morse,* 2013 WL 4647603, at * 6, 2013 U.S. Dist. LEXIS 123823, at *18. The district court nonetheless denied the motion for JMOL and upheld the general verdict. *Id.,* 2013 WL 4647603, at *11, *33, 2013 U.S. Dist. LEXIS 123823, at *34, *102. The court explained that the evidence was "sufficient to support the jury's verdict that the Edwin Gonzalez page and the omission of tooth numbers ... constituted false or fraudulently altered evidence." *Id.,* 2013 WL 4647603, at * 6, 2013 U.S. Dist. LEXIS 123823, at *18.

Addressing the defendants' assertion that they were entitled to qualified immunity, the district court concluded that "*Ricciuti* [*v. N.Y.C. Transit Auth.,* 124 F.3d 123 (2d Cir.1997) ] and its progeny undoubtedly establish that qualified immunity is unavailable on a claim for denial of the right to a fair trial where that claim is premised on proof that a defendant knowingly fabricated evidence and where a reasonable jury could so find." *Id.,* 2013 WL 4647603, at *11, 2013 U.S. Dist. LEXIS 133, at *36 (internal quotation marks omitted).

*5 With respect to the defendants' absolute immunity argument, the district court noted that although a prosecutor's preparations "for the initiation of judicial proceedings or for trial" are protected by absolute immunity, "[a] prosecutor's ... investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution ... are not entitled to absolute immunity." *Id.,* 2013 WL 464703, at *12, 2013 U.S. Dist. LEXIS 123823, at *37 (internal quotation marks omitted) (quoting *Buckley,* 509 U.S. at 273). The court also explained that "[t]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question," *id.,* and that, in this case "the jury was entitled to simply disbelieve Fusto's and Castillo's testimonies regarding when they created [the allegedly fraudulent documents,]" *id.,* 2013 WL 4647603, at *13, 2013 U.S. Dist. LEXIS 123823, at *40.

Finally, the court rejected the defendants' motion for a new trial as to liability under Fed.R.Civ.P. 59, and granted the defendants' motion for a new trial with respect to damages unless Morse elected to accept a remitted compensatory damage award of $4,624,936 and a remitted punitive damage award of $100,000. *Id.,* 2013 WL 4647603, at *22–33, 2013 U.S. Dist. LEXIS 123823, at *69–102. Morse accepted the remittitur.

The defendants appeal from the district court's denial of qualified immunity and from its declining to order a new trial despite its conclusion that one of the factual bases offered in support of Morse's claims lacked sufficient evidentiary support.[6]

## DISCUSSION

### I. Standard of Review

We review *de novo* a district court's ruling on a motion for JMOL pursuant to Fed.R.Civ.P. 50, "applying the same standard as the district court." *Cash v. Cty. of Erie,* 654 F.3d 324, 332–33 (2d Cir.2011). "The standard for post-verdict judgment as a matter of law is the same as for summary judgment under Fed.R.Civ.P. 56." *Cobb v. Pozzi,* 363 F.3d 89, 101 (2d Cir.2004). Accordingly, "a district court must deny a motion for judgment as a matter of law unless, viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached." *Id.* (alterations and internal quotation marks omitted).

That standard places a "particularly heavy" burden on the movant where, as here, "the jury has deliberated in the case and actually returned its verdict" in favor of the non-movant. *Cross v. N.Y.C. Transit Auth.,* 417 F.3d 241,248 (2nd Cir.2005). In such circumstances, a court may set aside the verdict only "if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Brady v. Wal–Mart Stores, Inc.,* 531 F.3d 127, 133 (2d Cir.2008) (internal quotation marks and alterations omitted).

## II. Qualified Immunity

**\*6** "Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lore v. City of Syracuse,* 670 F.3d 127, 162 (2d Cir.2012) (internal quotation marks omitted). Whether qualified immunity applies "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan,* 555 U.S. 23,244 (2009) (internal quotation marks omitted). As we explain in greater detail below, a right is "clearly established" if "it would be clear to a reasonable [public official] that his conduct was unlawful in the situation he confronted." *Lore,* 670 F.3d at 162.

