**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**MARTIN NNODIMELE,**

                   **Plaintiff,**

       **-against-**

**CITY OF NEW YORK, et al.,**

                 **Defendants.**
-----------------------------------------------------------x

                          **MEMORANDUM**
                          **AND ORDER**

                          **13-CV-3461 (ARR)**

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

      Now pending before this Court is defendants' renewed <u>Daubert</u> motion to preclude the testimony of Joseph Pollini, plaintiff's proposed police-practices expert. Plaintiff Martin Nnodimele ("plaintiff") proposes to have Pollini testify regarding the "conduct of the defendants that, in his opinion, 'violated proper and accepted police practices and procedures' . . . ." Letter re: Proposed Scope of Testimony of Plaintiff's Police-Practices Expert (Mar. 1, 2016) ("3/1/16 Pl. Letter") at 1, Electronic Case Filing ("ECF") Docket Entry ("DE") #121. As part of their motion for summary judgment, defendants City of New York (the "City"), and New York City Police Department ("NYPD") Detectives Edward Garrity and Donald DeRienzo (the latter two collectively referred to as the "defendant officers"), objected to this testimony on the grounds that Pollini's opinions have no relevance to any issue in the case and do not satisfy the standards for the admissibility of expert testimony under the Federal Rules of Evidence. <u>See</u> Defendants' Memorandum of Law in Support of their Motion for Summary Judgment (May 22, 2015) ("Def. SJ Mem.") at 37, DE #77.

      On January 27, 2016, the Honorable Allyne R. Ross granted summary judgment in

defendants' favor as to plaintiff's malicious prosecution claims and his <u>Brady</u> claim against Garrity.  <u>See</u> Opinion & Order (Jan. 27, 2016) ("1/27/16 O&O") at 40, DE #116.  At the same time, Judge Ross denied summary judgment as to plaintiff's <u>Brady</u> claim against DeRienzo, as well as fair-trial/evidence-manufacturing claims against both defendant officers. <u>See</u> <u>id.</u>  Thereafter, defendants renewed their <u>Daubert</u> motion, <u>see</u> Consent Motion for Extension of Time . . . (Feb. 26, 2016) ("2/26/16 Def. Letter"), DE #118, and Judge Ross referred that motion to the undersigned magistrate judge, <u>see</u> Order Referring Motion (Feb. 29, 2016), DE # 119.  Plaintiff, in turn, narrowed the proposed scope of Pollini's expert testimony in light of Judge Ross's grant of partial summary judgment.  <u>See</u> 3/1/16 Pl. Letter at 1.

For the reasons that follow, this Court grants defendants' motion in part only and rules that Pollini will be allowed to give expert testimony, subject to the limitations of scope explained in the following sections of this opinion.[1]

## BACKGROUND

Plaintiff Martin Nnodimele spent more than four years in custody for multiple robberies for which prosecutors now acknowledge there is insufficient evidence of his guilt.[2]  After his

---

[1]  As this Court's ruling on the <u>Daubert</u> motion is non-dispositive, it is addressed in a Memorandum and Order, rather than a Report and Recommendation.  <u>See</u> <u>Hilaire v. Dewalt Indus. Tool Co.</u>, 54 F.Supp.3d 223, 229 n.3 (E.D.N.Y. 2014); <u>Cullen v. Village of Pelham Manor</u>, No. 03-CV-2168 (CS), 2009 WL 1507686, at *2 (S.D.N.Y. May 28, 2009).

[2]  The robberies took place, over a two-week period in November 2007, at a series of retail stores in Manhattan, including Caravan, a clothing store, and Visio Fine Optics ("Visio").  <u>See</u>
(continued...)

conviction was vacated and his criminal case dismissed, plaintiff filed this action, asserting

claims for malicious prosecution under 42 U.S.C. § 1983 and New York state law, as well as

denial of his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the

United States Constitution.  See Second Amended Complaint (Mar. 20, 2014) ("2d Am.

Compl.") ¶¶ 117-26, DE #34; see also 1/27/16 O&O at 1.[3]

Plaintiff's first fair-trial-violation theory was that DeRienzo and Garrity had

manufactured evidence by (1) falsifying and forwarding plaintiff's incriminating

self-identification statements to Assistant District Attorney ("ADA") Charles Whitt, (2)

misstating plaintiff's height on police reports, and (3) fabricating lineup identifications through

unduly suggestive procedures.  See 1/27/16 O&O at 23.  Plaintiff's second theory was that

DeRienzo and Garrity had unlawfully withheld exculpatory evidence, in violation of Brady v.

