UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARTIN NNODIMELE,

                Plaintiff,

  -against-

DONALD DERIENZO and EDWARD GARRITY,

                Defendants.

13 Civ. 3461 (ARR)(RLM)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO JUDGE MANN'S MARCH 24, 2016 MEMORANDUM & ORDER

Law Offices of Joel B. Rudin, P.C.
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 752-7600


Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-500

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    A. Mr. Pollini's Testimony Diminishes the Probative Value of the Lineups and Supports Causation on Plaintiff's Evidence Manufacturing Claim .................................................. 4

    B. Mr. Pollini's Testimony Is Relevant Should Defendants Open the Door, As They Plainly Intend .................................................................................................................... 5

    C. Mr. Pollini's Testimony Is Evidence of Defendants' Plan to Improperly Prosecute Plaintiff ............................................................................................................................. 6

    D. Defendants Agree that the Lineups Are Relevant and Will Not Be Prejudiced by the Admission of Mr. Pollini's Testimony ........................................................................... 8

CONCLUSION ...................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Agushi v. Duerr*,
    196 F.3d 754 (7th Cir. 1999) ................................................................................ 8

*Carofino v. Forester*,
    450 F. Supp. 2d 257 (S.D.N.Y. 2006) ................................................................ 6, 7

*Collens v. City of New York*,
    222 F.R.D. 249 (S.D.N.Y. 2004) ........................................................................ 3

*Dandong v. Pinnacle Performance Ltd.*,
    No. 10 Civ. 8086, 2012 WL 4793870 (S.D.N.Y. Oct. 9, 2012) ............................ 4

*United States v. Brennan*,
    798 F.2d 581 (2d Cir. 1986) ................................................................................ 6

*United States v. O'Connor*,
    580 F.2d 38 (2d Cir. 1978) .................................................................................. 6

**Rules & Statutes**

28 U.S.C. § 636(b)(1)(A) ............................................................................................ 3

Federal Rule of Evidence 401 .................................................................................... 5

Federal Rule of Evidence 403 ................................................................................ 6, 8

Federal Rule of Evidence 404(b) ........................................................................... 6, 8

Plaintiff Martin Nnodimele objects to that portion of Magistrate Judge Roanne L. Mann's March 24, 2016 Memorandum and Order that precludes Plaintiff's police practices expert, Joseph Pollini, from testifying concerning New York City Police Department ("NYPD") protocols for conducting investigative lineups and the manner in which the procedures the police Defendants used in this case deviated from such protocols. *See* Magistrate Judge Mann's Memorandum & Order, March 24, 2016 ("M&O"), Dkt. 123 at 14-15.[1]

Contrary to Judge Mann's conclusion, Mr. Pollini's proffered testimony is relevant to the remaining claims in this case and is evidence of Defendants' plan to close this investigation and ensure Plaintiff's prosecution through improper techniques. Defendants will not be prejudiced by the admission of Mr. Pollini's testimony as they have already retained an expert to opine on the issues about which Judge Mann preclude Mr. Pollini from testifying.

## BACKGROUND

Mr. Pollini proposes to testify that the lineups were conducted in a manner that is inconsistent with NYPD policy and practice. According to Mr. Pollini, NYPD protocol requires that all persons in a lineup "should be about the same age, height and physical makeup," and "similarly clothed." *See* Ex. A, Pollini Report at ¶ 15(c).[2] In Plaintiff's lineup, Mr. Pollini opines, Plaintiff's clothing, complexion, and age substantially differed from those of the lineup fillers, in violation of NYPD procedure. *See id.* at ¶ 15(a)-(c). Mr. Pollini would also testify that the seated lineups Defendant DeRienzo used were deficient because NYPD procedure requires that a standing lineup be conducted where, as here, there is a substantial disparity between the

---

[1] The Memorandum & Order recommends that Mr. Pollini "be precluded from giving testimony detailed in paragraph 15, subsections (a) through (c), of his Report, and in paragraphs 1, 2, 3, and 6" on page 13 of the Memorandum & Order. M&O, Dkt. 123 at 13, 15. Plaintiff does not challenge the exclusion of those portions of Mr. Pollini's testimony described in paragraphs 1-3 on page 13 of the Memorandum & Order. *See* M&O, Dkt. 123 at 13 ¶¶ 1-3.

[2] All citations to "Ex. __" refer to exhibits to the Declaration of Samuel Shapiro, dated April 11, 2016.

