UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARTIN NNODIMELE,

              Plaintiff,

    -against-

DONALD DERIENZO and EDWARD
GARRITY,

              Defendants.

13 Civ. 3461 (ARR)(RLM)

## PLAINTIFF'S MOTIONS *IN LIMINE*

Law Offices of Joel B. Rudin, P.C.
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 752-7600


Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-500

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................... v-viii

I.  THE TRIAL SHOULD BE BIFURCATED INTO A LIABILITY PHASE AND A
    DAMAGES PHASE ..................................................................................................... 1

    A.    Bifurcation Will Reduce Jury Confusion ....................................................... 1

    B.    Mr. Nnodimele Will Be Prejudiced if Damages Are Not Tried Separately ................. 3

    C.    Conclusion ................................................................................................. 4

II. EVIDENCE CONCERNING THE THOUGHT PROCESSES OF THE NEW YORK
    COUNTY DISTRICT ATTORNEY'S OFFICE SHOULD BE EXCLUDED ........................ 4

    A.    Background ................................................................................................. 4

    B.    Evidence Concerning the DA's Thought Processes Should Be Excluded Under the
          Law of the Case Doctrine ............................................................................. 6

    C.    Evidence Concerning the DA's Thought Processes Should Also be Excluded Under
          the Doctrine of Judicial Estoppel .................................................................. 8

    D.    Conclusion ................................................................................................. 10

III. EVIDENCE AND ARGUMENT CONCERNING THE ALLEGED INEFFECTIVENESS
     OF PLAINTIFF'S CRIMINAL DEFENSE ATTORNEY AND THE CRIMINAL JURY'S
     PURPORTED DISCREDITING OF PLAINTIFF'S TESTIMONY SHOULD BE
     EXCLUDED ............................................................................................................ 10

    A.    Applicable Law .......................................................................................... 11

    B.    Defendants Should Be Precluded from Introducing Evidence and Arguing that Mr.
          Nnodimele's Criminal Defense Counsel's Allegedly Deficient Performance Was a
          Supervening Cause of Plaintiff's Harm ......................................................... 14

          1.    Evidence Fabrication Claim .............................................................. 14

          2.    Brady Claim ................................................................................... 16

          3.    Evidence and Argument Concerning Ms. Iyer's s Performance Is Inadmissible
                Under Fed. R. Evid. 403 ................................................................... 17

C.      Defendants Should Be Precluded from Presenting Evidence or Arguing that the Criminal Jury's Rejection of All or Part of Plaintiff's Alibi Defense Was a Superseding Cause of Plaintiff's Harm.......................................................................18

D.      Conclusion ...........................................................................................................19

IV.  EVIDENCE OF PLAINTIFF'S PRIOR ARRESTS, CONVICTIONS, AND ALLEGED BAD ACTS SHOULD BE EXCLUDED ...............................................................................19

A.      Background ..........................................................................................................20

B.      Evidence of Mr. Nnodimele's Prior Convictions Should be Excluded .....................20

1.      Evidence of Mr. Nnodimele's 1999 and 2014 DWAI Convictions Should be Excluded.....................................................................................................20

2.      Evidence of Mr. Nnodimele's 2000 Attempted Assault Conviction Should be Excluded.....................................................................................................21

3.      Evidence of Mr. Nnodimele's 2014 and 2015 Convictions for Driving on a Suspended License Should be Excluded.......................................................22

C.      Evidence of Mr. Nnodimele's Prior Arrests Should be Excluded ............................23

D.      Evidence of Alleged Domestic Violence Should be Excluded..................................23

E.      Evidence of Mr. Nnodimele's Car Accidents Should be Excluded...........................24

F.      Defendants' Expert, Dr. Fayer, Should be Precluded from Testifying About Mr. Nnodimele's Attempted Assault Conviction, Arrests, Domestic Disputes, and Car Accidents.............................................................................................................25

G.      Conclusion ...........................................................................................................26

V.   DEFENDANTS SHOULD BE PRECLUDED FROM ARGUING THAT A "PATTERN" OF ROBBERIES STOPPED AFTER PLAINTIFF'S ARREST............................................26

A.      Background ..........................................................................................................27

B.      No Basis Exists to Argue that the "Pattern" of Robberies Stopped After Mr. Nnodimele's Arrest................................................................................................28

C.      Evidence Concerning the "Pattern" of Robberies Is Irrelevant ..................................28

D.      Evidence Concerning the "Pattern" of Robberies is Prejudicial................................28

E.      Conclusion ...........................................................................................................29

VI.  THE TESTIMONY OF DEFENSE "EXPERT" JOHN MONAGHAN SHOULD BE
     PRECLUDED OR, IN THE ALTERNATIVE, LIMITED ....................................................29

     A.    Mr. Monaghan Should be Precluded from Testifying ..................................29

     B.    Mr. Monaghan Should be Precluded from Offering His Opinion that Mr. Nnodimele
           Is Guilty, or Any Other Opinion Not in His Expert Report.........................................30

     C.    Mr. Monaghan Should be Precluded from Testifying About Whether the Police Had
           Probable Cause...............................................................................................31

     D.    Mr. Monaghan Should be Precluded from Testifying As to Whether Ms. Boyle, Mr.
           Nnodimele, Det. Garrity, Det. DeRienzo, or Anyone Else Is Telling the Truth..........32

     E.    Mr. Monaghan Should be Precluded From Relying Upon Or Citing Any Specific
           Provisions of the Patrol Guide or Detective Guide Unless They Were Cited in his
           Report or Deposition.......................................................................................33

     F.    Mr. Monaghan Should Be Precluded From Relying on this Court's Summary
           Judgment Opinion, or any Other Judicial Opinion in This Litigation .........................34

     G.    Mr. Monaghan Should Be Precluded From Testifying Beyond the Scope of Mr.
           Pollini's Testimony..........................................................................................34

     H.    Conclusion .......................................................................................................34

VII. TESTIMONY AND EVIDENCE CONCERNING THE DA's FINDINGS AND THE
     ADAs' OPINIONS OF PLAINTIFF'S INNOCENCE OR GUILT SHOULD BE
     EXCLUDED .........................................................................................................34

     A.    Background .......................................................................................................35

     B.    The ADAs' Opinions and the CIU's Findings Are Irrelevant .....................................35

     C.    The ADAs' Opinions and the CIU's Findings Are Inadmissible under Rule 403........36

     D.    The ADAs' Opinions and the CIU's Findings Are Needlessly Distracting ................36

     E.    The ADAs' Opinions Are Inadmissible Lay Opinion Testimony ...............................37

     F.    The Proffered Testimony Should be Excluded Because It Concerns the Thought
           Processes of the DA ........................................................................................38

     G.    Conclusion .......................................................................................................38

VIII. DEFENDANTS' PROFFERED WITNESSES FROM THE DEPARTMENT OF
     HOMELESS SERVICES SHOULD BE PRECLUDED FROM TESTIFYING ...................38

     A.    Background.................................................................................................................39

     B.    The Proffered Testimony Is Irrelevant.......................................................................39

     C.    The Proffered Testimony Is Prejudicial.....................................................................39

     D.    The Proffered Testimony Constitutes Inadmissible Lay Opinions.............................40

     E.    Ms. Lugo Should be Precluded from Testifying.........................................................40

     F.    Conclusion .................................................................................................................40

## TABLE OF AUTHORITIES

**Cases**

*Adams v. City of N.Y.*,
    993 F. Supp. 2d 306 (E.D.N.Y. 2014) ................................................................... 38

*Amato v. City of Saratoga Springs, N.Y.*,
    170 F.3d 311 (2d Cir. 1999) ......................................................................................... 1

*Banks v. Dretke*,
    540 U.S. 668 (2004) ................................................................................................... 16

*Bates v. Long Island R.R. Co.*,
    997 F.2d 1028 (2d Cir. 1993) ...................................................................................... 8

*Breitkopf v. Gentile*,
    41 F. Supp. 3d 220 (E.D.N.Y. 2014) ........................................................................ 12

*Busch v. City of N.Y.*,
    No. 00 Civ. 5211, 2002 WL 31051589 (E.D.N.Y. Sept. 9, 2002) ............................. 3

*Cameron v. City of N.Y.*,
    598 F.3d 50 (2d Cir. 2010) ................................................................................ 13, 31

*Cf. Ferrara v. Galluchio*,
    5 N.Y.2d 16 (N.Y. 1958) ........................................................................................... 15

*Cf. Zomber v. Vill. of Garden City*,
    No. 09 Civ. 4637 WL 4737052 (E.D.N.Y. Oct. 6, 2011) ........................................ 36

*Derdiarian v. Felix Contracting Corp.*,
    51 N.Y.2d 308 (1980) ................................................................................................ 12

*Deskovic v. City of Peekskill*,
    673 F. Supp.2d 154 (S.D.N.Y. 2009) ....................................................................... 12

*Epstein v. Kalvin-Miller Int'l, Inc.*,
    121 F. Supp. 2d 742 (S.D.N.Y. 2000) ........................................................................ 1

*Grant v. Alldredge*,
    498 F.2d 376 (2d Cir. 1974) ...................................................................................... 16

*Grant v. Westinghouse Elec. Corp.*,
    877 F. Supp. 806 (E.D.N.Y. 1995) ........................................................................... 12

*Guidi v. Inter-Continental Hotels Corp.*,
    No. 95 Civ. 9006, 2003 WL 1846864 (S.D.N.Y. Apr. 8, 2003) ................................. 1

*Guitierrez-Rodriguez v. Cartagena*,
    882 F.2d 553 (1st Cir. 1989) ..................................................................................... 12

*Hibma v. Odegaard*,
    769 F.2d 1147 (7th Cir. 1985) ................................................................................... 12

v

*Higazy v. Templeton,*
    505 F.3d 161 (2d Cir. 2007) ........................................................ 11, 13, 18

*Hydro Investors, Inc. v. Trafalgar Power Inc.,*
    227 F.3d 8 (2d Cir. 2000) ...................................................................... 11

*Intellivision v. Microsoft Corp.,*
    484 F. App'x. 616 (2d Cir. 2012) .............................................................. 8

*Jean-Laurent v. Hennessy,*
    840 F. Supp. 2d 529 (E.D.N.Y. 2011) ...................................................... 24

*Johnson v. Greer,*
    473 F.2d 101 (5th Cir. 1973) .................................................................. 11

*Jones v. City of Chi.,*
    856 F.2d 985 (7th Cir. 1988) ........................................................... 14, 18

*Katsaros v. Cody,*
    744 F.2d 270 (2d Cir. 1984) .................................................................... 1