The defendants argue that they are entitled to qualified immunity as a matter of law. First, they assert that they had no constitutional duty to include all material information in the spreadsheet summaries. They rely principally on *United States v. Williams,* 504 U.S. 36 (1992), and *United States v. Regan,* 103 F.3d 1072 (2d Cir.1997), for the proposition "that prosecutors may properly give one-sided presentations to the grand jury in seeking an indictment, and that they are further entitled to keep relevant and material information—even outright exculpatory evidence—from the grand jury." Appellants' Br. 30 (emphasis omitted). Second, the defendants contend that the omissions involved in creating the billing summaries are not analogous to the fabrication of evidence prohibited under *Zahrey v. Coffey,* 221 F.3d 342 (2d Cir.2000), a decision heavily relied upon by the district court. Third, they maintain that in any event, their omission of some details from the summary spreadsheets did not violate clearly established law that would have served to warn them that their conduct was unconstitutional.

### A. The Constitutional Duty of a Prosecutor

"It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *Williams,* 504 U.S. at 51. It has therefore "always been thought sufficient to hear only the prosecutor's side." *Id.* This means that "the suspect under investigation by the grand jury [has never] been thought to have a right to testify or to have exculpatory evidence presented." *Id.* at 52. The defendants argue that the jury's finding that they deliberately kept information from the grand jury therefore does not establish a constitutional violation.

Notwithstanding the legally permissible one-sided nature of grand jury proceedings, everyone possesses the additional and distinct "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity."[7] *Zahrey,* 221 F.3d at 349. This right was violated, Morse contends, when the defendants knowingly created false or misleading billing summaries that were determined to be material to the grand jury's decision to indict.

**\*7** We conclude that the omissions in this case were properly considered under the rubric of *Zahrey,* under which government officials may be held liable for fabricating evidence through false statements or omissions that are both material and made knowingly. In *Zahrey,* the plaintiff, a police officer, brought suit against an Assistant United States Attorney named Martin Coffey, for conspiring to manufacture false evidence against the plaintiff. Coffey "influenced [the] testimony" of a prospective federal grand jury witness and "attempted to pressure and bribe [another witness] to falsely implicate Zahrey." *Id.* at 345. The same witness thereafter "falsely testified against Zahrey." *Id.* at 346. We concluded that the prosecutor's behavior violated Zahrey's "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Id.* at 349.

Here, the jury found that by making material omissions in the billing summaries, the defendants in effect falsified them, and they did so knowingly and as part of their investigation. Morse argues that this finding places his case on all fours with *Zahrey,* requiring us to affirm the judgment of the district court. We agree.

As we have observed, "false information likely to influence a jury's decision ... violates the accused's constitutional right to a fair trial," because to hold otherwise, "works an unacceptable 'corruption of the truth-seeking function of the trial process.' " *Ricciuti,* 124 F.3d at 130 (quoting *United States v. Agurs,* 427 U.S. 97, 104 (1976)). Information may be "false" if material omissions render an otherwise true statement false. For example, in *Manganiello v. City of New York,* 612 F.3d 149 (2d Cir.2010), we affirmed a verdict against a police officer who was found to have "misrepresented the evidence to the prosecutors, or failed to provide the prosecutor with material evidence or information, or gave testimony to the Grand Jury that *was false or contained material omissions,*" while knowing that he "was making a material misrepresentation or omission or giving false testimony." *Id.* at 159 (internal quotation marks omitted, emphasis added). The *Manganiello* Court acknowledged that the integrity of the judicial process can be unlawfully compromised by a government official's submission of information to a jury that implicates the accused based in part on material omissions.

The defendants ask us to distinguish *Manganiello* from the instant case on the basis that *Manganiello* involved a claim against a police officer and not a prosecutor. But we find nothing in *Manganiello* to suggest a distinction between prosecutors acting in their investigative capacity and police officers acting in theirs, at least in the circumstances presented by the case at bar. To the contrary, the Supreme Court has observed that "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley,* 509 U.S. at 273 (internal quotation marks omitted). And we have recognized that prosecutors and police officers are equally responsible for preserving the "truth-seeking function of the trial process." *Ricciuti,* 124 F .3d at 130; *see also Napue v. State of Ill.,* 360 U.S. 264, 269 (1959) (stating as a general rule that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction").

*\*8* Alternatively, the defendants ask us to distinguish *Manganiello* because it involved both affirmative misrepresentations and misleading omissions, without directly addressing the distinction between the two. But *Manganiello* does not suggest that deliberate omissions of material facts are qualitatively different from affirmative misstatements, or that omissions alone cannot support a successful section 1983 action for using fabricated evidence to deprive a plaintiff of his constitutional rights. Nor do we see any reason to distinguish the two under the circumstances of this case. Indeed, both threaten the integrity of the judicial process by injecting it with falsity provided by officers of the state whose official status gives the misinformation a special aura of reliability.