Maryland, 373 U.S. 83 (1963), and its progeny.  See 1/27/16 O&O at 33.  The basis of this

Brady claim against DeRienzo was that DeRienzo (1) withheld from the prosecution, and

therefore the defense, the statement of Kathleen Boyle -- a witness to the Caravan robbery, in

---

[2](...continued)
1/26/16 O&O at 2-3.  For further background information on the criminal case against
plaintiff, see id. at 2-11.

[3]  These claims were asserted against DeRienzo and Garrity in their individual capacities, as
well as against two other NYPD officials, Yvonne Hughes and David Eddie.  See 2d Am.
Compl. ¶¶ 12-15.  Plaintiff alleged that the City was liable under *respondeat superior* for the
state-law malicious-prosecution claim only, see id. ¶ 122, and did not assert any claims under
Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).  The
parties have since stipulated to the dismissal of all claims against Hughes and Eddie.  See
1/27/16 O&O at 1 n.1.  Additionally, because Judge Ross granted summary judgment on the
malicious prosecution claims, plaintiff no longer has any claim against the City.  See id.

which plaintiff was a suspect -- that plaintiff was definitely not the perpetrator of that robbery; (2) further withheld Boyle's statement that the wanted poster that DiRenzio had created using a still image from surveillance footage of the Visio robbery depicted the same person who perpetrated the Caravan robbery; and (3) did not disclose until the eve of trial the fact that Boyle had failed to identify plaintiff as the perpetrator in the first lineup, thus preventing the defense from making adequate use of this information at trial.  See id.[4]

To support his claims in this case, plaintiff retained Joseph Pollini, a retired NYPD detective, as an expert on police practices.  See, e.g., Memorandum and Order (July 21, 2015) ("7/21/15 M&O"), DE #114.  In his expert report, dated October 9, 2014, Pollini states that, based upon his review of relevant materials, "and in the exercise of [his] judgement and expertise, it is [his] opinion, within a reasonable degree of professional certainty, that the defendants . . . violated proper and accepted police practices and procedures in connection with the investigation and arrest of Martin Nnodimele."  Expert Report of Mr. Joseph Pollini (Mar. 1, 2016) ("Pollini Rep.") ¶ 12, DE #121-1.  In particular, Pollini's report states that DeRienzo violated NYPD guidelines by failing to inform the District Attorney's office of Boyle's statement during the lineup that plaintiff was not the perpetrator of the Caravan robbery.  Id. at 10.  Defendants deposed Pollini on December 19, 2014.  See 7/21/15 M&O at 2.

---

[4]  Plaintiff's Brady claim against Garrity alleged only that Garrity suppressed the fact that plaintiff's self-identification was fabricated.  As there is no Brady violation where the alleged Brady material would merely confirm something that the criminal defendant already knew or should have known, Judge Ross granted summary judgment on this claim.  See 1/27/16 O&O at 33 n.7.

On May 22, 2015, defendants moved for summary judgment on all claims.  See Def. SJ
Mem.  In their memorandum of law, defendants anticipated that plaintiff would attempt to rely
on Pollini's report and/or deposition in opposing their summary judgment motion.  See id. at
37.  Defendants urged the District Court to ignore Pollini's opinions as irrelevant to the issues
in the case and as failing to satisfy the standards for admissibility of expert testimony under the
Federal Rules of Evidence, as set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509
U.S. 579 (1993), and subsequent cases.  See Def. SJ Mem. at 37.  In particular, defendants
argued that:

> Pollini's testimony is inadmissible, because (1) it cannot assist the trier of fact
> and will invade the province of the jury and the Court by opining on credibility,
> interpretation of the evidence, the events that are alleged to have transpired,
> i.e., whether plaintiff actually made the self-identifications and whether Boyle
> actually made a statement during the line-up, and other legal and factual issues
> that are the sole province of the court and jury, and (2) his conclusions are not
> based upon reliable principles and methods because they consist of personal
> opinions based on idiosyncratic interpretations and experiences, errors of law
> and logic, and speculation; and (3) his opinions are irrelevant because they are
> focused on whether there was probable cause for plaintiff's arrest, which is not
> at issue in this case, as plaintiff advances no false arrest claim in this case and
> such an opinion would, in any event invade the province of the jury and/or
> constitute an impermissible legal conclusion.

Def. SJ Mem. at 43-44.  Defendants argued further that Pollini is not qualified "to opine on
any issue relating to plaintiff's prosecution, whether the officers failed to comply with the
obligation to disclose Brady material, or whether plaintiff was otherwise denied his right to a
fair trial."  Id. at 44.

On January 27, 2016, Judge Ross ruled on defendants' summary judgment motion.  See
1/27/16 O&O.  She granted defendants summary judgment as to plaintiff's malicious
prosecution claims and his Brady claim against Garrity.  See id. at 40; see also supra p. 4 n.4.