1

suspect's height and the eyewitnesses' height descriptions. *See* M&O, Dkt. 123 at 13 ¶ 6. Finally, Mr. Pollini would testify that Defendants' failure to make a complete record of the procedures used during the lineups—including witness responses—and to separate witnesses from each other both before and after the lineup violated NYPD procedure. *See id.*[3]

This testimony is essential on the issue of causation, as framed by the Court in its summary judgment opinion. *See* Opinion & Order, January 27, 2016 ("SJ Op."), Dkt. 116, at 28-29. It rebuts the defense that the lineups were such overwhelming evidence of "guilt" that Defendants' manufacturing of false inculpatory statements and Defendant DeRienzo's withholding of *Brady* material did not play any role in causing Plaintiff's prosecution and conviction. The testimony also should be admitted because it is evidence of Defendants' overarching scheme or plan to ensure Plaintiff's prosecution through improper police techniques they knew would result in the development or use of false or unreliable evidence of guilt.

Judge Mann precluded this portion of Mr. Pollini's proposed testimony (paragraphs 15(a)-(c) of his expert report and paragraph 6 on page 13 of the Memorandum & Order) based on

---

[3] Judge Mann did not entirely preclude Mr. Pollini from testifying about the lineups. The opinions set forth in paragraph 15, subsections (f) through (h), of Mr. Pollini's report, which concern separating witnesses who are viewing a lineup (¶ 15(f)) and the failure to report Kathleen Boyle's statement that Plaintiff was not the perpetrator (¶ 15(g)-(h)), are admissible, Judge Mann found, because they are relevant to Plaintiff's *Brady* claim. *See id.* at 16-17. These opinions overlap with the opinions described in paragraph 6 on page 13 of the Memorandum & Order. *See id.* at 13 ¶ 6 (describing Mr. Pollini's opinion that Defendant DeRienzo violated NYPD procedure by failing to "make[] a complete record of the procedures used, including the responses of the witnesses," and failing to "separat[e] the witnesses from each other before and after the procedure to avoid contamination").

Since Judge Mann held that the opinions expressed in paragraph 15, subsections (f) through (h), of Mr. Pollini's report are admissible, it was clear error to preclude Mr. Pollini from testifying concerning overlapping opinions expressed in paragraph 6 on page 13 of the Memorandum & Order.

The Memorandum & Order does not directly address paragraph 15, subsections (d) and (e), of Mr. Pollini's report. These subsections describe Mr. Pollini's opinion that Defendant DeRienzo violated NYPD procedure by failing to record statements made by either Jessica Martinez or Kathleen Boyle as they were viewing the lineup and failing to record how long Ms. Boyle viewed the lineup. These opinions also overlap with the opinions described in paragraph 6 on page 13 of the Memorandum & Order, and they should therefore be admitted because, as Judge Mann held, they are relevant to Plaintiff's *Brady* claim. *See id.* To the extent they have been precluded, Plaintiff objects to their preclusion for the reasons stated in this brief.

2

the conclusion that the procedures used to conduct the lineups are "no longer relevant to this case." M&O, Dkt. 123 at 15.

Notably, on March 31, 2016, seven days after Judge Mann issued the Memorandum & Order, Defendants served a report from their police practices expert that includes a number of opinions on the appropriateness of the lineups Defendants conducted. *See* Ex. B at 5-7. Both parties thus appear to agree that the lineups remain relevant to the issues in this case.

## ARGUMENT

Mr. Pollini's testimony concerning the flawed lineups is relevant to this case, and thus admissible, because it (1) diminishes the probative value of the lineup evidence and thus strengthens the causal link between the fabricated self-identification statements and withheld *Brady* evidence, and Plaintiff's prosecution, and (2) is evidence of Defendants' overall plan to "close" the case and ensure Plaintiff's prosecution through the deliberate use of improper techniques and misconduct. Defendants will not be prejudiced if Mr. Pollini's testimony is admitted because they have already retained an expert to opine on the propriety of the lineup techniques, effectively agreeing that the lineups will be relevant at trial.

A magistrate judge's order on a non-dispositive pretrial matter may be modified upon a showing that the order is "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A). "An order is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Collens v. City of New York*, 222 F.R.D. 249, 251 (S.D.N.Y. 2004) (internal quotation marks omitted) (sustaining objections to magistrate judge's order). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Dandong v. Pinnacle Performance Ltd.*, No. 10

3

Civ. 8086, 2012 WL 4793870, at *3 (S.D.N.Y. Oct. 9, 2012) (internal quotation omitted) (reversing magistrate judge's order because it was "contrary to law").