*Limone v. United States,*
    497 F. Supp. 2d 143 (D. Mass. 2007), *aff'd on other grounds,* 579 F.3d 79
    (1st Cir. 2009) ..................................................................................... 14

*Martin v. City of N.Y.,*
    793 F. Supp. 2d 583 (E.D.N.Y. 2011) ...................................................... 13

*Michelson v. United States,*
    335 U.S. 469 (1948) ............................................................................. 23

*Mineo v. City of N.Y.,*
    No. 09 Civ. 2261, 2013 WL 1334322 (E.D.N.Y. Mar. 29, 2013) .................. 2, 3

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) ............................................................................... 8

*Park W. Radiology v. CareCore Nat'l LLC,*
    675 F. Supp. 2d 314 (S.D.N.Y. 2009) ...................................................... 37

*Philips v. City of New York,*
    No. 06 Civ. 3243, 2009 WL 3523528 (E.D.N.Y. Oct. 29, 2009) .................... 1

*Poventud v. City of N.Y.,*
    750 F.3d 121 (2d Cir. 2014) ............................................................. 28, 36

*Ricciuti v. N.Y.C. Transit Auth.,*
    124 F.3d 123 (2d Cir. 1997) ............................................................. 15, 35

*Rodriguez v. City of Hous.,*
    No. H-06-2650 (S.D. Tex. June 8, 2009) .................................................. 14

*Root v. Feldman,*
    185 A.D.2d 409 (3d Dep't 1992) ............................................................. 13

*Sheehan v. City of N.Y.,*
    40 N.Y.2d 496 (N.Y. 1976) .................................................................... 12

vi

*Stephen v. Hanley*,
    No. 03 Civ. 6226 WL 1471180 (E.D.N.Y. May 21, 2009) .................................................. 23

*Union Carbide Corp. v. Montell N.V.*,
    28 F. Supp. 2d 833 (S.D.N.Y. 1998) ..................................................................................... 2

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ................................................................................................ 31

*United States v. Brown*,
    606 F. Supp. 2d 306 (E.D.N.Y. 2009) ............................................................................. 21, 22

*United States v. Carr*,
    557 F.3d 93 (2d Cir. 2009) ...................................................................................................... 6

*United States v. Edwards*,
    156 F. App'x 954 (9th Cir. 2005) ......................................................................................... 21

*United States v. Fama*,
    No. 12 Cr. 186, 2012 WL 6094135 (E.D.N.Y. Dec. 7, 2012) ......................................... 22, 23

*United States v. Garcia*,
    413 F.3d 201 (2d Cir. 2005) .................................................................................................. 37

*United States v. Hands*,
    184 F.3d 1322 (11th Cir. 1999) ............................................................................................ 22

*United States v. Hayes*,
    553 F.2d 824 (2d Cir. 1977) .................................................................................................. 21

*United States v. Payne*,
    63 F.3d 1200 (2d Cir. 1995) .................................................................................................. 16

*Uzdavines v. Weeks Marine, Inc.*,
    418 F.3d 138 (2d Cir. 2005) .................................................................................................... 8

*Warner v. Orange Cnty. Dep't of Prob.*,
    115 F.3d 1068 (2d Cir. 1996) ................................................................................................ 12

*Westerbeke Corp. v. Daihatsu Motor Co.*,
    304 F.3d 200 (2d Cir. 2002) .................................................................................................... 6

*Williams v. United States*,
    747 F. Supp. 967 (S.D.N.Y. 1990) ....................................................................................... 16

*Young v. Calhoun*,
    No. 85 Civ. 7584, 1995 WL 169020 (S.D.N.Y. Apr. 10, 1995) ............................................ 21

*Zahrey v. Coffey*,
    221 F.3d 342 (2d Cir. 2000) ............................................................................................ 13, 18

**Rules & Statutes**

42 U.S.C. § 1983 ............................................................................................ passim

Fed. R. Civ. P. 26 ................................................................................................. 31

Fed. R. Civ. P. 42 .............................................................................................. 1, 3

Fed. R. Evid. 401 ........................................................................................... passim

Fed. R. Evid. 402 ................................................................................................. 19

Fed. R. Evid. 403 ........................................................................................... passim

Fed. R. Evid. 404 ................................................................................... 19, 20, 25

Fed. R. Evid. 608 ........................................................................... 21, 22, 23, 25

Fed. R. Evid. 609 ................................................................................... 20, 21, 22

Fed. R. Evid. 701 ........................................................................................... 37, 40

N.Y. Pattern Jury Inst. ....................................................................................... 12

N.Y. Penal Law §70 ............................................................................................ 22

N.Y. Vehicle and Traffic Law § 509 ................................................................. 22

N.Y. Vehicle and Traffic Law § 1192 ............................................................... 21

N.Y. Vehicle and Traffic Law § 1193 ............................................................... 20

Plaintiff Martin Nnodimele respectfully submits the following motions *in limine* in advance of trial.

## I. THE TRIAL SHOULD BE BIFURCATED INTO A LIABILITY PHASE AND A DAMAGES PHASE

The trial should be bifurcated into a liability phase and a damages phase to avoid jury confusion and unnecessary prejudice to Mr. Nnodimele.

Under Fed. R. Civ. P. 42(b), a court may order separate trials "where such an order will further convenience, avoid prejudice, or promote efficiency." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999). "These factors do not represent a rigid test for determining whether separate trials are necessary; to the contrary, the court could order bifurcation upon a showing of merely one of these factors." *Philips v. City of New York*, No. 06 Civ. 3243, 2009 WL 3523528, at *1 (E.D.N.Y. Oct. 29, 2009) (internal quotation marks omitted). "[W]hen bifurcation is likely to result in considerable simplification of the issues, separate trials become favorable." *Epstein v. Kalvin-Miller Int'l, Inc.*, 121 F. Supp. 2d 742, 750 (S.D.N.Y. 2000) (internal quotation marks omitted). In determining whether bifurcation is appropriate, a court may consider "the prejudice to the party requesting bifurcation if such a request is not granted." *Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006, 2003 WL 1846864, at *1 (S.D.N.Y. Apr. 8, 2003).

### A. Bifurcation Will Reduce Jury Confusion

Bifurcation will reduce jury confusion because there is hardly any overlap between the liability evidence and damages evidence. *See Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (bifurcation "was reasonable because the two phases involved different types of evidence"). Rather than force the jury to consider both sets of evidence simultaneously and risk confusing the issues, the two virtually distinct sets of evidence should be presented separately.

1

*See Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1998)

("Segmenting difficult issues of liability and damages might enhance juror comprehension.

Confronting one complex set of issues at a time is likely to reduce the possibility of jury

frustration and confusion.")

The liability evidence concerns only Defendants' alleged misconduct. It will

include testimony and documents relating to Defendants' actions and whether those actions

caused Plaintiff's deprivation of liberty and conviction. Credibility conflicts between the

Defendants and Mr. Nnodimele, on the one hand, and between Det. DeRienzo and Kathleen

Boyle, on the other, will be pivotal, as will evidence concerning what information Det. DeRienzo

forwarded to the prosecutors and when, if ever, he did so.

The damages evidence, on the other hand, is far broader in scope and is not

relevant to liability. It will include detailed testimony from Mr. Nnodimele about his life before

his arrest in 2007, the ordeal of his prosecution, his time in prison, medical problems that he

developed in prison, his loss of his mother and sister while in prison and his inability to have

contact with them before they died, his inability to have contact with other family members after

his mother and sister died, his employment difficulties after he was released from prison, his

anxiety and depression and use of alcohol after his release, and the long-term effects of his

experience on his mental and emotional state generally. The parties will also present detailed and

complex psychiatric testimony from opposing experts, each of whom will be closely questioned

about their interviews of Mr. Nnodimele and their consideration of his medical and institutional

records. None of this evidence has any bearing on liability. *See Mineo v. City of N.Y.*, No. 09

Civ. 2261, 2013 WL 1334322, at *2 (E.D.N.Y. Mar. 29, 2013) (bifurcation is appropriate where

"there is likely little overlap between witnesses on liability and those necessary to prove the complicated, expert-based claims relating to post-traumatic stress and other damages issues").

Though Mr. Nnodimele would be required to testify in both the liability and damages phases, courts have found that the need to call a witness twice does not negate otherwise valid grounds for bifurcation. *See id.* ("Though some witnesses may need to be called twice, plaintiff being one of them, bifurcation is, on balance, 'conducive to expedition and economy' in the words of Rule 42(b) and sacrifices little, particularly when balanced against the potential for prejudice by trying both issues simultaneously").

Bifurcation would help keep the jury focused on liability during the first phase of the trial without being confused and distracted by the significant damages evidence that does not impact the liability determination.

### B.   Mr. Nnodimele Will Be Prejudiced if Damages Are Not Tried Separately

Bifurcation is necessary to prevent undue prejudice to Mr. Nnodimele. Absent bifurcation, evidence that pertains solely to damages and that could potentially be used improperly to impugn Mr. Nnodimele's character will be admitted at trial. *See Busch v. City of N.Y.*, No. 00 Civ. 5211, 2002 WL 31051589, at *3 (E.D.N.Y. Sept. 9, 2002) (bifurcation is appropriate to prevent the introduction of "prejudicial" "prior bad act evidence"). Mr. Nnodimele should not be compelled to address character evidence that relates only to the trauma he has endured as a result of his wrongful incarceration in order to establish Defendants' liability.

The damages evidence is likely to include, for example, Mr. Nnodimele's history of alcohol use. Plaintiff's expert, Dr. Dudley, attributes Mr. Nnodimele's post-release alcohol dependency to the long-term effects of the trauma he suffered from his trial, conviction, and imprisonment, while Defendants' expert, Dr. Fayer, contends that Mr. Nnodimele's alcohol

problem pre-dated, and is independent of, his imprisonment. This evidence is prejudicial to Mr. Nnodimele and it has no bearing on the Defendants' liability.

In addition, no such comparable information—*i.e.*, information concerning Defendants' prior bad acts—will be permitted during Plaintiff's cross-examination of the Defendants, placing Mr. Nnodimele at a significant disadvantage in arguing for his own credibility against that of the Defendants. Bifurcation would level the playing field.

### C.   Conclusion

For the foregoing reasons, the Court should bifurcate the trial, holding an initial trial as to liability and then, if Plaintiff prevails, holding a second trial as to damages before the same jury.

## II.   EVIDENCE CONCERNING THE THOUGHT PROCESSES OF THE NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE SHOULD BE EXCLUDED

No evidence or argument should be permitted concerning the thought processes or state of mind of representatives of the New York County District Attorney's office (the "DA") beyond what is reflected in documents. Exclusion is appropriate (1) under the law of the case doctrine because the Court prohibited discovery into the DA's thought processes beyond what is included in documents, and (2) under the doctrine of judicial estoppel because Defendants represented to the Court that they would not present evidence concerning the DA's thought processes at trial.