As the district court observed, "other areas of law ... make no legal distinction between misleading statements or omissions and affirmative falsehoods." *Morse,* 2013 WL 4647603, at *8, 2013 U.S. Dist. LEXIS 1 234823, at * 25. *See, e.g.,* 18 U.S.C. § 1001 (criminalizing knowingly and willfully "falsif[ying], conceal[ing], or cover[ing] up by any trick, scheme, or device a material fact," to the federal government); 17 C.F.R. § 240.10b–5 (prohibiting, under the securities laws, "mak[ing] any untrue statement of a material fact or [ ] omit[ting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"). [8]

The defendants complain that "[t]he threat of liability for incomplete or under-inclusive record or transaction summaries will potentially paralyze prosecutors' investigations and preparations for the grand jury." Appellants' Br. 39. This would indeed be a matter of grave concern if it were so. But we foresee no significant barriers to the pursuit of successful prosecutions that would result from the defendants' liability in this case. It ought not to be difficult, even for the most single-minded of prosecutors, to avoid misconduct of the scope and seriousness of that in which the defendants engaged: 1) "creat [ing] false or fraudulently altered documents," Verdict Sheet at 1, J.A. 557;2) in the course of their performance of "investigatory functions," *Morse,* 2013 WL 4647603, at *12, 2013 U.S. Dist. LEXIS 123823, at *37; 3) "knowing that such information was false or fraudulent," Verdict Sheet at 1, J.A. 557; 4) where "false" is defined as "untrue when made and ... known to be untrue when made by the person making it or causing it to be made" and "fraudulent" as "falsely made *with intent to deceive,*" Jury Instr. at 9, J.A. 546 (emphasis added). It does not seem to us to be a danger to effective law enforcement to require prosecutors and their aides to abide by these rules even when pursuing the most complicated of cases with the utmost determination.

### B. Defendants' Remaining Arguments in Favor of Qualified Immunity

**\*9** We find the defendants' remaining arguments in favor of qualified immunity also to be unpersuasive. The defendants assert that the district court's requirement to present evidence "as it is, not in an altered form that presents an inaccurate picture of the character of the evidence," *Morse*, 2013 WL 4647603, at \*10, 2013, U.S. Dist. LEXIS 123823, at \*32, was impossible because "there were no paper billing claims to present in their original form" and thus "no coherent way for defendants to present the database in raw form without selecting from the over fifty fields contained in the database." Appellants' Br. 36. It is plainly true, as the defendants point out, that "[a] summary of evidence—to be useful, to summarize at all—is necessarily selective." Appellants' Br. 45. But as we have tried to make clear, the constitutional violation in this case was not the summarization of data, it was the manipulation of data to create false or misleading documents, *knowing* that such information was false or misleading at the time.

To the extent that the defendants insist that the summaries were "factually accurate," Appellants' Br. 42, they ask us to disregard the jury's findings to the contrary. In light of the existence of a firm factual foundation for the jury's finding on this score, this is something we plainly cannot do. *See Tennant v. Peoria & Pekin Union Railway*, 321 U.S. 29, 35 (1944) ("Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.").

### C. The Violation of Clearly Established Law

Having concluded that the defendants' falsifications constituted a violation of Morse's constitutional rights, we must next determine whether the falsifications violated clearly established law that sufficiently warned the defendants that their conduct was unconstitutional. We conclude that they did.

"Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir.2010) (internal quotation marks omitted). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This permits a finding of liability even when "the very action in question has [not] previously been held unlawful," insofar as, "in the light of pre-existing law[,] the unlawfulness [is] apparent." *Id.* Qualified immunity therefore only applies if the official action was "objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *X–Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir.1999) (alterations omitted).

**\*10** We conclude that the right in question was clearly established such that the defendants are not entitled to qualified immunity. Although there is no prior decision of ours precisely equating the fraudulent omission of factual information from a document with the affirmative perpetration of a falsehood, *Ricciuti* and its progeny, including *Zahrey,* clearly establish that "qualified immunity is unavailable on a claim for denial of the right to a fair trial where that claim is premised on proof that a defendant knowingly fabricated evidence and where a reasonable jury could so find." *Morse,* 2013 WL 4647603, at \*11, 2013 U.S. Dist. LEXIS 123823, at \*36. As discussed in detail above, because there is no plausible legal distinction between misstatements and omissions that we can perceive in this context, we conclude that it was not "objectively legally reasonable" for the defendants in this case to believe that it was permissible for them to knowingly make material omissions in the creation of the billing summaries, thereby knowingly altering evidence during a criminal investigation.