On plaintiff's fair-trial/evidence-manufacturing claims, Judge Ross ruled that plaintiff could not proceed on the theories that the defendant officers had misstated his height on police reports or fabricated lineup identifications through unduly suggestive procedures.  See 1/27/16 O&O at 23.  Nonetheless, Judge Ross denied summary judgment in part, allowing plaintiff to proceed on his claim that the defendant officers had falsified and then forwarded to ADA Whitt inculpatory statements that they claim plaintiff had made in which he allegedly identified himself in the wanted posted from the Visio robbery.  See id.[5]

Judge Ross also denied summary judgment as to plaintiff's Brady claims against DeRienzo.  She found that a "genuine dispute" existed as to which lineup reports DeRienzo had provided to ADA Whitt, and that a "reasonable jury would be entitled to find that DeRienzo withheld Boyle's report."  Id. at 34.  Furthermore,

> [i]n light of the evidence adduced at trial, a jury could easily conclude that Boyle's nonidentification and exculpatory statements were material and that their suppression was therefore prejudicial.  The information contained in Boyle's statements would likely have made her plaintiff's most helpful witness at trial—the only robbery eyewitness to expressly exculpate plaintiff and the only one to present a basis to exculpate plaintiff of two robberies.  Those robberies are the two of which plaintiff was convicted.  In light of these circumstances, a jury is certainly entitled to find that DeRienzo's suppression of Boyle's lineup participation and exculpatory statements rendered the verdict "[un]worthy of confidence,"  Poventud [v. City of New York, 750 F.3d 121, 133 (2d Cir. 2014)], and thus hold him liable for a violation of Brady.

1/27/16 O&O at 38-39 (citations to the record omitted).[6]

-----

[5]  In so ruling, Judge Ross rejected defendants' arguments that DeRienzo and Garrity were entitled to absolute or qualified immunity.  See 1/27/16 O&O at 27, 32.

[6]  In denying summary judgment on these Brady claims, Judge Ross once more rejected DeRienzo's claim of qualified immunity.  See 1/27/16 O&O at 40.

The following month, defendants renewed their previously briefed <u>Daubert</u> motion to preclude Pollini's testimony, <u>see</u> 2/26/16 Def. Letter, and Judge Ross referred the motion to the undersigned magistrate judge, <u>see</u> Order Referring Motion (Feb. 29, 2016), DE # 119. This Court conducted a telephone conference on February 29, 2016, and set a schedule for defendants to serve a rebuttal police-practices expert, in the event Pollini's testimony was not precluded. <u>See</u> Minute Order (Feb. 29, 2016), DE #120. Plaintiff reiterated his desire to use Pollini's expert testimony at trial, but proposed narrowing the scope of that testimony in light of Judge Ross's partial grant of summary judgment. <u>See</u> 3/1/16 Pl. Letter at 1. Plaintiff now proposes to have Pollini testify only to the NYPD's guidelines on lineup procedures (the "Lineup Testimony") and on recording the statements of suspects (the "Suspect-Statements Testimony"), as described in paragraphs 15 and 16 of his Report:

> Page [9], ¶ 15 [of the Pollini Report]: <u>Line-up Procedures</u>. Specifically, Mr. Pollini would testify at trial about NYPD lineup requirements, including: using fillers who appear similar to the suspect in terms of physical characteristics, age, and clothing; keeping the eyewitnesses separate from each other before and after the lineup; making a complete record of what occurred at the lineup, including the statements made by the viewing witnesses; and informing the prosecutor of any statement by a viewing witness that the person who committed the crime was *not* in the lineup. In addition, Mr. Pollini would testify that, where there is a discrepancy between the height of the suspect and the descriptions given by the eyewitnesses, the lineup should be a standing one. Mr. Pollini would further testify to his opinion that the actual lineup procedures used in this case did not conform to NYPD requirements.
>
> Page 10, ¶ 16: <u>Recording Statements of Suspects</u>. Mr. Pollini would testify about the NYPD's requirement that a detective thoroughly document all statements made by a suspect relevant to the investigation, and that the failure of the detectives to do so here deviated from that requirement.

3/1/16 Pl. Letter at 1-2.

Plaintiff reincorporates arguments that he made in his memorandum opposing

–7–

defendants' summary judgment motion.  See Plaintiff's Memorandum of Law in Opposition to

Defendants' Motion for Summary Judgment (May 22, 2015) ("Pl. SJ Opp.") at 47-49, 54-55,

DE #80.  He maintains that Pollini's testimony about standard police practices, and the extent

to which the detectives in this case deviated from them, "continue to apply with respect to his

remaining claims, including their use of lineup procedures that deviated from requisite police

practice and thus bear upon their 'credibility and good or bad faith.'"  3/1/16 Pl. Letter at 2

(citing Pl. SJ Opp. at 49).  Although invited to do so, defendants did not respond to plaintiff's

3/1/16 Letter.