**A.** **Mr. Pollini's Testimony Diminishes the Probative Value of the Lineups and Supports Causation on Plaintiff's Evidence Manufacturing Claim**

The Court's summary judgment opinion recognizes, consistent with Defendants' arguments, that the Defendants will contend at trial that the manufactured statement evidence and the withheld *Brady* material (the exculpatory statements of Kathleen Boyle) were not a substantial cause of Plaintiff's prosecution and conviction because of the independent probative value of the lineup identification evidence. *See* SJ Op., Dkt. 116 at 27-31. Judge Mann overlooked the Court's discussion and mistakenly concluded that the defects in the lineups "are no longer relevant" to this case. *See* M&O, Dkt. 123 at 15. The preclusion of portions of Mr. Pollini's testimony flows directly from this clear error and should therefore be reversed.

To prevail on his evidence manufacturing claim, Plaintiff must show that "the forwarding of false evidence by DeRienzo and Garrity to ADA Whitt was a proximate cause of the harm of which plaintiff complains." SJ Op., Dkt. 116 at 28-29. Defendants argued on summary judgment—and presumably will argue at trial—that Plaintiff cannot meet this burden because the fabricated evidence forwarded by Defendants DeRienzo and Garrity was of minimal value when compared with the other evidence against Plaintiff, including the positive lineup identifications. *See* Dkt. 77 (Defs.' SJ Br.) at 31-34. The Court declined to hold that this conclusion was mandated as a matter of law, but left the issue to be tried by the jury. *See* SJ Op., Dkt. 116 at 27.

At trial, the jury will be asked to determine whether the other evidence against Plaintiff was "so overwhelming" that Plaintiff's "self-identification statements were not a substantial factor in causing the harm" he suffered. *Id.* at 29. Thus, the jury's evaluation of the probative value of such other evidence against Plaintiff—principally, the lineup identifications—will be

4

essential to its determination of the causation question. Mr. Pollini will testify that the lineups used against Plaintiff were not conducted according to NYPD procedures intended to minimize suggestiveness. *See* Ex. A at ¶ 15 (a)-(c); M&O, Dkt. 123 at 13 ¶ 6. This testimony "has a tendency" to diminish the probative value of the lineup evidence, an issue "of consequence in determining the action." Fed. R. Evid. 401. If the jury assigns less weight to the lineup evidence, it may reasonably conclude that the causal link between Defendants' misconduct—the fabricated self-identification statements and the withheld *Brady* evidence—and the prosecution is strengthened.[4]

Judge Mann therefore clearly erred by concluding that the defects in the lineup are not relevant to Plaintiff's surviving claims.

**B.     Mr. Pollini's Testimony Is Relevant Should Defendants Open the Door, As They Plainly Intend**

Should defendants refer to or attempt to introduce evidence of any of the lineups or positive identification testimony, for example, to suggest that their fabrication of evidence or *Brady* violations were not a proximate cause or were not material to Plaintiffs' arrest, detention, imprisonment, or conviction, they will have opened the door to evidence concerning the reliability of the lineups.

There is no question that Defendants intend to open this door. Their own police practices expert's report makes plain they intend to discuss lineups at trial. *See* Ex. B at 5-7. However,

---

[4]     Any argument that Mr. Pollini's testimony is irrelevant because defects in the lineup procedures were not before the prosecutors is meritless. The lineup defects about which Mr. Pollini would testify should have alerted any reasonable prosecutor that the lineup identifications were of questionable reliability and diminished probative value. Defendants may not argue that prosecutors subjectively failed to consider these lineup defects as the Court has already ruled, with the agreement of Defendants' counsel, that the parties may not present evidence concerning the prosecutors' subjective thought processes, only "objective facts" available to them. *See* Ex. C, Transcript of Conference before Judge Mann, July 24, 2014, at 23. Consistent with this ruling, Defendants objected to, and succeeded in preventing, any deposition questioning by Plaintiff concerning the subjective thought processes of the various prosecutors who played a role in this case.

5

should Defendants stipulate to make no reference to the lineups or positive identifications made by witnesses, Plaintiff would revisit these objections.

If, on the other hand, Defendants refer to or introduce evidence of these lineups/identifications, Plaintiff is plainly entitled to undermine and rebut them, including through expert testimony.

C. **Mr. Pollini's Testimony Is Evidence of Defendants' Plan to Improperly Prosecute Plaintiff**

Mr. Pollini's lineup testimony is also admissible as evidence of Defendants' plan to "close" the investigation and ensure Plaintiff's prosecution and conviction.

Evidence of other wrongs may be admitted to show the existence of a common scheme or plan. *See* Fed. R. Evid. 404(b); *United States v. O'Connor*, 580 F.2d 38, 41 (2d Cir. 1978). The Second Circuit follows an "inclusionary" approach to common scheme or plan evidence—it is "admissible for any purpose other than to show a defendant's criminal propensity, as long as it is relevant to some disputed issue in the trial and satisfies the probative-prejudice balancing test of Fed. R. Evid. 403." *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (internal quotation marks and citations omitted).