### A.   Background

On July 24, 2014, the parties and counsel for the DA appeared in front of Judge Mann on Plaintiff's motion to compel the production of discovery items that Plaintiff had subpoenaed from the DA. The DA objected to producing the discovery, claiming it was privileged.

4

Judge Mann denied Plaintiff's motion to compel on two grounds. First, Judge Mann held that the documents were protected by the work product privilege. Ex. 1 (Transcript of July 24, 2014 Proceedings) at 23.[1] Second, Judge Mann found that Plaintiff did not need the DA's documents because it is not "appropriate for the plaintiff to go into factors that influence" the prosecutors. *Id.* Judge Mann rejected Plaintiff's argument that the DA's thought processes are necessary to show causation, reasoning that an "objective standard" should apply to the causation determination. *Id.* at 18 ("You might look at references in the record in the prosecutor's opening or summation where they rely upon it to say that based on the evidence, from an objective standpoint this was a substantial factor in causing the plaintiff's conviction."). Documents, such as letters written by the DA's office "sett[ing] forth the office's analysis," Judge Mann stated, are sufficient to allow Plaintiff to establish that Defendants' misconduct caused Plaintiff's harm. *Id.* at 23-24.

Judge Mann's ruling was based, in part, on representations Defendants made during the conference. Judge Mann asked Defendants whether they intend to rely on prosecutors' thought processes at trial. *See id.* at 24-25. Defendants stated unequivocally that they do not. *Id.* Defendants represented that they would not "call witnesses such as [Assistant District Attorneys] to testify to their thought processes" or elicit such testimony on cross-examination, provided Plaintiff was precluded from eliciting it as well. *Id.* at 22-23.

As a result of Judge Mann's ruling, Plaintiff did not receive a number of documents from the DA and was limited during the depositions of the Assistant District Attorneys ("ADAs") who worked on this case. At the depositions of Charles Whitt, Bonnie Sard, and Joshua Steinglass—all ADAs—objections and instructions not to answer were repeatedly

---

[1]    All citations to "Ex. __" refer to exhibits to the Declaration of Samuel Shapiro, dated May 16, 2016.

given to questions that even touched on the ADA's thought processes or state of mind. *See* Ex. 2 (Transcript of Deposition of Charles Whitt) at 62, 72-73, 112, 114 (instructions to the witness not to answer questions that reflect his thought processes); Ex. 3 (Transcript of Deposition of Bonnie Sard) at 4 (witness will be instructed not to answer any question that calls for "her thoughts, analysis, any opinions she has about the law or witness credibility or anything else in this case"); Ex. 4 (Transcript of Deposition of Joshua Steinglass) at 5 (witness will be instructed not to answer any question about the DA's "thought process, their decision-making, their analysis of the case either factually or legally and other similar matters of the lawyer's operation of his mind").

Consistent with the Court's prior ruling and Defense counsel's representations, neither party should be permitted to present evidence concerning the DA's thought processes beyond what is stated in documents.

**B.    Evidence Concerning the DA's Thought Processes Should Be Excluded Under the Law of the Case Doctrine**

The law of the case doctrine bars the introduction of evidence at trial concerning the DA's thought processes because the Court previously ruled that such evidence is not discoverable.

Under the law of the case doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009). The doctrine may be properly invoked if the parties "had a full and fair opportunity to litigate the initial determination." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002). A court's reconsideration of its own earlier decision may be justified only "in compelling circumstances, consisting principally of (1)

an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Carr*, 557 F.3d at 102.

Judge Mann's prior ruling prohibiting discovery into prosecutors' thought processes should be adhered to at trial. The parties and the DA had a full and fair opportunity to be heard prior to Judge Mann's ruling, both at the July 24, 2014 conference and in letter-briefing submitted prior to the conference. *See* Dkts. 41, 44, 46. No new circumstances justify reconsidering Judge Mann's earlier decision; there has been no change in controlling law, no new evidence, and no clear error of law.

As Judge Mann suggested, an "objective standard" should be applied in determining whether Defendants' misconduct was a substantial factor in causing Plaintiff's harm. Ex. 1 at 18. Under this approach, the parties may present only objective facts relating to the DA's decisions—as opposed to the subjective reasons for those decisions—to support their arguments about whether Defendants' misconduct caused Plaintiff's harm. For example, the parties may present objective evidence (*i.e.*, court transcripts, letters) concerning what the DA actually said and did, but they may not present testimony from an ADA as to *why* the ADA, or the Office, said and did such things. *Id.* ("You might look at references in the record in the prosecutor's opening or summation where they rely upon it to say that based on the evidence, from an objective standpoint this was a substantial factor in causing the plaintiff's conviction.").[2] This approach is consistent with Judge Mann's prior ruling prohibiting Plaintiff from inquiring into the DA's thought processes and, under the law of the case doctrine, should be followed at trial.

---

[2]        While the parties should generally be permitted to present objective evidence concerning the DA's actions, Defendants should not be permitted to present evidence concerning the DA's findings with respect to Mr. Nnodimele's actual innocence for the reasons set forth below in Section VII.

Any deviation from Judge Mann's prior decision would severely prejudice Plaintiff by allowing Defendants to present testimony from ADAs—individuals who are likely to cooperate with Defendants—that Plaintiff was prohibited from exploring or challenging through document discovery or deposition.

### C. Evidence Concerning the DA's Thought Processes Should Also be Excluded Under the Doctrine of Judicial Estoppel

Under the doctrine of judicial estoppel, Defendants remain bound to their prior representation that they will not present evidence at trial concerning the DA's thought processes.

The equitable doctrine of judicial estoppel provides that, "'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005) (internal alterations omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

There are two elements of judicial estoppel: "First, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner." *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993). The Second Circuit has recognized that "a prior inconsistent representation made in a prior phase of the same case *can* trigger judicial estoppel." *Intellivision v. Microsoft Corp.*, 484 F. App'x. 616, 621 (2d Cir. 2012) (emphasis in original); *see also New Hampshire*, 532 U.S. at 749 (judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase" (internal quotation marks omitted)).

Both elements of judicial estoppel are met here. Defendants stated they would not present evidence concerning the DA's thought processes and the Court relied on that statement in prohibiting discovery into the DA's thought processes.

On July 24, 2014, Defendants represented that they would not call witnesses such as ADAs to testify to the DA's thought processes. Ex. 1 at 22-23. Defendants repeated this representation when Plaintiff's counsel expressed concern about whether the Defendants would be bound by their position:

> "THE COURT: When I – when I asked [Defendants' counsel] – you know, at first I think it was ambiguous and when I point-blank asked him whether on cross he was going to go into the thought processes, he said no.
>
> MR. ASHANTI [Defendants' counsel]: That's correct, Your Honor.
>
> THE COURT: And that he doesn't intend to call them at trial.
>
> MR. ASHANTI: That's also correct, Your Honor."

*Id.* at 24.

Judge Mann's ruling prohibiting discovery into the DA's thought processes was based, in part, on Defendants' representations. Since Defendants do not intend to present evidence concerning the DA's thought processes, Judge Mann reasoned, Plaintiff does not have "a need" to go into the DA's thought processes in discovery. Objective evidence is sufficient, the Court held, to allow Plaintiff to show that Defendants' misconduct was a substantial factor in causing Plaintiff's harm. *Id.* at 23-24.

Judicial estoppel also applies because Plaintiff would be prejudiced if Defendants were allowed to abandon their prior representations. Plaintiff should not be compelled to confront evidence concerning the DA's thought processes for the first time at trial after Defendants' prior stated position limited Plaintiff's ability to take discovery on that evidence.

### D.     Conclusion

Plaintiff respectfully requests that all evidence concerning the DA's thought processes and state of mind beyond what is stated in documents—*i.e.*, court transcripts and court filings—be excluded at trial.

### III.     EVIDENCE AND ARGUMENT CONCERNING THE ALLEGED INEFFECTIVENESS OF PLAINTIFF'S CRIMINAL DEFENSE ATTORNEY AND THE CRIMINAL JURY'S PURPORTED DISCREDITING OF PLAINTIFF'S TESTIMONY SHOULD BE EXCLUDED

Defendants have indicated an intention to offer evidence that Plaintiff's injuries "resulted from plaintiff's own culpable or negligent conduct or the culpable or negligent conduct of third parties, and was not the result of any act of defendants." Dkt. 53 (Defendants' Answer to Second Amended Complaint) at ¶ 129. Specifically, Defendants appear to contend that Mr. Nnodimele's injuries are attributable to the alleged failures or ineffectiveness of Seema Iyer, Mr. Nnodimele's criminal defense attorney, and to the criminal jury's implicit rejection, at least in part, of Mr. Nnodimele's own trial testimony and that of his alibi witnesses. These "defenses" should not be permitted because they are irrelevant to the causation analysis and unduly distracting and prejudicial.

In establishing proximate cause under Section 1983, Plaintiff's burden is to establish only that Defendants' misconduct was *a* cause, not *the exclusive* cause, of his injuries. Under federal law, there is no apportionment of responsibility, and concurrent causation is no defense. Defendants are liable for the natural and probable consequences of their acts, particularly where, as here, their misconduct was intentional. An intervening or superseding cause cuts off liability only where it *interrupts* the natural sequence of events or *prevents* the natural and probable consequence of the original wrongful act, not where it foreseeably results from the wrongful act.

Here, the alleged failings of Mr. Nnodimele's criminal defense counsel did not interrupt or prevent the natural sequence of events, but (to the extent there even was any failing) was the reasonably foreseeable result of the Defendants' misconduct. Similarly, the jury's purported rejection of Mr. Nnodimele's trial defense and testimony was not independent of Defendants' alleged fabrication and suppression of evidence, but was the foreseeable result of it.

A.   **Applicable Law**

Section 1983 applies common law principles of tort causation under which a tortfeasor is responsible for the natural consequences of his wrongful actions. *Higazy v. Templeton,* 505 F.3d 161, 175 (2d Cir. 2007) (citing cases). As this Court's summary judgment decision correctly points out, it is Plaintiff's burden to establish that Defendants' unlawful act or acts were a proximate cause of his injury. *See* SJ Op. at 28-29. It is fundamental that a proximate cause need not be an exclusive cause, but a "substantial" one. "A proximate cause determination does not require a jury to identify the liable party as the sole cause of harm; it only asks that the identified cause be a substantial factor in bringing about the injury." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000); *see also* N.Y. Pattern Jury Instr.—Civil 2:71 ("Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury.").