### IV. A New Trial under the General–Verdict Rule

The defendants argue that the district court erred when it failed to order a new trial after concluding, post-trial, that "as a matter of law, the Stacy Rodriguez page [wa]s not a 'false' or 'fraudulently altered' document that c[ould] support a fabrication of evidence claim." *Morse,* 2013 WL 4647603, at \*6; 2013 U.S. Dist. LEXIS 123823, at \*18. The defendants base their assertion on the so-called "general-verdict rule."

"The Supreme Court decades ago announced the so-called general verdict rule, that 'a new trial will be required' where 'there is no way to know that [an] invalid claim .... was not the sole basis for [a] verdict.' " *Chowdhury v. WorldTel Bangl. Holding, Ltd.,* 746 F.3d 42, 50 (2d Cir.2014) (alterations in original) (quoting *United N.Y. & N.J. Sandy Hook Pilots Ass'n v. Halecki,* 358 U.S. 613, 619 (1959)), *cert. denied sub nom Khan v. Chowdhury,* 135 S.Ct. 401 (2014). As we observed in a non-precedential summary order:

This Court has applied the general verdict rule both in cases where one of several legal theories of liability was improperly submitted to the jury, *see, e.g., Morrissey v. Nat'l Mar. Union of Am.,* 544 F.2d 19, 25–27 (2d Cir.1976) (applying rule where district court charged jury that defendant could be found liable under either one of two statutory sections, one of which was inapplicable as a matter of law), and also in cases where a single legal theory was submitted to the jury, but one of several sets of facts presented as adequate to prove liability was found insufficient as a matter of law, *see, e.g., O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988) (applying rule where defendant police officer could not have been liable to plaintiff for failing to prevent injuries resulting from spontaneous beating delivered by other defendant officers, but could have been liable for failing to prevent subsequent mistreatment at the hands of one of those defendants).

**\*11** *AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC,* 386 F. App'x 5, 7 (2d Cir.2010) (summary order).

In the case before us, the jury returned a general verdict to the effect that the defendants had "created false or fraudulently altered documents." *Morse,* 2013 WL 4647603, at \*4; 2013 U.S. Dist. LEXIS 123823, at \*12. We cannot rule out the possibility that it reached that conclusion relying solely on the "Stacy Rodriguez 'Triple Billing Claim,' " which the district court later concluded was inadequately supported by the evidence. The defendants argue that under the general-verdict rule, the district court should have granted them a new trial, in which a newly empaneled jury would not be permitted to rely on the "Stacy Rodriguez 'Triple Billing Claim' " at all. Morse argues that the defendants' failure to request a special verdict form, request a general verdict with interrogatories, or otherwise object to the verdict form during district court proceedings waives any objections based on the general-verdict rule.

Whether the general-verdict rule is subject to waiver is an issue of first impression in this Court.[9] We conclude, as did the district court, in the affirmative: Having failed to ask for a special verdict, request interrogatories to supplement a general verdict with respect to the three separate factual bases submitted by Morse to the jury, or otherwise object to the form of the verdict sheet or jury instructions ultimately submitted to the jury, the defendants' general-verdict rule argument is waived. They cannot now complain that it is impossible to know whether the verdict would have been different had the inadequately supported Stacy Rodriguez matter been withdrawn from the jury's consideration.

The defendants failed to request, prior to jury deliberations, that the district court submit to the jury a special verdict form requiring findings "on each issue of fact" under Fed.R.Civ.P. 49(a), or written questions accompanying the form for a general verdict under Fed.R.Civ.P. 49(b). Nor did the defendants make a timely objection to the general verdict or jury instructions as they were given. The Federal Rules require that an objection relating to a general verdict "that is traced to an alleged error in the jury instruction or verdict sheet," as it is in this case, must be "made under Fed.R.Civ.P. 51.... [However,] to avail itself of relief under this Rule, a party must object before the jury retires to deliberate." *Jarvis v. Ford Motor Co.,* 283 F.3d 33, 56 (2d Cir.2002). The "failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection." *Id.* at 57 (alteration and internal quotation marks omitted).