## DISCUSSION

### I. The Applicable Legal Standard

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience,
training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help
the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of
the case.

Fed. R. Evid. 702.

Once a pretrial challenge has been lodged under Rule 702, the trial court must

determine whether the proffered expert testimony is reliable and relevant to the dispute.  See

Daubert, 509 U.S. at 597.  The purpose of this screening process is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). The Second Circuit has described the general methodology to be employed by trial courts in conducting Rule 702 analyses.  See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265-66 (2d Cir. 2002).  First, the trial court should determine "whether proffered expert testimony is relevant, i.e., whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Id. at 265 (internal quotations omitted).  Next, the court should determine "whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered."  Id. (internal quotation, citation omitted).  A person may become qualified as an expert based on practical experience, as well as professional education.  See Valentin v. New York City, No. 94 CV 3911(CLP), 1997 WL 33323099, at *15 (E.D.N.Y. Sept. 9, 1997) (collecting cases).

The trial court possesses "broad discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case."  Amorgianos, 303 F.3d at 265.  The trial court's decision to admit expert testimony "will be overturned only when manifestly erroneous."  Iroquois Master Fund, Ltd. v. Quantum Fuel Sys. Techs. Worldwide, Inc., No. 14–4609–cv, 2016 WL 373999, at *3 (2d Cir. Feb. 1, 2016) (quoting McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1042 (2d Cir. 1995)).  At the same time, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience

leads to the conclusion reached . . . and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Thomas v. City of Chattanooga, 398 F.3d 426, 432 (6th Cir. 2005) (quoting Fed. R. Evid. 702 advisory committee's note).  "In other words, expert opinions are inadmissible if based on speculative assumptions." Cerbelli v. City of New York, No. 99 CV 6846(ARR)(RML), 2006 WL 2792755, at *2 (E.D.N.Y. Sept. 27, 2006) (citing In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988, 37 F.3d 804, 824 (2d Cir. 1994), overruled on other grounds by Zicherman v. Korean Air Lines Co., 516 U.S. 217 (1996), as recognized in Brink's Ltd. v. South African Airways, 93 F.3d 1022, 1029 (2d Cir. 1996)); Kumho Tire, 526 U.S. at 157 ("Opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" should not be admitted.).

## II. Defendants' Objections

Defendants object broadly to Pollini's testimony, contesting, as a threshold matter, his qualifications as an expert.  See Def. SJ Mem. at 44.  They dispute both the relevance of his proposed testimony to the issues in the case and the reliability of his methods and principles. See id. at 43-44.  Defendants further argue that Pollini's proposed testimony would draw factual conclusions that would undermine the jury's role as ultimate fact-finder.  See id. at 44-45.  The Court considers each of these arguments in turn.

### A. Pollini's Qualifications as an Expert

Pollini has extensive practical and educational qualifications.  He spent 33 years with the NYPD, retiring in 2002 at the rank of lieutenant commander after having previously served

as a patrol officer, detective, sergeant, and lieutenant.  <u>See</u> Pl. SJ Opp. at 50.  Pollini spent the

majority of his career with the NYPD working in an investigative capacity: he was involved in

many investigations and arrests and supervised and conducted "hundreds" of lineups.  <u>See</u> <u>id.</u>

He has particular experience with robbery investigations, having served as a detective,

sergeant, and lieutenant in the Major Case Squad; the commanding officer of the 81 Detective

Squad; and the commanding officer of the Brooklyn Robbery Squad.  <u>See</u> <u>id.</u>  At the NYPD,

Pollini also received extensive formal training on the standards for criminal investigations,

including conducting identification procedures, conducting witness and suspect interviews,

handling and disclosing evidence favorable to the suspect, and documenting the steps in an

investigation.  <u>See</u> <u>id.</u>

   In addition, Pollini has a master's degree in criminal justice and a bachelor's degree in

police science from the John Jay College of Criminal Justice.  <u>See</u> <u>id.</u> at 50-51.  In 1995,

Pollini became a part-time instructor at John Jay, and in 2008, a full-time faculty member and

deputy chair at John Jay's Department of Law, Police Science, and Criminal Justice

Administration.  <u>See</u> <u>id.</u> at 51.  Pollini has taught undergraduate and graduate-level courses

that dealt with conducting witness interviews, witness identification procedures, and lineups, as

well as handling exculpatory evidence.  <u>See</u> <u>id.</u>  Pollini has also served as a police-practices

expert in more than fifty cases, and has given testimony in this District Court.  <u>See</u> <u>id.</u>; <u>see</u>

<u>also</u> Curriculum Vitae of Joseph Pollini, attached to Pollini Rep., DE #121-1 at 16 (noting that

Pollini testified as a police-practices expert in <u>Velez v. City of New York</u>, 04-CV-1775

(ENV)(MDG)).