Common scheme or plan evidence typically falls into two categories: The first includes evidence of other misconduct "demonstrating a connected or inseparable transaction," and the second includes "similar acts evidence offered to show the existence of a definite project intended to facilitate completion" of the misconduct in question. *O'Connor*, 580 F.2d at 41-42. Evidence of a common scheme or plan does not necessarily "fall neatly" into one category or the other, but rather, may have characteristics of both. *Carofino v. Forester*, 450 F. Supp. 2d 257, 272 (S.D.N.Y. 2006).

Here, Mr. Pollini's testimony "complete[s] a story" of Defendants' plan to ensure Plaintiff's prosecution "by demonstrating that similar acts occurred very near in time and place to those acts at issue in this case." *Id.* It also shows "the existence of a definite project" intended to facilitate Plaintiff's prosecution. *Id.*

To prosecute Plaintiff, Defendants used lineup procedures that, as explained by Mr. Pollini, substantially deviated from their training and NYPD protocol. They did so, Plaintiff will contend, as part of an overall scheme to "close" this case with sufficient evidence to ensure Plaintiff's prosecution and likely conviction, a scheme that also involved fabricating Plaintiff's self-identification statements and withholding exculpatory evidence from prosecutors and Plaintiff's criminal defense attorney.

Mr. Pollini's testimony concerns one piece of Defendants' plan: the improper lineups. A jury could reasonably conclude, based on Mr. Pollini's testimony, that Defendants' use of improper lineup techniques shows the existence of a plan to secure Plaintiff's prosecution through improper conduct, supporting Plaintiff's claim that Defendants fabricated and withheld evidence in furtherance of their plan.

While this Court's summary judgment decision held that the lineups—standing alone—were not so suggestive as to amount to a due process violation and not so unreliable that there was no probable cause as a matter of law, this does not mean that the procedures used did not deviate from NYPD protocol in a manner that suggests Defendants acted in bad faith to secure Plaintiff's prosecution. *See* M&O, Dkt. 123 at 17 ("Expert testimony that a defendant officer deviated from accepted police practice is *relevant* to establishing a constitutional violation—even though such deviation does not constitute a constitutional violation *per se*.").

7

The bad faith issue is in the case, not because Plaintiff any longer contends that he may recover directly for the improper lineups, but because it relates to the evidence manufacturing and *Brady* claims. Defendant DeRienzo's bad faith in conducting lineups that he knew deviated from NYPD protocol is evidence of his overall bad faith and of a common scheme or plan, with Defendant Garrity, to do whatever it took to ensure Plaintiff's prosecution. *See Agushi v. Duerr*, 196 F.3d 754, 761 (7th Cir. 1999) (officer's statement that he was going to "ruin" plaintiff and her husband should have been admitted because it was "part and parcel of the case at hand" and, under Rule 404(b), evidence that the officer "harbor[ed] ill-will" toward the plaintiff).

Mr. Pollini's testimony is admissible under Rule 403 because it is probative of Defendants' plan to prosecute Plaintiff and not unduly prejudicial, particularly since Defendants will offer their own expert to opine on the lineups. *See* Ex. B at 5-7.

**D.      Defendants Agree that the Lineups Are Relevant and Will Not be Prejudiced By the Admission of Mr. Pollini's Testimony**

Defendants have now retained a police practices expert whose report includes opinions concerning the lineups. *See* Ex. B at 5-7. It is telling that Defendants asked their expert to opine on the lineups; apparently, Defendants agree that the lineups are relevant to this case.

Defendants will not be prejudiced if Mr. Pollini is permitted to testify concerning the lineups as they have retained an expert who is prepared to offer opinions to rebut Mr. Pollini's lineup testimony. Of course, if Mr. Pollini's lineup testimony is excluded, Plaintiff intends to move to preclude the analogous portions of Defendants' expert's proposed testimony.

**CONCLUSION**

Plaintiff respectfully requests that the Court modify the Memorandum & Order to allow Mr. Pollini to testify concerning defects in the lineups that were used in connection with Plaintiff's criminal prosecution, as explained in paragraphs 15(a)-(c) of Mr. Pollini's expert report and paragraph 6 on page 13 of the Memorandum & Order.

Dated: April 11, 2016
       New York, New York

LAW OFFICES OF JOEL B. RUDIN, P.C.

By: _____/s_____
    Joel B. Rudin
    Haran Tae
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 752-7600 (t)
(212) 980-2968 (f)

EMERY CELLI BRINCKERHOFF
& ABADY LLP
Ilann M. Maazel
Samuel Shapiro
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000 (t)
(212) 763-5001 (f)

*Attorneys for Plaintiff*