Where, as here, a defendant's misconduct was *intentional*, "the aggravated nature of his action is a matter which should be taken into account in determining whether there is a sufficient relationship between the wrong and plaintiff's harm to render the actor liable." *Johnson v. Greer*, 473 F.2d 101, 106 (5th Cir. 1973). An intentional tortfeasor may be held "liable for damages which are not anticipated, apprehended, or foreseen, so long as they are natural and probable or direct consequences of the intentional tort." *Deskovic v. City of Peekskill*,

11

673 F. Supp.2d 154, 163 (S.D.N.Y. 2009) (quoting *Hibma v. Odegaard*, 769 F.2d 1147 (7th Cir.

1985)); *see also Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 316-17 (1980) ("That

defendant could not anticipate the precise manner of the accident or the exact extent of injuries,

however, does not preclude liability as a matter of law where the general risk and character of

injuries are foreseeable.").

> The intervening act of a third party will cut off liability only where it interrupts

the natural flow of events which the defendant has set in motion and is totally independent of the

defendant's antecedent wrongdoing. "[W]hen such an intervening cause 'interrupts the natural

sequence of events, turns aside their course, prevents the natural and probable result of the

original act or omission, and produces a different result that could not have been reasonably

anticipated,' it will prevent a recovery on account of the act or omission of the original

wrongdoer." *Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 276 (E.D.N.Y. 2014) (quoting *Sheehan v.

City of N.Y.*, 40 N.Y.2d 496, 503 (N.Y. 1976)); *see also Warner v. Orange Cnty. Dep't of Prob.*,

115 F.3d 1068, 1072 (2d Cir. 1996) (citing *Guitierrez-Rodriguez v. Cartagena*, 882 F.2d 553,

561 (1st Cir. 1989) (defendants in § 1983 cases are responsible for the natural consequences of

their actions—*i.e.*, consequences caused by reasonably foreseeable intervening forces)).

> On the other hand, "if the new cause is set in operation by defendant's original

wrongful conduct and is not independent of it, defendant is not relieved of responsibility. The

inquiry must always be whether the injury was produced by a self operating intermediary cause

disconnected from the primary fault." *Grant v. Westinghouse Elec. Corp.*, 877 F. Supp. 806, 819

(E.D.N.Y. 1995) (quoting N.Y. Pattern Jury Inst.—Civil 2:72); *see also* N.Y. Pattern Jury Inst.—

Civil 2:72 (defendant is still liable where, even though a third party was the cause-in-fact of

plaintiff's injury, a reasonably prudent person would have foreseen the type of actions committed

by the third party as a probable consequence); *Root v. Feldman*, 185 A.D.2d 409, 410 (3d Dep't 1992) ("Unless plaintiff's conduct or her contact with a third person was so extraordinary and unforeseeable as to constitute an intervening cause, an intervening cause charge to the jury cannot be supported.").

Accordingly, the Second Circuit has observed that there is no superseding cause where the subsequent actor has been "deceived" by the defendant's actions, or where the wrongdoer "could 'reasonably foresee that his misconduct [would] contribute to an 'independent' decision that results in a deprivation of liberty.'" *Higazy*, 505 F.3d at 177 (quoting *Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000)). "An intervening act 'must be a new and independent force, which was not set in motion by the defendant's own wrongful acts, and must rise to such a level of culpability as to replace the defendant's negligence as the legal cause.'" *Martin v. City of N.Y.*, 793 F. Supp. 2d 583, 586-87 (E.D.N.Y. 2011) (quoting *Zahrey v. City of N.Y.*, No. 98-4546, 2009 WL 1024261, at *4 (S.D.N.Y. Apr. 15, 2009)).

In wrongful prosecution and *Brady* violation cases, courts have consistently held that the intervening acts of lawyers, judges and juries that were neither truly independent of, nor uninfluenced by, the defendants' prior wrongful acts do not break the chain of causation. *See, e.g.*, *Cameron v. City of N.Y.*, 598 F.3d 50, 63-64 (2d Cir. 2010) (subsequent decisions and actions of prosecutor do not attenuate police officer's liability where officer has provided false information to the prosecutor); *Higazy*, 505 F.3d at 177 (declining to find intervening cause cut off liability of FBI agent who coerced confession because it was reasonably foreseeable that the coerced confession would lead to deprivation of liberty); *Zahrey*, 221 F.3d at 353-54 (prosecutor who fabricated evidence in his investigative role could not escape liability because he could reasonably foresee that he would later use that evidence in his advocacy role); *Jones v. City of*

13

*Chi.*, 856 F.2d 985, 994 (7th Cir. 1988) ("If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him.")

This principle has been applied to defense attorney deficiencies or negligence. In *Rodriguez v. City of Hous.*, No. H-06-2650 (S.D. Tex. June 8, 2009), for example, the court granted plaintiff's motion *in limine* to preclude an affirmative defense of supervening cause based upon the alleged deficient performance of criminal defense counsel. The court reasoned that "any failure [by criminal counsel] to effectively expose [the defendant's] violations does not break the chain of causation between the [defendant's]'s conduct and Plaintiff's injury." *Id.* at 40. (A copy of this decision is attached as Ex. 5). Similarly, in an evidence fabrication and *Brady* violation case, *Limone v. United States*, 497 F. Supp. 2d 143, 219-20 (D. Mass. 2007), *aff'd on other grounds*, 579 F.3d 79 (1st Cir. 2009), the court refused to consider the failures of defense counsel as a defense to liability.

> **B.  Defendants Should Be Precluded from Introducing Evidence and Arguing that Mr. Nnodimele's Criminal Defense Counsel's Allegedly Deficient Performance Was a Supervening Cause of Plaintiff's Harm**
>
> **1.  Evidence Fabrication Claim**

Ms. Iyer's performance is irrelevant to the causation analysis on Plaintiff's evidence fabrication claim.

Plaintiff intends to show that Defendants fabricated and gave to the prosecutor evidence likely to influence a jury, and that this evidence was a contributing factor in causing Plaintiff's loss of liberty prior to trial. Dkt. 116 ("SJ Op.") at 28-30. As the Court recognized, the evidence that supported Mr. Nnodimele's prosecution "was hardly unequivocal." *Id.* at 29.[3] The

---

[3]     As Plaintiff intends to prove at trial, there were various reasons why an objectively reasonable prosecutor might have had doubts about his ability to prove Mr. Nnodimele's guilt without the self-identifying statements. But

conviction and imprisonment that ultimately resulted from the wrongfully-induced prosecution is not an element of plaintiff's claim, but are consequential injuries arising from the Defendants' misconduct. *See id.* at 28 ("Once the violation occurs, a § 1983 plaintiff can seek redress for all of the harm that results") (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). Indeed, it should have been reasonably foreseeable to Defendants, who utilized fabricated evidence to cause Mr. Nnodimele's prosecution and initial loss of liberty, that Mr. Nnodimele would be convicted and his loss of liberty would continue.

Any alleged inadequacy of Ms. Iyer in *preventing* the natural, probable, and plainly foreseeable consequence of the prosecution the defendants helped to set in motion cannot possibly be a superseding cause that cuts off liability for Defendants' intentional wrongdoing. There was nothing extraordinary or unforeseeable about a court-appointed defense lawyer failing more effectively to prepare the defense or confront the prosecution's case. Here, any such errors were a foreseeable consequence of a prosecution that the Defendants wrongfully influenced to occur by fabricating evidence. That counsel failed to defeat this tainted prosecution cannot be an excuse for the defendants' wrongdoing in causing it to be initiated. Defense attorney negligence is no more a "defense" to an intentional civil rights violation than medical malpractice is a superseding cause that cuts off liability for medical complications of a negligently caused physical injury. *Cf. Ferrara v. Galluchio*, 5 N.Y.2d 16, 20 (N.Y. 1958) (original wrongdoer liable for "start[ing] the chain of consequences" which resulted in subsequent medical

---

for those alleged statements, there was no lawful basis to detain Mr. Nnodimele for 16 hours for a lineup, and thus the lineup identifications would have been subject to suppression on Fourth Amendment grounds. There were significant discrepancies between Mr. Nnodimele's appearance and the initial eyewitness descriptions, and between Mr. Nnodimele's appearance and the surveillance videos and stills, which would have caused a reasonable prosecutor to have doubts regardless of the fact that three eyewitnesses identified Mr. Nnodimele at the initial lineup. Certainly, the failure of two additional eyewitnesses to identify Mr. Nnodimele, and Ms. Boyle's additional statements exonerating him, would have detracted from the basis for prosecution. Finally, even as to the three positive identifications, the procedures that were used, while not *unconstitutionally* suggestive, deviated from approved police practice and raised questions about the reliability of the identifications that occurred.

malpractice that exacerbated the plaintiff's original injury); *see also Williams v. United States*, 747 F. Supp. 967, 1009 (S.D.N.Y. 1990).

        **2.**     ***Brady* Claim**

      A similar analysis applies to the *Brady* claim. Plaintiff contends that Det. DeRienzo suppressed exculpatory statements by Kathleen Boyle. Det. DeRienzo is responsible for Plaintiff's injuries because his suppression of evidence was a substantial cause of the conviction. Regardless of whether Ms. Iyer *could* have won an acquittal despite the *Brady* violation, it was reasonably foreseeable that the *Brady* violation would result in Plaintiff's conviction. Det. DeRienzo cannot escape liability for withholding evidence that he was constitutionally required to disclose by arguing that he expected Ms. Iyer to make arguments she did not make. *See Grant v. Alldredge*, 498 F.2d 376, 382 (2d Cir. 1974) (refusing "to infer from the failure of defense counsel, when surprised at trial, to seek time to gather other information on [the suppressed witness], that defense counsel would have by-passed the opportunity had the prosecutor apprised him of the [evidence] at a time when the defense was in a reasonable pre-trial position to evaluate carefully all the implications of that information"). There is no exception to *Brady* for cases in which the defense should have won the trial anyway.

        Nor should Det. DeRienzo be permitted to argue that somehow Ms. Iyer should have independently discovered Kathleen Boyle's exculpatory statements and that her omission was a supervening cause of Mr. Nnodimele's conviction. The Supreme Court repeatedly has held that the defense is entitled to rely upon the completeness and the accuracy of the prosecution's *Brady* disclosure and has no duty to "scavenge for hints of undisclosed *Brady* material." *Banks v. Dretke*, 540 U.S. 668, 695 (2004); *see also United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (where defense counsel lacks actual knowledge that exculpatory material is present in a public court file, he has no duty to search for it).