To permit the defendants to rely on the general-verdict rule when they elected not to avail themselves of the procedural remedies provided by the Federal Rules would allow them "another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions." *Id* . (internal quotation marks omitted). We conclude that by failing to seek a special verdict or interrogatories on each of the three sets of facts submitted to the jury in support of Morse's legal theory of the case, or otherwise object to the verdict sheet or jury instructions, the defendants waived the ability to invoke the general-verdict rule in seeking, post-verdict, a new trial based on the failure of Morse adequately to support one of the three sets of facts on which the general verdict was based.[10]

**\*12** The Ninth Circuit, in *McCord v. Maguire,* 873 F.2d 1271 (9th Cir.1989), *amended,* 885 F.2d 650 (9th Cir.1989), similarly concluded that the general-verdict rule is subject to waiver, and its reasoning bears repeating:

> [L]itigants have the responsibility to request or submit special verdict forms. Litigants like [the defendant] who wish to challenge the sufficiency of the evidence as to some, but not all, specifications [presented to the jury] must present an appropriate record for review by asking the jury to

> make separate factual determinations as to each specification. Any other rule would unnecessarily jeopardize jury verdicts that are otherwise fully supported by the record on the mere theoretical possibility that the jury based its decision on unsupported specifications. We will not allow litigants to play procedural brinkmanship with the jury system and take advantage of uncertainties they could well have avoided.

873 F.2d at 1274 (citation omitted).[11]

Some twenty years later, the United States District Court for the Southern District of New York cited *McCord* for the proposition that "[w]here there are multiple factual bases for liability on a single claim, one or more of which is found to be defective, but where special interrogatories as to each factual allegation are not requested, the general verdict must be upheld if the remaining evidence is sufficient to support it." *AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC*, 646 F.Supp.2d 385, 407 (S.D.N.Y.2009) (Koeltl, J.), *aff'd*, 386 F. App'x 5 (2d Cir.2010) (summary order). In the case now before us, the district court cited and quoted the district court opinion in *AIG Global* for the same principle. *Morse*, 2013 WL 4647603, at *6, 2013 U.S. Dist. LEXIS 123823, at *18–19. We agree with this principle. We conclude that the general-verdict rule is subject to waiver, and that the defendants have waived their ability to invoke the rule.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

**All Citations**

--- F.3d ----, 2015 WL 5294862

## Footnotes

\*    The Clerk of Court is respectfully directed to amend the official caption as shown above.

1    The names of Barbara D. Underwood, New York State Solicitor General, Steven C. Wu, Deputy Solicitor General, Seth J. Farber, Assistant Attorney General, Christopher Y. Miller, Special Assistant Attorney General, and Eric T. Schneiderman, Attorney General, also appear on the appellants' briefs, but they are not currently representing the appellants before this Court. At the time the appellants' briefs were submitted, Ms. Chang was Special Counsel to the Solicitor General.

2    "[A] Julian date or day number is the number of elapsed days since the beginning of a cycle of 7,980 years invented by Joseph Scaliger in 1583. The purpose of the system is to make it easy to compute an integer (whole number) difference between one calendar date and another calendar date." *Julian date,* WhatIs.com, http:// whatis.techtarget.com/definition/Julian-date (last visited Sept. 3, 2015).

3    Morse filed his second amended complaint on July 5, 2011, while the defendants' motion for summary judgment was still pending. The district court's partial grant of summary judgment was made with respect to the second amended complaint. The second amended complaint also named as defendants "Eliot Spitzer, Individually" and "Robert H. Flynn, Individually." J.A. 149. The district court dismissed the claims against Flynn during its summary judgment proceedings. The district court dismissed the claims against Spitzer in a separate order filed January 15, 2013.

4    The instruction thus used the term "knowingly *or with reckless disregard.*" Jury Inst. at 9; J.A. 546 (emphasis added). The verdict sheet that the jury later completed reflected their finding that the defendants "created false or fraudulently altered documents ... *knowing* that such information was false or fraudulent." Verdict Sheet at 1, J.A. 557 (emphasis added). On appeal, the defendants do not contest the district court's reference to "reckless disregard" in the instructions, and we therefore do not address the issue of its propriety or materiality.