Despite this broad experience, defendants call Pollini's qualifications as a police-practices expert "questionable," on the ground that "he has not worked as a police officer since 2002, six years before plaintiff's prosecution in 2008." Def. SJ Mem. at 52.[7]  The Court disagrees with defendants' general assessment.  Pollini's extensive experience as both a police detective and an academic establish "a basis from which to draw sound opinions or inferences from anecdotal or oral data" about police practices "in an effort to develop an understanding of actual [law enforcement] practices." Katt v. City of New York, 151 F.Supp.2d 313, 357 (S.D.N.Y. 2001) (Lynch, D.J.).  That Pollini retired from the NYPD in 2002, several years before the events at issue in this case, is "grist for cross-examination; not a ground for exclusion under Rule 702." Id.; see Vazquez v. City of New York, No. 10-CV-6277(JMF), 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014); Cerbelli, 2006 WL 2792755, at *11.

### B. Relevance of Pollini's Testimony

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  Irrelevant evidence is not admissible.  Fed. R. Evid. 402.  In the context of expert testimony, the expert witness's specialized knowledge must "help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702(a).

Defendants argue that Pollini's proposed testimony is irrelevant in that the testimony

---

[7]  Defendants also object to Pollini's qualifications on the ground that "he has admitted that his opinions are based largely on speculation and surmise rather than on methodology that has been tested . . . ." Def. SJ Mem. at 52.  The Court discusses these objections at greater length in the section on the reliability of Pollini's methods and principles.  See infra pp. 19-20.

would be "focused on whether there was probable cause for plaintiff's arrest, which is not at

issue in this case . . . ." Def. SJ Mem. at 44. Recognizing this problem, plaintiff agreed to

narrow the scope of Pollini's testimony considerably. In their opposition to defendants'

summary judgment motion, plaintiff's counsel stipulated that:

> Upon further consideration, we have decided that we will not offer at the
> summary judgment stage or at trial any expert testimony or affidavit of Joseph
> Pollini, plaintiff's police practices expert, either on the ultimate issue of
> probable cause or the issue of whether either of the police detective-defendants
> (or anyone else) was lying or truthful during the course of the investigation or
> prosecution of the case.

Pl. SJ Opp. at 45. Pollini would testify only as to defendants' "failure to follow proper and

accepted police practices and procedures[,]" including:

1. Identifying the perpetrator and determining cause for a stop or arrest, by
   considering all of the physical characteristics in the descriptions provided by
   eyewitnesses concerning the appearance of a suspect;

2. Analyzing surveillance videos and photos, with technical assistance if
   necessary, to determine whether the physical appearance of an arrestee is
   consistent with the known features of the actual perpetrator;

3. Accurately determining and recording the height of an arrestee at the time of
   booking;

4. Taking notes on and fully and formally documenting in a written report all
   relevant statements made by a suspect;

5. As time reasonably permits, interviewing and making a written record of the
   exculpatory statements of alibi witnesses;

6. Concerning lineups, conducting a standing lineup when the suspect's height is in
   issue, using fillers similar to the suspect in physical appearance and clothing,
   making a complete record of the procedures used, including the responses of the
   witnesses, and separating the witnesses from each other before and after the
   procedure to avoid contamination; and

7. Making a record, or at least informing the prosecutor, of all information

favorable to the defense under *Brady*, including a witness's statement that the
perpetrator is not in the lineup.

Id. at 46.

After Judge Ross ruled on defendants' summary judgment motion, plaintiff agreed to
limit Pollini's testimony to the issues of standard lineup procedures and recording suspects'
statements only.  See 3/1/16 Pl. Letter at 1-2 (citing Pollini Rep. ¶¶ 15-16) (quoted *supra* at p.
7).

### 1.  The Lineup Testimony

Plaintiff should not be permitted to offer expert testimony that is relevant only to
facts no longer in issue in the case.  See, e.g., Fashion Boutique of Short Hills, Inc. v. Fendi
USA, Inc., 314 F.3d 48, 60 (2d Cir. 2002) ("The district court's 'gatekeeping' function in
evaluating expert testimony requires that it look to Federal Rule of Evidence 401 to determine
whether the testimony is relevant; i.e., whether it 'ha[s] any tendency to make the existence of
any fact *that is of consequence to the determination of the action* more probable or less
probable than it would be without the evidence.'") (quoting Fed. R. Evid. 401) (emphasis
added)[8]; Campbell *ex rel.* Campbell v. Metro. Prop. & Cas. Ins. Co., 239 F.3d 179, 184 (2d
Cir. 2001); Carmichael v. City of New York, 34 F.Supp.3d 252, 265 (E.D.N.Y. 2014)
("Expert testimony that is not probative of a fact in issue is irrelevant and inadmissible."),
appeal dismissed, No. 14-3142 (2d Cir. Dec. 22, 2014).