Here, the detective belatedly disclosed, at the end of the trial, a lineup report that revealed only that Ms. Boyle had failed to identify Mr. Nnodimele at a lineup. Neither this document, nor Det. DeRienzo's testimony about Ms. Boyle's failure to make any selection during the lineup, provided notice to the defense that Ms. Boyle had made her additional, even more exculpatory statements, or that, consistent with those statements, she would testify to a present belief that the defendant on trial was not the perpetrator of the Caravan (and Visio) robbery. Because Ms. Iyer was not told any of this information in time to investigate it, responsibility cannot shift from Det. DeRienzo to her for her failure to obtain Ms. Boyle's appearance in New York to present such live testimony.[4]

### 3.    Evidence and Argument Concerning Ms. Iyer's s Performance Is Inadmissible Under Fed. R. Evid. 403

Not only is Ms. Iyer's performance irrelevant as a matter of law, any inquiry into Ms. Iyer's performance before or during the criminal trial would be a distracting and prejudicial sideshow. No court has ever found that Ms. Iyer provided ineffective assistance of counsel. There is no ineffective assistance claim in this claim. Ms. Iyer is not a defendant. Yet the defense would have the jury veer into a mini-trial on this complicated topic. This side-trial would distract and confuse the jury, unnecessarily prolong the trial, and insert into the trial all manner of evidence irrelevant to the claims in the case. Any open-ended exploration into the quality of Ms. Iyer's lawyering would not only be irrelevant under Fed. R. Evid. 401, it fails Fed. R. Evid. 403 as well.

---

[4]        Significantly, the trial record shows that when Det. DeRienzo disclosed the lineup report concerning Ms. Boyle on the last day of trial, the trial judge granted the defense permission to elicit through Det. DeRienzo Ms. Boyle's hearsay statement that she could not identify the perpetrator of the robbery when she viewed the lineup. This was the most that any defense attorney could have hoped to accomplish at that point. No competent defense attorney would have put Ms. Boyle on the stand without first making sure she would not make a mistaken, in-court identification. In any event, Ms. Boyle was in Memphis, Tennessee and Ms. Iyer had no possible way at that point to interview her in person, much less put her on the stand. This sequence of events does not establish any jury issue concerning superseding cause. Det. DeRienzo was the *sole* cause of Plaintiff's failure to present Ms. Boyle's exculpatory testimony.

**C.** **Defendants Should Be Precluded from Presenting Evidence or Arguing that the Criminal Jury's Rejection of All or Part of Plaintiff's Alibi Defense Was a Superseding Cause of Plaintiff's Harm**

Defendants should not be permitted to introduce evidence, or argue, that somehow Plaintiff caused his own conviction by providing his own testimony, and alibi witnesses, which the jury rejected, in whole or in part. This is so for two reasons.

First, the criminal jury's determination whether to credit the testimony of Mr. Nnodimele and his two alibi witnesses was potentially influenced by the fabricated testimony as well as Det. DeRienzo's suppression of the exculpatory Kathleen Boyle information. A defendant who misleads a subsequent decision-maker cannot claim he is relieved from liability where, as here, the subsequent decision-maker was influenced by his misconduct. *See Zahrey*, 221 F.3d at 352 ("it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty."); *Higazy*, 505 F.3d at 177 ("the chain of causation need not be considered broken if [defendant] Templeton deceived the subsequent decision maker"); *Jones*, 856 F.2d at 994 (police officers "cannot hide behind the officials whom they have defrauded").

Second, Mr. Nnodimele's decision to testify and to present witnesses on his behalf, despite the risk the jury would not be persuaded, was a tactical decision that cannot be separated from the Defendants' misconduct. It did not turn aside or prevent the natural sequence of events, but was the foreseeable, natural, probable consequence of the Defendants' misconduct. Only because he was forced to stand trial on charges that the Defendants' evidence fabrication influenced did he have to make the difficult decision, aided by counsel, whether to waive his right to remain silent. Similarly, but for Det. DeRienzo's suppression of the Kathleen Boyle exculpatory information, the prosecution's case would have been much weaker and Mr.

18

Nnodimele might well have decided to forego testifying and presenting third party-witnesses in his defense.

In sum, Mr. Nnodimele's tactical decisions in opposing the artificially-strengthened prosecution case were not independent of the Defendants' misconduct, but directly influenced by it. As a matter of law, Defendants are not relieved from liability for manufacturing and concealing evidence when their misconduct deceived and pressured Mr. Nnodimele into making tactical decisions at trial that otherwise he might not have made.

**D.    Conclusion**

Defendants should not be permitted to introduce evidence, or argue, in support of an affirmative defense of supervening cause, that the testimony of Plaintiff and his alibi witnesses, or the alleged failings of his criminal defense lawyer, were an independent cause of injury that cuts off Defendants' liability for the foreseeable consequences of their own misconduct.

**IV.    EVIDENCE OF PLAINTIFF'S PRIOR ARRESTS, CONVICTIONS, AND ALLEGED BAD ACTS SHOULD BE EXCLUDED**

Evidence concerning Plaintiff's prior arrests, convictions, and alleged bad acts should be excluded under Fed. R. Evid. 402, 403, and 404 because it is irrelevant, inadmissible, and prejudicial.

For purposes of this motion, Plaintiff assumes the trial will be bifurcated into liability and damages phases, as Plaintiff requests (*see* Section I). Plaintiff seeks to preclude all evidence concerning Mr. Nnodimele's prior arrests, convictions, and alleged bad acts from the liability phase of the trial. While Plaintiff concedes that Mr. Nnodimele's history of alcohol use and alcohol-related convictions may be relevant to damages, Plaintiff seeks to preclude all other evidence of his convictions, arrests, and alleged bad acts from the damages phase as well.

A.    **Background**

Mr. Nnodimele has five prior convictions: two Driving While Ability Impaired by Alcohol ("DWAI") convictions from 1999 and 2014, a third-degree attempted assault conviction from 2000, and two Driving Without a License infractions. The attempted assault conviction, as well as a prior arrest resulting in dismissed charges, arose out of domestic disputes. Mr. Nnodimele was also involved in several car accidents following his release from prison.

B.    **Evidence of Mr. Nnodimele's Prior Convictions Should be Excluded**

The Court should preclude Defendants from introducing evidence of Mr. Nnodimele's prior convictions. These convictions are irrelevant to Defendants' liability, unduly prejudicial under Federal Rule of Evidence 403, and inadmissible under Federal Rules of Evidence 404, 608, and 609.

1.    **Evidence of Mr. Nnodimele's 1999 and 2014 DWAI Convictions Should be Excluded**

Evidence concerning Mr. Nnodimele's 1999 and 2014 DWAI convictions is inadmissible. First, in the liability phase of the trial, such evidence does not have "any tendency to make a fact more or less probable." Fed. R. Evid. 401. Second, given that it is irrelevant to Defendants' liability, the facially prejudicial nature of the convictions far outweighs their probative value. *See* Fed. R. Evid. 403.

Third, DWAI is not "punishable by death or by imprisonment of more than one year," nor do its elements require proof of "a dishonest act or false statement." Fed. R. Evid. 609(a). In New York, DWAI is a non-criminal violation punishable by a sentence of imprisonment of not more than 15 days. *See* N.Y. Vehicle and Traffic Law § 1193.1. Its elements consist of operating a motor vehicle while impaired by the consumption of alcohol,

none of which concern dishonest acts or false statements. *See id.* at § 1192.1 (defining elements of offense); *United States v. Hayes,* 553 F.2d 824, 826-28 (2d Cir. 1977).

Fourth, Mr. Nnodimele's DWAI convictions are not "probative of [his] character for truthfulness," and are thus inadmissible under Fed. R. Evid. 608(b). *See United States v. Edwards*, 156 F. App'x 954, 956 (9th Cir. 2005) (witnesses' "misdemeanor DUI convictions are simply irrelevant to their credibility").

Fifth, the 1999 DWAI conviction is 15 years old. When more than ten years have elapsed since the witness' conviction or release from custody, whichever is later, evidence of a conviction can only be admitted if its "probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). In practice, courts almost never admit convictions more than ten years old. *See Young v. Calhoun*, No. 85 Civ. 7584, 1995 WL 169020, at *4 (S.D.N.Y. Apr. 10, 1995) (recognizing that convictions more than ten years old are to be admitted "very rarely and only in exceptional circumstances") (internal citations omitted); *see also United States v. Brown,* 606 F. Supp. 2d 306, 313 (E.D.N.Y. 2009) (quoting Fed. R. Evid. 609(b) Advisory Committee's Notes) ("convictions over ten years old generally do not have much probative value")). There are no specific facts and circumstances that demonstrate that the undue prejudice of introducing this stale conviction is substantially outweighed by any purported probative value.

### 2. Evidence of Mr. Nnodimele's 2000 Attempted Assault Conviction Should be Excluded

Defendants should also be precluded from introducing any evidence of Mr. Nnodimele 2000 conviction for attempted assault in the third degree. This evidence has no relevance to Defendants' liability.

21

Evidence of this conviction is inadmissible under Rule 609(a)(1) and 609(b) because it occurred more than ten years ago and attempted assault in the third degree is a Class B misdemeanor that is not punishable by a sentence of incarceration lasting more than a year. *See* N.Y. Penal Law § 70.15 (providing that the sentence of imprisonment for a Class B misdemeanor shall not exceed 90 days).

Nor is the conviction relevant to Mr. Nnodimele's truthfulness such that it may be admitted under Rules 608(b) or 609(a)(2). Courts in this District have held that assaults generally, and domestic violence incidents in particular, do not involve deceptiveness or dishonesty. *See United States v. Fama*, No. 12 Cr. 186, 2012 WL 6094135, at *1 (E.D.N.Y. Dec. 7, 2012) ("There is nothing in the record to indicate the two purported instances of domestic violence . . . involved deceptiveness or dishonesty, nor is there anything inherent in the nature of such acts that would directly involve truthfulness."); *Brown*, 2009 WL 497606, at *3 ("Assaults and murder do not directly reveal truthfulness in the way that forgery, perjury or fraud would.").

Finally, the probative value of Mr. Nnodimele's attempted assault conviction is far outweighed by the prejudice Mr. Nnodimele would suffer if it were introduced at trial. *See* Fed. R. Evid. 403; *United States v. Hands*, 184 F.3d 1322, 1328 (11th Cir. 1999) (finding that evidence of domestic violence is "particularly likely to incite a jury to an irrational decision") (internal quotation marks and citation omitted).

### 3.     Evidence of Mr. Nnodimele's 2014 and 2015 Convictions for Driving on a Suspended License Should be Excluded

The court should also preclude Defendants from seeking to introduce evidence of Mr. Nnodimele's two infractions for driving on a suspended license. These non-criminal traffic violations are not punishable by more than one year in prison (*see* N.Y. Vehicle and Traffic Law § 509), do not require proof of a dishonest act or false statement (*see id.* (defining elements of

22

offense as operating a motor vehicle without being duly licensed)), and are not probative of Mr.