5    The facts underlying the amount of the award are set forth by the district court in some detail in *Morse*, 2013 WL 4647603, 2013 U.S. Dist. LEXIS 123823. They include his suspension from the New York Medicaid program, on which his practice depended, and the consequent liquidation of his dental practice; the loss of his teaching position at a New York hospital (later restored after his acquittal); the public dissemination of the story of his indictment, including at least one press release from the Attorney General's Office and subsequent articles in the *New York Post* and *New York Daily News*; humiliation and "social and professional disgrace"; and a post-acquittal inability to procure hospital employment. *Id.*, 2013 WL 4647603, at *23–25, 2013 U.S. Dist. LEXIS 123823, at *69–76.

Morse's travails are reminiscent of the widely publicized 1987 acquittal of Raymond J. Donovan, a then-former United States Secretary of Labor, on New York State fraud and grand larceny charges. After the verdict, he famously remarked: "The question is ... [:] Which office do I go to to get my reputation back? Who will reimburse my company for the economic jail it has been in for two and a half years?" Selwyn Raab, *Donovan Cleared of Fraud Charges by Jury in Bronx,* N.Y. TIMES (May 26, 1987), http:// www.nytimes.com/1987/ 05/26/nyregion/donovan-cleared-of-fraud-chargesby-jury-in-bronx.html?pagewanted=1.

6     The defendants do not appeal from the district court's ruling that they are not entitled to absolute immunity as a matter of law or the district court's ruling on their Fed.R.Civ.P. 59 motion. Accordingly, we do not review the jury's finding that the billing summaries were created "earlier as part of the investigation" rather than "in connection with the preparation for the presentation of evidence to the grand jury." For the same reason, we need not (and do not) decide whether the district court erred in denying defendants the protections of absolute immunity. Accordingly, we proceed on the assumption that the defendants are entitled to qualified immunity, or no immunity at all.

7     The district court noted that this Circuit has been "inconsistent as to whether" fabrication of evidence claims "arise[ ] under the Sixth Amendment right to a fair and speedy trial, or under the due process clauses of the Fifth and Fourteenth Amendments." *Morse v. Spitzer,* No. 07–CV–4793, 2013 WL 359326, at *3, 2011 U.S. Dist. LEXIS 112574, at *8–9 (E.D.N.Y. Sept. 30, 2011, as corrected Jan. 29, 2013) (comparing *Zahrey v. Coffey,* 221 F.3d 342, 355 (2d Cir.2000) ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.") with *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir.1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.")). The district court ultimately concluded, however, that "[r]egardless of which constitutional amendment prohibits government officers from fabricating evidence ..., these cases clearly establish that the harm caused by such conduct is redressable through a § 1983 action for damages." *Id.,* 2013 WL 359326, at *3 n. 1, 2011 U.S. Dist. LEXIS 112574, at *9 n. 1. We agree with the district court, and therefore do not further address the issue here.

8     Similarly, the law of libel has long recognized that omissions alone can render a statement false. In *Memphis Publishing Co. v. Nichols,* 569 S.W.2d 412 (Tenn.1978), a newspaper article accurately reported that a woman had shot another woman, the plaintiff, upon finding her husband at the other woman's home. The article neglected to mention, however, that the husband of the other woman and several neighbors were also present. The court concluded that the literal accuracy of every material statement in the article was insufficient to prove the truth of the obvious defamatory insinuation. In *Toney v. WCCO Television, Midwest Cable & Satellite, Inc.,* 85 F.3d 383, 387 (8th Cir.1996), then-retired Justice Byron White, sitting by designation, referred to *Nichols* as "[p]erhaps the quintessential modern case of defamation by implication."

9     We appear at least once to have explicitly declined to decide this issue. See *O'Neill v. Krzeminski,* 839 F.2d 9, 12 (2d Cir.1988) (noting that "[i]n the criminal context, ... a defendant is obliged to alert a trial judge to a claim that one basis for conviction of an offense is not supported by sufficient evidence; in the absence of such particularized objection, the point is waived," but refraining from "decid [ing] ... how rigorously the waiver rule of the criminal cases should apply in the civil context").

10     Although the district court concluded the Stacy Rodriguez page could not support a fabrication of the evidence claim, it found the remaining evidence was sufficient to support the jury's verdict irrespective of who should prevail of the waiver issue.

11     The defendants' post-trial motions challenged the evidentiary support for all of the "specifications" submitted to the jury and only one of those specifications was inadequately supported by the evidence. Comparatively, in *McCord,* the litigants mounted a challenge to "some, but not all, specifications," presented to the jury. 873 F.2d at 1274. We perceive no reason why this distinction bears on the circumstances before us.