---

[8]  The text of Rule 401 has since been restyled slightly to improve clarity, cf. *supra* pp. 12-13,
but is substantially the same, see Fed. R. Evid. 401, advisory committee's note to 2011
amendments ("These changes are intended to be stylistic only. There is no intent to change any
result in any ruling on evidence admissibility.").

Following Judge Ross's partial grant of summary judgment, many of plaintiff's claims involving police lineup practices are no longer in issue.  Judge Ross granted summary judgment as to all of plaintiff's malicious prosecution claims, as well as two of his three fair-trial/evidence-manufacturing claims.  See 1/27/16 O&O at 23.   In support of these claims, plaintiff had argued that the police lineups in which he was placed were unduly suggestive because, *inter alia*, he differed in height and physical appearance from the "fillers," he was the only lineup participant to wear headgear, and lineup participants were initially seated, rather than standing.  See id. at 19-20.   In her ruling, Judge Ross determined that "the lineups were not unduly suggestive and that the evidence available to defendants did not exonerate plaintiff on the basis of height alone."  Id. at 23.[9]

Much of Pollini's proposed Lineup Testimony, see Pollini Rep. ¶ 15(a)-(c); Pl. SJ Opp. at 46, ¶¶ 1-3, 6, is offered in support of plaintiff's argument that he was subjected to lineup procedures that "did not conform to NYPD requirements[,]" 3/1/16 Pl. Letter at 2.  These portions of the Lineup Testimony are now no longer relevant, as they relate only to facts that have been resolved by Judge Ross's ruling on defendants' summary judgment motion. Accordingly, this Court recommends that Pollini be precluded from giving the testimony detailed in paragraph 15, subsections (a) through (c), of his Report, and in paragraphs 1,2, 3, and 6 of Plaintiff's Summary Judgment Opposition, see *supra* pp. 13-14.

At the same time, Judge Ross denied summary judgment as to plaintiff's Brady claims against DeRienzo, as well as his fair-trial claim that DeRienzo and Garrity had manufactured

---

[9]  Plaintiff's sole surviving fair-trial claim -- that DeRienzo and Garrity falsified and forwarded plaintiff's self-identification statements to ADA Whitt, see 1/27/16 O&O at 23 -- is discussed in the section on the Suspect-Statements Testimony, see *infra* pp. 17-18.

evidence by falsifying and forwarding plaintiff's self-identification statements to ADA Whitt. See 1/27/16 O&O at 23, 40. The basis of the surviving Brady claim is that DeRienzo withheld from the prosecution -- and therefore the defense -- certain exculpatory statements that Boyle made during the lineups, and did not disclose until the eve of trial the fact that Boyle had failed to identify plaintiff as the perpetrator in the first lineup. See id. at 33. Those remaining portions of the Lineup Testimony that relate to Boyle's statements do have the tendency to make DeRienzo's alleged Brady violations "more or less probable." Fed. R. Evid. 401.

In particular, Pollini's report recounts briefly Boyle's December 10, 2007 viewing of a lineup in which plaintiff was a subject. See Pollini Rep. ¶ 15(g). It goes on to state Pollini's expert opinion that, "[a]ccording to department guidelines, the detective was required to inform the [district attorney] if a witness that viewed a line up told him that the person that committed the crime was not in the lineup." Id. ¶ 15(h). More generally, Pollini proposes to testify to defendants' "failure to follow proper and accepted police practices and procedures" in "interviewing and making a written record of the exculpatory statements of alibi witnesses[,]" Pl. SJ Opp. at 46, ¶ 5, and "[m]aking a record, or at least informing the prosecutor, of all information favorable to the defense under *Brady*, including a witness's statement that the perpetrator is not in the lineup[,]" id. at 46, ¶ 6. Pollini's report states his opinion that DeRienzo's handling of the witnesses during the lineups was deficient because he failed to record how long witnesses viewed the lineups, see Pollini Rep. ¶ 15(f), and because witnesses were not separated as they awaited the viewings, see id. ¶ 15(f).