Nnodimele's character for truthfulness. In addition, the prejudice Plaintiff would suffer from

their introduction vastly outweighs their probative value. They are therefore inadmissible.

**C.    Evidence of Mr. Nnodimele's Prior Arrests Should be Excluded**

Evidence concerning Mr. Nnodimele's prior arrests is inadmissible. The arrests

have no bearing on Defendants' liability and they are not probative of Mr. Nnodimele's

"character for truthfulness." Fed. R. Evid. 608(b). "Arrest without more does not . . . impeach the

integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty.

Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a

witness." *Michelson v. United States*, 335 U.S. 469, 482 (1948); *see also, e.g.*, *Stephen v.*

*Hanley*, No. 03 Civ. 6226, 2009 WL 1471180, at *8 (E.D.N.Y. May 21, 2009) (finding that

evidence of § 1983 plaintiff's prior arrests and unproven charges was inadmissible for

impeachment purposes).

**D.    Evidence of Alleged Domestic Violence Should be Excluded**

Defendants should also be precluded from introducing evidence of allegations that

Mr. Nnodimele has committed domestic violence. Mr. Nnodimele has been arrested in

connection with two domestic disputes: the first incident resulted in no physical injury and a

conviction for *attempted* assault in 2000, and the second alleged incident resulted in a charge that

was later dismissed in 2007. A temporary order of protection was issued as a matter of course,

with no hearing to determine its necessity, in connection with the second arrest, before the

charge was completely dismissed.

Any allegations of domestic violence are not admissible for impeachment

purposes under Rule 608, as they are not probative of Mr. Nnodimele's truthfulness. *See Fama*,

2012 WL 6094135, at *1 ("There is nothing in the record to indicate the two purported instances

23

of domestic violence . . . involved deceptiveness or dishonesty, nor is there anything inherent in the nature of such acts that would directly involve truthfulness.").

Exclusion is also warranted because the prejudicial value of these allegations outweighs their (non-existent) probative value. *See* Fed. R. Evid. 403. The highly inflammatory nature of the allegations creates a risk that Mr. Nnodimele would be unfairly stigmatized even though the underlying incidents involved nothing more than verbal disputes. *See Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 546 (E.D.N.Y. 2011) ("[T]he probative value of the Order of Protection . . . for impeachment purposes is insufficient to outweigh the prejudicial effects of such evidence" and "may divert the jury's attention from the relevant issues.").

Plaintiff intends to elicit testimony from Mr. Nnodimele to explain why he was temporarily living in a homeless shelter at the time of his arrest: because he had split with his live-in girlfriend and had no new apartment yet. This testimony would merely set the stage for the events directly relevant to this case—his arrest at a homeless shelter and his subsequent interaction with the police. It should not open the door to evidence concerning what caused Mr. Nnodimele and his girlfriend to split or the temporary order of protection that was issued. Evidence concerning those events is inadmissible.

### E.  Evidence of Mr. Nnodimele's Car Accidents Should be Excluded

To the extent that Defendants may seek to elicit testimony or introduce evidence regarding several car accidents in which Mr. Nnodimele was involved, or to imply they were alcohol-related, such evidence is inadmissible. Mr. Nnodimele's car accidents are irrelevant to any issue of fact in this case, including whether or not Defendants fabricated evidence or withheld exculpatory material. *See* Fed. R. Evid. 401.

The mere fact of Mr. Nnodimele's car accidents does not establish wrongdoing or that Mr. Nnodimele ever engaged in a particular type of behavior during those accidents. Even if

Defendants sought to draw such a speculative inference from these car accidents or to introduce extrinsic evidence purporting to support that inference, it would be precluded under Rule 404 as inadmissible character and propensity evidence. The accidents have no bearing on Mr. Nnodimele's character for truthfulness either. *See* Fed. R. Evid. 608(b). And since the accidents lack any probative value and there is an undue risk that Mr. Nnodimele would be prejudiced by their introduction, they must be excluded. *See* Fed. R. Evid. 403.

     **F.**     **Defendants' Expert, Dr. Fayer, Should be Precluded from Testifying About Mr. Nnodimele's Attempted Assault Conviction, Arrests, Domestic Disputes, and Car Accidents**

     Dr. Fayer's expert report discusses Mr. Nnodimele's attempted assault conviction, arrests, domestic incidents, and car accidents. *See* Ex. 6 (Fayer Report) at 4, 9, 15. He should be precluded from discussing this information at trial because it is not relevant or necessary to his conclusions about the effects of Mr. Nnodimele's conviction and incarceration on his mental health. Dr. Fayer should be precluded from testifying about this information regardless of whether the trial is bifurcated.

     Nowhere in his report does Dr. Fayer claim that his evaluation of, or opinion on, the current status of Mr. Nnodimele's mental and emotional wellbeing depends on these alleged prior acts; rather, Dr. Fayer merely references these prior acts as part of a relatively neutral recitation of Mr. Nnodimele's history. While Dr. Fayer does make one reference to allegations of domestic violence in the "Impression" section of his report, he does not draw any connection between his statement that Mr. Nnodimele has "had difficult relationships with other women and has been arrested . . . because of allegations of domestic violence" and his opinion that Mr. Nnodimele does not currently suffer from any significantly detrimental psychological effects as a result of his imprisonment. *See* Ex. 6 (Fayer Report) at 15. Given that these prior acts have no

25

relevance to Dr. Fayer's opinion, their probative value is significantly outweighed by their unduly prejudicial nature, and they should therefore be excluded under Rule 403.

Finally, the Court should preclude Dr. Fayer from referring to Mr. Nnodimele's DWAI convictions as "DUIs" as he did in his expert report. Mr. Nnodimele was convicted of a DWAI on two separate occasions, which is the lowest level of violation for substance-impaired operation of a motor vehicle in the State of New York. New York's equivalent of the commonly-used term "DUI" ("driving under the influence") is "DWI" ("driving while intoxicated"). A DWI is a significantly more serious offense than a DWAI (the violation for which Mr. Nnodimele was convicted on both occasions), with a possible sentence of incarceration of up to one year, as opposed to a maximum sentence of 15 days for a DWAI. As such, any reference to "DUIs" would be a mischaracterization of Mr. Nnodimele's DWAI convictions and would unduly prejudice the jury.

### G.    Conclusion

Evidence concerning Plaintiff's prior arrests, convictions, and alleged bad acts should be excluded entirely from the liability phase of the trial. Evidence concerning Mr. Nnodimele's alcohol use should only be admitted during the damages phase of the trial.

## V.    DEFENDANTS SHOULD BE PRECLUDED FROM ARGUING THAT A "PATTERN" OF ROBBERIES STOPPED AFTER PLAINTIFF'S ARREST

Any claim by Defendants that the "pattern" of robberies for which Plaintiff was arrested stopped after his arrest should be precluded because it is rank speculation unsupported by any facts or evidence and, in any event, relevant to nothing in the case.

A.     **Background**

Discovery suggests that Defendants may attempt to argue that Plaintiff is actually

guilty of the robberies for which he was convicted because the "pattern" of robberies stopped

after his arrest.

At his deposition, ADA Joshua Steinglass testified that, during the course of their

reinvestigation of Mr. Nnodimele's case, the Conviction Integrity Unit looked at police

complaint reports filed during the same "period of time" that the robberies for which Mr.

Nnodimele had been convicted occurred. *See* Ex. 4 at 125. The purpose of this inquiry was to

determine whether robberies of "a similar nature" had stopped after Mr. Nnodimele's arrest. *Id.*

at 136. ADA Steinglass could not remember exactly the period of time they reviewed, but

estimated it was in the range of a few months, and remembered that there were "a lot" of

robberies that had occurred during that window of time, more than fifty at least. *Id.* at 132, 139.

He further testified that the reviewing attorneys had decided that none of these robberies were

"close enough" to the November 2007 robberies to merit further investigation as to whether or

not they had been committed by the same person, *id.* at 133, and so did not interview any

witnesses or obtain any surveillance video for these other robberies. *Id.* at 138.

ADA Steinglass testified that "[t]here weren't set parameters" for determining

whether a robbery was similar, but that the reviewing attorneys had looked at the information

available and made a "judgment call" based on a "sense" of whether or not it was "worth

pursuing." *Id.* at 137-40. He noted that it was "very hard" to compare physical descriptions

"because it's not like every description you get in every robbery includes [a] description of the

perpetrator." *Id.* at 137-38. Furthermore, he testified that the reviewing attorneys had not

received records of these other robberies directly from the police, but had themselves searched

for records through a system to which they had access. *Id.* at 138. In going through this system,

the attorneys did not read the full complaint reports, but instead reviewed "some kind of list of information extracted from 61s [police complaint reports]" that only contained "certain fields from the 61s" and did not contain "a lot of the extraneous information that would normally appear on a 61." *Id.* at 144.

**B.    No Basis Exists to Argue that the "Pattern" of Robberies Stopped After Mr. Nnodimele's Arrest**

A haphazard search, conducted by attorneys rather than police detectives, through a system containing incomplete portions of police reports filtered using unknown parameters, without any record of the specific search, does not provide a basis for Defendants to assert that the "pattern" of robberies stopped after Mr. Nnodimele's arrest. Tens of thousands of robberies have occurred in New York City since Mr. Nnodimele's arrest.

**C.    Evidence Concerning the "Pattern" of Robberies Is Irrelevant**

Whether the "pattern" of robberies continued after Mr. Nnodimele's arrest is not relevant to this case. The issue to be tried is whether Defendants' violated Plaintiff's constitutional rights by fabricating evidence and withholding exculpatory material. If the jury finds that Defendants fabricated evidence or withheld exculpatory material, Defendants are liable even if Mr. Nnodimele were actually guilty of the robberies for which he was wrongfully convicted. *See Poventud v. City of N.Y.*, 750 F.3d 121, 133 (2d Cir. 2014) ("While *Brady* ensures a fair trial, a defendant's right to pre-trial disclosure under *Brady* is not conditioned on his ability to demonstrate that he *would* or even *probably would* prevail at trial if the evidence were disclosed, much less that he is in fact innocent.") (internal quotation marks and citation omitted).