Defendants argue that this proposed testimony is nonetheless irrelevant because

"whether the defendant officers followed what Pollini considers acceptable police procedures does not bear on whether they satisfied constitutional standards." Def. SJ Mem. at 42. Defendants are mistaken. "Courts in and out of this Circuit routinely admit testimony on police practices in civil rights cases of this sort." Vazquez, 2014 WL 4388497, at *13 (admitting the testimony of a police-practices expert in a civil rights case involving Brady claims) (collecting cases). Expert testimony that a defendant officer deviated from accepted police practice is *relevant* to establishing a constitutional violation -- even though such deviation does not constitute a constitutional violation *per se*. See, e.g., Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) (evidence that police practices were "contrary to the practice of most police departments" relevant to Monell claim) (citation and quotations omitted); Vazquez, 2014 WL 4388497, at *13 & n.6. Here, Pollini's proposed testimony is relevant in that a reasonable juror could conclude therefrom that it is more likely (than it would have been without Pollini's testimony) that DeRienzo engaged in practices that constitute Brady violations.

## 2. *The Suspect-Statements Testimony*

Pollini also proposes to testify as to the defendant officers' failure to follow NYPD guidelines concerning "[t]aking notes on and fully and formally documenting in a written report all relevant statements made by a suspect . . . ." Pl. SJ Opp. at 46, ¶ 3; see also Pollini Rep. ¶ 16. Following Judge Ross's grant of summary judgment on the malicious prosecution claims, the question of probable cause to prosecute plaintiff is no longer at issue. See 1/27/16 O&O at 22. Nonetheless, Pollini's proposed testimony is directly relevant to plaintiff's

surviving fair-trial claim that the defendant officers falsified inculpatory self-identification statements and forwarded them to ADA Whitt.  This claim turns on plaintiff's contention that DeRienzo and Garrity never made a record of plaintiff's alleged statement identifying himself as the person depicted in the Visio wanted poster.  Plaintiff argues that a reasonable juror could infer from this lack of documentation that plaintiff never made the self-identification statement.  See Pollini Rep. ¶ 16 (i).  Pollini's testimony that NYPD guidelines require that detectives create such a record tends to make this inference more probable, and is thus relevant to a question of fact in issue.[10]

### C. The Reliability of Pollini's Methods and Principles

As part of its "gatekeeping" function, the Court must also assess the reliability of the expert's methods and procedures.  This inquiry is a "flexible" one that "depends upon the particular circumstances of the particular case at issue."  Vazquez, 2014 WL 4388497, at *12 (citing Floyd v. City of New York, 861 F.Supp.2d 274, 286 (S.D.N.Y. 2012) (internal quotation marks omitted)).  Although a trial court should "admit expert testimony only where

---

[10]  Defendants also cite Rule 403 of the Federal Rules of Evidence, see Def. SJ Mem at 42, which states that relevant evidence may nonetheless be excluded if "its probative value is *substantially* outweighed by a danger of . . . unfair prejudice . . . ."  Fed. R. Evid. 403 (emphasis added).  The prejudice that Rule 403 is concerned with involves "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (internal citations omitted) (ellipsis in original).  As noted *infra* p. 20, this Court recommends limiting Pollini's testimony to prevent him from testifying to legal conclusions.  To the extent that Pollini is testifying as to the defendant officers' improper conduct, this is the same conduct out of which plaintiff's Brady and evidence-manufacturing claims arise.  "[T]he relationship, and distinction, between constitutional standards and police policies and standards can be addressed through appropriate jury instructions at trial."  Vazquez, 2014 WL 4388497, at *13 n.6.  In this way, the defendant officers will suffer no unfair prejudice.

it is offered by a qualified expert and is relevant and reliable," Cohalan v. Genie Indus., Inc.,

No. 10 Civ. 2415(JMF), 2013 WL 829150, at *3 (S.D.N.Y. Mar. 1, 2013), exclusion remains

"the exception rather than the rule," Floyd, 861 F.Supp.2d at 287 (internal quotation marks

omitted).  Where, as here, the expert's proposed testimony is "not scientific in nature[,]" the

"testimony will not rely on anything like a scientific method . . . ." In re Methyl Tertiary

Butyl Ether ("MTBE") Prods. Liab. Litig., No. 1:00-1898, 2008 WL 1971538, at *3

(S.D.N.Y. May 7, 2008).

    Defendants charge that Pollini's opinions "rest on idiosyncratic standards," Def. SJ

Mem. at 48, and that "there is no methodology applied by Pollini that is evident from his

report[,]" id. at 51.  Plaintiff does not offer Pollini as a scientific expert, however, but as one

with practical and academic knowledge of NYPD practices.  See Pl. SJ Opp. at 52.  As such,

he may rely on his "relevant experience" and "qualifications" in rendering a professional

opinion.  United States v. Hamilton, 538 F.3d 162, 174 (2d Cir. 2008); see also MTBE, 2008

WL 1971538, at *3; Katt, 151 F.Supp.2d at 357 ("[A] large and fully respectable branch of

the field . . . is based on 'anecdotal' research . . . incorporating interviews with police

officers, criminals, and victims, in an effort to develop an understanding of actual practices in

the real life of crime and law enforcement."); SR Int'l Bus. Ins. Co. v. World Trade Ctr.