**D.    Evidence Concerning the "Pattern" of Robberies is Prejudicial**

Any claim that the "pattern" robberies stopped after Mr. Nnodimele's arrest would also unfairly prejudice Mr. Nnodimele and mislead the jury. Such evidence would suggest

28

to the jury that Defendants' violation of Mr. Nnodimele's constitutional rights may be excused

due to a belief that, notwithstanding their misconduct, Defendants "got the right guy." In

essence, it would encourage the jury to engage in an impermissible "ends justify the means"

method of thinking, thereby confusing the issues and wasting the jury's time. Rule 403 was

designed precisely to protect against these concerns, and as such, merits the exclusion of this

type of claim or argument.

### E.    Conclusion

Defendants should be precluded from arguing or suggesting that robberies fitting

the "pattern" for which Mr. Nnodimele was arrested ceased upon his arrest.

## VI.    THE TESTIMONY OF DEFENSE "EXPERT" JOHN MONAGHAN SHOULD BE PRECLUDED OR, IN THE ALTERNATIVE, LIMITED

Defense expert John Monaghan should be precluded from testifying. In the

alternative, his testimony should be limited as set forth below.

### A.    Mr. Monaghan Should be Precluded from Testifying

Plaintiff adopts the *Daubert* standard and analysis set forth at pages 8-10 of Judge

Mann's Memorandum and Order concerning the testimony of Plaintiff's expert Joseph Pollini.

*See* Dkt. 123.[5] Under *Daubert* and the test set forth in Judge Mann's opinion, Mr. Monaghan

should be precluded from testifying.

Mr. Monaghan purports to offer expert opinions concerning the police practices of

the two detectives: DeRienzo and Garrity. He purports, somehow, to have some expertise into

what detectives should and should not do. Mr. Monaghan, however, has no training, education,

or experience concerning detective work.

---

[5]     Plaintiff's appeal of portions of Judge Mann's ruling is *sub judice*. However, plaintiff did not challenge the general analysis set forth on pages 8-10 of Judge Mann's opinion.

Mr. Monaghan's entire experience in policing was limited to his work at the NYPD. Ex. 7 (Transcript of Deposition of John Monaghan) at 33. There, Mr. Monaghan was never a detective. He never had a detective shield. *Id.* at 37-38. He could not name a single "training course given by the detective bureau [of the] NYPD." *Id.* at 41. He never even took the criminal investigations course offered by the NYPD. *Id.* at 38-40. Mr. Monaghan also never did detective work. For example, he never conducted a lineup. He never supervised a lineup. Lineups "weren't part of [his] job description." *Id.* at 47.

Since 1998, Mr. Monaghan has run a test preparation school for members of the NYPD called "The Key." *Id.* 49-50. That school, however, never offered a course for detectives or for aspiring detectives. *Id.* 58/24-59/2.

Mr. Monaghan's meager CV reveals not one publication concerning detective work. Ex. 8 (Mr. Monaghan's CV). His only publications were in civil service and school newspapers about promotion exams and NYPD testing. *Id.*

In short, Mr. Monaghan has nothing to offer this jury. He knows nothing about detective work, or proper police practices for detectives. Mr. Monaghan should not be permitted to testify at all.

**B.    Mr. Monaghan Should be Precluded from Offering His Opinion that Mr. Nnodimele Is Guilty, or Any Other Opinion Not in His Expert Report**

If Mr. Monaghan is permitted to testify, his testimony should be limited in multiple respects.

First, Monaghan should be precluded from offering his opinion that Mr. Nnodimele is guilty, because (i) that "opinion" has nothing to do with Mr. Monaghan's alleged expertise in accepted police practices; (ii) the issue of guilt (to the extent it is an issue) would be

an issue for the factfinder, not an expert; and (iii) Mr. Monaghan's opinion is found nowhere in his Report, *see generally* Ex. 9 (Monaghan Report); Ex. 7 at 229.

Defendants formally objected in their summary judgment motion to any opinion testimony by Plaintiff's expert, Joseph Pollini, concerning credibility or other issues of fact that are reserved for the jury (*see* Dkt. 77 at 37-53), and Plaintiff voluntarily agreed not to offer any such testimony by his expert. Defendants are bound by their position.

Mr. Monaghan should also be precluded from offering any other opinion not contained in his expert report. *See* Ex. 7 at 61 ("Q: Sir, do you have any opinions in this case other than what you put in your expert report? A: No."); Fed. R. Civ. P. 26(a)(2)(B)(i) (expert witness's report "must contain" "a complete statement of all opinions the witness will express and the basis and reasons for them").

### C.      Mr. Monaghan Should be Precluded from Testifying About Whether the Police Had Probable Cause

Mr. Monaghan should be precluded from testifying about whether the police had probable cause to arrest Mr. Nnodimele. Ex. 9 at 4-5. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible.").

First, the Court dismissed plaintiff's malicious prosecution claims, and probable cause is no longer an element of any claim in the case. Second, the definition of probable cause is a legal standard, as Defendants correctly argued in their own motion to limit the testimony of Plaintiff's police practices expert. To the extent probable cause is relevant to the case, it would be for the Court, not Mr. Monaghan, to explain this legal concept to the jury. *See Cameron*, 598 F.3d at 54 (testimony that probable cause existed for arrests amounted to "erroneously admitted

31

and highly prejudicial testimony" that "violated bedrock principles of evidence law that prohibit witnesses . . . from testifying in the form of legal conclusions")

Third, if probable cause were part of the case, it would be for the factfinder, not Mr. Monaghan, to make the ultimate determination whether the police had probable cause.

Finally, Mr. Monaghan's claim that Detective Garrity had probable cause based on an alleged similarity between Mr. Nnodimele and the wanted poster is absurd, because: (i) any factfinder looking at Mr. Nnodimele and the wanted poster would know they are not the same person, and in any event, the jury is in a position to make this determination and does not need the assistance of an "expert" to make it; (ii) Detective Garrity himself said Mr. Nnodimele was not in custody and would have been permitted to leave until Mr. Nnodimele allegedly identified himself in the wanted poster, Ex. 10 (Transcript of Deposition of Edward Garrity) at 43, 46-47; (iii) both the prosecutor and the court based probable cause on the alleged self-identification statement, Ex. 11 (Hearing Transcript) at 45-46, 47; and (iv) Mr. Monaghan has no expertise or opinion as to whether the wanted poster *actually* looked like Nnodimele, Ex. 7 at 91-92 ("Q: Are you offering any opinion on whether Mr. Nnodimele looks like the photo on the wanted poster or not? A: No."). Mr. Monaghan's "opinion" comes down to: if Garrity felt he had probable cause, he had it. *Id.* at 94 ("Q: So you are just deferring to the detective's opinion? A: Yes."). That opinion is worthless.

**D.    Mr. Monaghan Should be Precluded from Testifying As to Whether Ms. Boyle, Mr. Nnodimele, Det. Garrity, Det. DeRienzo, or Anyone Else Is Telling the Truth**

Mr. Monaghan purports to offer opinions about whether various witnesses and parties are telling the truth. Mr. Monaghan has no expertise in truth-telling. Ex. 7 at 81-83. In any event, these are credibility issues for the jury, not an expert witness, as the Defendants argued in their own motion to preclude any such testimony by Plaintiff's police practices expert. (Plaintiff

had agreed previously and voluntarily not to offer any such testimony, but Defendants, not taking any chance, made their motion anyway.)

For example, Mr. Monaghan purports to have an opinion that one affidavit by Kathleen Boyle is more "reliable" than another. Ex. 9 at 8; Ex. 7 at 230-31. This is a naked attempt to usurp the jury. The jury will see Ms. Boyle in court and evaluate Ms. Boyle for themselves. Mr. Monaghan never even met Ms. Boyle. Ex. 7 at 64-65. Mr. Monaghan's "expert" opinion is worthless.

As another example, Mr. Monaghan himself believes that Mr. Nnodimele did identify himself in a wanted poster, and that the Detectives did promptly turn over various *Brady* material to the prosecution. Mr. Monaghan believes this because he believes the Detectives' testimony and does not believe Mr. Nnodimele's testimony. Again, these are credibility issues for the jury, not for a former career NYPD police officer who has testified 80-100 times for the City of New York and never once believed a civilian over a police officer. *See id.* at 49.

### E.    Mr. Monaghan Should be Precluded From Relying Upon Or Citing Any Specific Provisions of the Patrol Guide or Detective Guide Unless They Were Cited in his Report or Deposition

At his deposition, Mr. Monaghan repeatedly claimed to rely upon the "entire [Detective] guide" to support his opinions, even while refusing to cite specific sections of the Detective Guide or Patrol Guide that allegedly supported his opinions. *See, e.g.*, *id.* at 120-23. Mr. Monaghan should be precluded from citing any specific provisions of the Patrol Guide or Detective Guide, except as cited in his expert report or deposition. The entire purpose of expert discovery is to put the other party on notice of the opinion and the basis for the opinion. Mr. Monaghan should not be permitted to stonewall Plaintiff at deposition, then surprise Plaintiff with new bases for his opinion at trial.

33

**F.      Mr. Monaghan Should Be Precluded From Relying on this Court's Summary Judgment Opinion, or any Other Judicial Opinion in This Litigation**

At his deposition, Mr. Monaghan purported to rely upon the summary judgment opinion of this Court is formulating some of his opinions. *See*, *e.g.*, *id.* at 214-16. This is improper for a number of reasons. First, citing an opinion of the Court gives the Court's imprimatur to one expert's opinion, and improperly suggests to the jury that the Court favors one party over another, or one expert's opinion over another. Second, Mr. Monaghan plainly has no idea what a summary judgment decision is. *See id.* at 180, 189-90. Third, nothing in the Court's summary judgment decision remotely supports any of Mr. Monaghan's opinions. *See*, *e.g.*, *id.* at 216.

**G.      Mr. Monaghan Should Be Precluded From Testifying Beyond the Scope of Mr. Pollini's Testimony**

To the extent the Court limits the subject matter of Mr. Pollini's testimony, Mr. Monaghan should be equally limited, (i) for the same reasons Mr. Pollini is limited, and (ii) because Mr. Monaghan is a rebuttal witness.

**H.      Conclusion**

Mr. Monaghan should be precluded from testifying as an expert witness. If he is permitted to testify, his testimony should be limited as requested herein.

**VII.      TESTIMONY AND EVIDENCE CONCERNING THE DA's FINDINGS AND THE ADAs' OPINIONS OF PLAINTIFF'S INNOCENCE OR GUILT SHOULD BE EXCLUDED**

Defendants intend to call Bonnie Sard, former chief of the DA's Conviction Integrity Unit, and Joshua Steinglass, an ADA who reinvestigated Plaintiff's case following his conviction, to testify about the CIU's "finding concerning plaintiff's actual innocence, or lack thereof." *See* Joint Pre-Trial Order. This testimony should be precluded because it is irrelevant, prejudicial, distracting, and constitutes improper opinion testimony. It should also be precluded

34

for the reasons set forth in Section II because it reveals the thought processes and state of mind of the DA's office.