Props., LLC, 467 F.3d 107, 133-34 (2d Cir. 2006) (holding that "that the district court acted

within its discretion when it permitted [an expert witness] to testify as an expert on custom and

practice in the property insurance industry"); Scott v. City of New York, 591 F.Supp.2d 554,

563 (S.D.N.Y. 2008) ("[T]o the extent that [the police practices expert] bases his testimony on

personal observations made in a lengthy career at the NYPD, he may testify as an expert in

industry practices, a common occurrence in civil litigation."). Defendants' challenges to the reliability of Pollini's opinions "ultimately go to the weight of his testimony rather than its admissibility." Vazquez, 2014 WL 4388497, at *12 (collecting cases).

### D. The Risk of Undermining the Jury's Role as Fact-Finder

Finally, defendants contend that Pollini's testimony would usurp the fact-finding role of the jury by delivering a "summation from the witness stand." Def. SJ Mem. at 46 (citing Lippe v. Bairnco Corp., 288 B.R. 678, 687-88 (S.D.N.Y. 2003)). Defendants are correct that an expert witness may not adopt a legal conclusion or "communicat[e] a legal standard—explicit or implicit—to the jury." Hygh v. Jacobs, 961 F.2d 359, 364 (2d Cir. 1992); see also Cerbelli, 2006 WL 2792755, at *11 (collecting cases). Pollini may nonetheless structure his testimony in a way that avoids these problems. He may give his expert opinion on what NYPD guidelines and standard police practices require of investigating officers, and whether the defendant officers deviated from "acceptable police activity." Vazquez, 2014 WL 4388497, at *9. Pollini should not, however, be permitted to draw inferences that are properly left to the jury or make conclusions about whether the defendant officers violated constitutional standards. To the extent that Pollini's proposed testimony speculates on whether DeRienzo and Garrity falsified plaintiff's self-identification statements,[11] this testimony should be

---

[11] See Pollini Rep. ¶ 16(f) ("This would have increased the probability that this identification did in fact occur, the way it was described by Detective Garrity."); id. ¶ 16(i) ("[T]he absence of such a record here suggests that in all probability the statements by Mr. Nnodimele claimed to have been made by Detective Garrity and Detective DeRienzo were never made. Without the alleged statements Detective Garrity and Detective DeRienzo did not have probable cause

(continued…)

precluded.[12]   See, e.g., Fate v. Village of Spring Valley, No. 11 Civ. 6838(JPO), 2013 WL 2649548, at *6 (S.D.N.Y. June 13, 2013) (police practices expert would not be permitted to "offer testimony about what he believes actually happened or about the credibility of any witness").

## CONCLUSION

For the foregoing reasons, this Court finds certain portions of Pollini's proposed testimony to be relevant and reliable.  Accordingly, this Court rules that Pollini will be permitted to give the testimony plaintiff has proposed, subject to the following limitations: Pollini will not give testimony that is relevant solely to lineup procedures no longer at issue in this case, see Pollini Rep. ¶ 15(a)-(c); Pl. SJ Opp. at 46, ¶¶ 1-3, 6, draw factual inferences as to whether the defendant officers falsified self-identification statements, see Pollini Rep. ¶ 16(f), or provide his opinion as to whether the defendant officers' conduct amounted to a constitutional violation, see id. ¶ 16(i).

Any objections to this Memorandum and Order must be filed with the Honorable

---

[11](...continued)
to detain Mr. Nnodimele for so many hours until the lineups could occur.").

[12]   As defendants point out, Pollini's expert opinion on what constitutes acceptable police procedure is not equivalent to what the Constitution requires.  See Def. SJ Mem. at 42.  This undermines defendants' argument that Pollini's testimony would *necessarily* be tantamount to a conclusion about the underlying legal standard.  Pollini will testify that DeRienzo and Garrity deviated from standard police procedure by failing to record a suspect's statements, and the trial court may charge the jury about the distinction between constitutional standards and NYPD policies.  See *supra* p. 18 n.10.  A reasonable juror could conclude therefrom that it is more likely (than it would have been without Pollini's testimony) that DeRienzo and Garrity falsified plaintiff's self-identification statements.

Allyne R. Ross by April 11, 2016.  Failure to file objections in a timely manner may waive a

right to appeal the District Court order.

        **SO ORDERED.**

**Dated:**      **Brooklyn, New York**
              **March 24, 2016**

                       /s/ *Roanne L. Mann*
                       **ROANNE L. MANN**
                       **CHIEF UNITED STATES MAGISTRATE JUDGE**