### A.      Background

Prompted by Mr. Nnodimele's post-verdict motion to vacate his conviction on the grounds of, *inter alia*, actual innocence, the CIU re-investigated Mr. Nnodimele's case. The unit interviewed some, but not all, of the relevant witnesses—for example, it did not interview any detective except for Det. DeRienzo, and it interviewed only one eyewitness, Kathleen Boyle. It kept no notes of any of its interviews. At the conclusion of its inquiry, it did not make any finding that Mr. Nnodimele was innocent or guilty. Instead, it found that Mr. Nnodimele had failed to meet his "burden" (which it did not define) to establish his actual innocence. It concluded, assuming the truthfulness of the People's witnesses, that there was legally sufficient evidence of guilt adduced at the previous trial. However, it did agree to vacate Mr. Nnodimele's conviction due to the unfairness of that trial. Thereafter, new evidence that came to light while ADA Steinglass was preparing for the retrial caused the DA to agree to dismiss all charges.

### B.      The ADAs' Opinions and the CIU's Findings Are Irrelevant

The opinions of the ADAs and the findings of the CIU on the ultimate issue of Mr. Nnodimele's innocence or guilt are irrelevant. The jury in this case must decide whether the Defendants manufactured or suppressed testimony and whether such conduct was causally related to Mr. Nnodimele's loss of liberty and conviction. Though innocence is relevant to establish that Mr. Nnodimele did not identify himself in the wanted poster, innocence is not an element of any of Plaintiff's claims. *See* SJ Op. at 25 ("An officer violates an accused's right to a fair trial 'when he creates false information likely to influence a jury's decision and forwards that information to prosecutors.'" (quoting *Ricciuti*, 124 F.3d at 130) (internal alterations omitted);

*Poventud*, 750 F.3d at 134 (in the context of a *Brady* claim, "materiality does not depend on factual innocence").

In any event, to the extent Plaintiff's actual innocence is relevant, it is for the factfinder, not a witness, to determine. The ADA's post-conviction opinions and the CIU's findings are mere opinions that do not have a "tendency to make a fact more or less probable." Fed. R. Evid. 401(a). They are therefore inadmissible.

### C.   The ADAs' Opinions and the CIU's Findings Are Inadmissible under Rule 403

The (non-existent) probative value of the ADAs' opinions and the CIU's findings is also substantially outweighed by their prejudicial effect. The prejudice of this evidence is clear: A jury is likely to assign significant weight to a prosecutor's testimony concerning Mr. Nnodimele's innocence or guilt. *Cf. Zomber v. Vill. of Garden City*, No. 09 Civ. 4637, 2011 WL 4737052, at *2 (E.D.N.Y. Oct. 6, 2011) (excluding testimony regarding the Nassau County DA's decision to seek an indictment as "highly prejudicial"). The probative value of such opinion testimony by a fact witness, however, is non-existent. Rule 403 prohibits the introduction of facially prejudicial evidence that lacks probative value.

### D.   The ADAs' Opinions and the CIU's Findings Are Needlessly Distracting

Permitting testimony from ADAs concerning Mr. Nnodimele's innocence or guilt would be needlessly distracting. It would force Plaintiff to discredit the prosecutors' opinions and findings by undertaking a detailed, critical analysis of the CIU's investigation and its defects, including the unit's failure to re-interview any eyewitness besides Kathleen Boyle, its failure to interview the two detectives who were with Det. Garrity when he allegedly obtained Mr. Nnodimele's self-identifying statement, its studious failure to take any notes or make any reports about its interviews, its reliance on an "expert" witness to evaluate the height of the suspect

36

(where the parties to this action are not relying on any such expert testimony or findings), its selective consideration of the information in the police reports, and its inherent bias to uphold the reputation of the DA.

None of this evidence is relevant to Plaintiff's claims, yet Plaintiff would be forced to present it to rebut testimony from the ADAs that Mr. Nnodimele is not actually innocent.

### E.    The ADAs' Opinions Are Inadmissible Lay Opinion Testimony

None of the ADAs will be testifying as experts, and thus their opinion is inadmissible under Rule 701. Rule 701 permits lay witnesses to offer opinion testimony only when it is "based on personal perception, 'helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue, and not based on scientific, technical or otherwise specialized knowledge within the scope of 702.'" *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 335 (S.D.N.Y. 2009) (quoting Fed. R. Evid. 701).

The proffered opinions of the ADAs do not satisfy these requirements. First, the Court has already prohibited Plaintiff from inquiring into the thought processes of the DA's office. *See* Section II. Thus, to the extent any of the ADAs formed an opinion as to Mr. Nnodimele's guilt or innocence, there is no evidence as to how that opinion was formed or whether it is in fact based on "personal perception," as required by Rule 701. Absent such evidence, the opinion testimony should be excluded.

Second, to the extent the ADAs' opinions arise from their investigation into Mr. Nnodimele's case, they are based on "technical or specialized" knowledge that is not the appropriate subject of lay opinion testimony. *See United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) ("a lay opinion must be the product of reasoning processes familiar to the average

person in everyday life"); *Adams v. City of N.Y.*, 993 F. Supp. 2d 306, 323-27 (E.D.N.Y. 2014)

(excluding opinion testimony from ADAs concerning an undercover officer's credibility).

> **F.     The Proffered Testimony Should be Excluded Because It Concerns the Thought Processes of the DA**

It would be manifestly unfair to force Plaintiff to cross-examine, and discredit,

testimony from an ADA on an issue as volatile as Plaintiff's guilt or innocence without the

benefit of discovery. At Defendants' urging, Plaintiff was precluded from obtaining any

discovery of the subjective thought processes of the prosecutors, including their reasons for

reaching the conclusions stated in court documents, why they did or did not credit various

witnesses, and why they did or did not take certain investigative steps. Plaintiff thus was denied

the tools to challenge the CIU's "findings" concerning the question of actual innocence and the

credibility of the witnesses providing such opinion testimony. *See* Section II.

> **G.     Conclusion**

Evidence and testimony concerning the DA's findings and opinions of Mr.

Nnodimele's innocence or guilt should be excluded.

**VIII.   DEFENDANTS' PROFFERED WITNESSES FROM THE DEPARTMENT OF HOMELESS SERVICES SHOULD BE PRECLUDED FROM TESTIFYING**

Defendants list four security officers from a Brooklyn homeless shelter—David

Eddie, Yvonne Hughes, Julia Lugo, and Vanessa Cordero—as witnesses who will testify

concerning their "identification" of Mr. Nnodimele as the person depicted in the wanted poster

and the steps they took after such "identification." These witnesses should be precluded from

testifying because their proffered testimony is irrelevant, prejudicial, cumulative, and constitutes

inadmissible lay opinion testimony. In addition, Ms. Lugo was never disclosed as a potential

witness in Defendants' Rule 26(a)(1) disclosures.

## A.    Background

Det. Garrity testified during the pre-trial hearing in advance of Mr. Nnodimele's criminal trial that his attention was drawn to Mr. Nnodimele by a telephone call he received from Sgt. Eddie at the Atlantic Avenue Men's Homeless Shelter in Brooklyn. Det. Garrity testified that Sgt. Eddie "had a copy of a wanted poster and he thought an individual that walked into the shelter [Mr. Nnodimele] *fit the description* – of the individual in the wanted poster." Ex. 11 at 11-12 (emphasis added). He repeated the same testimony at his deposition: Sgt. Eddie said the individual "fit the description." Ex. 10 at 26.

Sgt. Eddie, in his trial testimony, corroborated Det. Garrity. He said he "told [Garrity] I had in my presence a *possible* suspect that *resembles* the wanted poster." Ex. 12 (Trial Transcript) at 202 (emphasis added).

## B.    The Proffered Testimony Is Irrelevant

The proposed "identification" testimony is not relevant. The sole issue in this case, with regard to Det. Garrity, is whether he fabricated Mr. Nnodimele's alleged self-identification statement. The security officers' testimony Mr. Nnodimele does not make it "more or less probable" that Mr. Nnodimele identified himself in the wanted poster, as Det. Garrity claims. Fed. R. Evid. 401. To the extent Mr. Nnodimele's resemblance to the wanted poster is relevant, the jury will see (i) Mr. Nnodimele in person, (ii) photographs of Mr. Nnodimele at the time of his arrest, and (iii) the wanted poster, allowing it to make its own determination as to whether there is a resemblance. The opinions of four biased, lay witnesses are unnecessary.

## C.    The Proffered Testimony Is Prejudicial

Four witnesses' opinions that Mr. Nnodimele resembled the person depicted in the wanted poster is unduly prejudicial and of no probative value. The testimony lacks probative value because the jury is capable of determining the degree to which Mr. Nnodimele resembled

the wanted poster at the time of his arrest. It is unduly prejudicial and cumulative because it is four nearly identical opinions suggesting that Mr. Nnodimele is the person depicted in the wanted poster and is thus guilty of the robberies. This prejudice far outweighs any probative value that the testimony may have.

### D.     The Proffered Testimony Constitutes Inadmissible Lay Opinions

Testimony that Mr. Nnodimele resembled the person depicted in the wanted poster should be excluded because it constitutes inadmissible lay opinion. The so-called "identifications" would not be "helpful" to "determining a fact in issue" because the jury is just as able as these individuals to compare Mr. Nnodimele's appearance to the wanted poster. Fed. R. Evid. 701(b). The jury does not need—and would not benefit from—the opinions of four New York City employees.

### E.     Ms. Lugo Should be Precluded from Testifying

Ms. Lugo should be precluded from testifying because she was not declared as a witness in any of Defendants' Rule 26(a)(1) disclosures and Plaintiff thus did not have an opportunity to depose her.

### F.     Conclusion

Defendants should be precluded from calling the Department of Homeless Services witnesses listed on the Joint Pre-Trial Order.

Dated:  May 19, 2016
       New York, New York

                                         LAW OFFICES OF JOEL B. RUDIN, P.C.

                                         By: _____/s_____

                                            Joel B. Rudin
                                          Haran Tae
                                      600 Fifth Avenue, 10th Floor
                                      New York, New York 10020
                                      (212) 752-7600 (t)
                                      (212) 980-2968 (f)

                                      EMERY CELLI BRINCKERHOFF
                                      & ABADY LLP
                                      Ilann M. Maazel
                                      Samuel Shapiro
                                      600 Fifth Avenue, 10th Floor
                                      New York, New York 10020
                                      (212) 763-5000 (t)
                                      (212) 763-5001 (f)

                                      *Attorneys for Plaintiff*