UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                     :

MARTIN NNODIMELE,                        :

                                :      13-CV-3461 (ARR)(RLM)

                Plaintiff,          :

                                  :

       -against-                   :      NOT FOR ELECTRONIC

                                  :      OR PRINT PUBLICATION

DONALD DERIENZO and EDWARD GARRITY,    :

in their individual capacities,             :      ORDER

                                  :

                Defendants.         :

                                  :
------------------------------------------------------------------- X

ROSS, United States District Judge:

       Pending before this court are pretrial submissions related to the upcoming trial of this

case, scheduled to commence on July 18, 2016. This order resolves outstanding disputes

regarding the jury charge and the presentation of evidence at trial. It also sets deadlines for

additional pretrial submissions and schedules a pretrial conference.

       This court assumes familiarity with the factual and legal background of this action, which

it sets forth in detail in its opinion and order on summary judgment, see Op. & Order, Dkt. #116,

at 1-11, and recites only that background relevant to this order.

       Plaintiff, Martin Nnodimele, commenced this action in June 2013 after spending more

than four years in custody for multiple robberies for which prosecutors now say there is

insufficient evidence of his guilt. Defendants moved for summary judgment on plaintiff's claims

in May 2015. This court granted the motion with respect to plaintiff's malicious prosecution

claims and denied it with respect to plaintiff's fair trial claims. Id. at 40. The remaining claims

are brought pursuant to 42 U.S.C. § 1983. See Pl.'s Tr. Mem., Dkt. #152, at 2. They allege that

defendants fabricated false evidence and withheld exculpatory evidence. The former includes

1

manufacturing statements by the plaintiff identifying himself in a wanted poster and forwarding those statements to the prosecutor. Id. at 1. The latter includes withholding an eyewitness's statements that the man in the wanted poster was the same person who robbed the Caravan store, and that plaintiff was not the person who robbed the Caravan store. Id. at 1-2. It also includes not disclosing until the eve of trial the fact that the same eyewitness had failed to identify plaintiff as the perpetrator in the first lineup. Id.

In preparation for the upcoming trial, the parties were ordered to submit motions in limine as well as a joint proposed jury charge with briefing regarding any points of disagreement. See Order, Dkt. #117. This order addresses those matters as well as objections to a memorandum and order of the Honorable Roanne L. Mann, Chief Magistrate Judge, see Mem. & Order, Dkt. #123, which this court reserved to consider in conjunction with the complete pretrial submissions, see Order dated Apr. 12, 2016.

## I.     Trial Plan

Plaintiff has moved to bifurcate trial into a liability phase and a damages phase. See Pl.'s Mots. in Limine, Dkt. #148, at 1. Plaintiff argues that bifurcation will reduce jury confusion and prevent prejudice to plaintiff that will otherwise result. Id. at 1-3. Specifically, plaintiff contends that the scope of evidence pertinent to damages is far broader than evidence pertinent to liability and includes evidence that may prejudice the jury against plaintiff. Id. An example cited by plaintiff includes his history of alcohol use, evidence relevant to damages that could improperly affect the jury's analysis of liability. Id. at 2-3.

Defendants oppose bifurcation, arguing that it would add length and inconvenience to the proceedings and "keep[] from the jury important facts about his background so as to sway the jury into returning a verdict on liability in his favor." Defs.' Mem. in Opp'n to Pl.'s Mots. in

Limine, Dkt. #155, at 2. Defendants specifically cite plaintiff's "alcoholism" as evidence that could be relevant at the liability phase as bearing upon plaintiff's memory and perception of the events at issue here. Id. at 3.

Rule 42(b) of the Federal Rules of Civil Procedure empowers the trial court to order a separate trial of one or more separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "Though the court is well within its discretion to bifurcate a trial, and bifurcation is not unusual, bifurcation is 'the exception rather than the rule.'" See Guidi v. Inter-Cont'l Hotels Corp., No. 95-CV-9006, 2003 WL 1846864, at *1 (S.D.N.Y. Apr. 8, 2003) (citing Dallas v. Goldberg, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001)). The decision to bifurcate is case-specific, and it is informed by the following non-exhaustive list of factors:

> (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted.

Id. (citing Goldberg, 143 F. Supp. 2d at 315).

These factors weigh heavily in favor of granting plaintiff's motion to bifurcate trial. Plaintiff has persuaded this court that the issues presented at the liability and damages phases are largely if not entirely distinct: the former will require the jury to determine the conduct of the defendants, whereas the latter will require the jury to assess the effect of that conduct on plaintiff. There will be little if any overlap between the documentary and testimonial evidence presented in conjunction with the respective phases. In light of these circumstances, this court finds that bifurcation will expedite and economize trial proceedings.

Although defendants argue that they will be prejudiced if the motion to bifurcate is granted, this court disagrees. It is plaintiff who faces the greatest risk of prejudice as certain

evidence relevant only to his damages may impermissibly color the jury's perception of him when assessing the liability of defendants. In apparent recognition of this fact, defendants complain that bifurcation "would prevent the jury, while considering the liability phase, from obtaining a true picture of who plaintiff is." Defs.' Mem. in Opp'n to Pl.'s Mots. in Limine, Dkt. #155, at 2. Yet defendants do not explain why or how it is appropriate for the jury to consider "who plaintiff is" when deciding whether defendants violated plaintiff's fair trial rights. To the extent that aspects of plaintiff's character or experience are admissible and relevant to assessing his credibility, bifurcation does not prevent defendants from inquiring into them during the liability phase.[1] However, bifurcation does safeguard against attempts to focus the jury on "who plaintiff is" at the expense of the jury's careful consideration of what defendants did. Accordingly, this court grants plaintiff's motion to bifurcate trial as he proposes.

In neither phase of the trial will plaintiff's counsel be permitted to refer to counsel for defendants as "City Attorneys" or "Corporation Counsel." The court will advise the jury that defendants are detectives of the New York City Police Department ("NYPD"). This information is sufficient to permit plaintiff to adduce the evidence of bias he references in his motions in limine, see Pl.'s Responses to Defs.' Mots. in Limine, Dkt. #150, at 1-3, while minimizing the risk of any undue prejudice to defendants, see Defs.' Mem. of Law in Supp. of Defs.' Mots. in Limine, Dkt. #145, at 2-3.

---

[1] For example, with respect to plaintiff's history of alcohol use and its impact on his memory and perception, defendants can simply ask plaintiff whether any substances, medications, or conditions impaired his memory or perception of the events in question. The introduction of evidence that plaintiff suffered from alcoholism is more prejudicial than probative on the matter of plaintiff's credibility because defendants have offered nothing more than speculation regarding whether and how plaintiff's history of alcohol use affected his memory or perception here. See Defs.' Mem. in Opp'n to Pl.'s Mots. in Limine, Dkt. #155, at 3 (surmising that "his alcoholism may well bear on his memory and perception of the underlying events") (emphasis added).

Furthermore, in neither phase of the trial will plaintiff's counsel be permitted to offer evidence or present argument regarding the City of New York's indemnification of the defendants. See Anderson v. Aparicio, 25 F. Supp. 3d 303, 313-14 (E.D.N.Y. 2014), aff'd and remanded sub nom. Anderson v. Cty. of Suffolk, 621 F. App'x 54 (2d Cir. 2015). However, this court agrees with plaintiff that, should defendants suggest they will pay any judgment in this case personally, they will open the door to contrary evidence. See Mathie v. Fries, 121 F.3d 808, 816 (2d Cir. 1997).

Finally, at no point in the trial may plaintiff's counsel request a specific dollar amount from the jury. Whether the plaintiff can suggest a specific damages award to the jury is "best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." Lightfoot v. Union Carbide Corp., 110 F.3d 898, 912 (2d Cir. 1997). However, "specifying target amounts for the jury to award is disfavored," Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1016 (2d Cir.1995), vacated on other grounds, 518 U.S. 1031 (1996), especially in the context of monetary awards for pain and suffering, Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 558 (E.D.N.Y. 2011) (citations omitted). This court exercises its discretion to preclude plaintiff's counsel from requesting a specific dollar amount from the jury. The court's proposed jury charge on damages contains sufficient information for the jury to understand the nature of the damages it may award.

## II.     Jury Charge

The parties have submitted proposed instructions for the jury as well as briefing on their disagreements over the language of the jury charge. With the assistance of those materials, this court has drafted its proposed instructions, which it appends to this order. The court's proposed

instructions reflect its effort to resolve the substantive disagreements between the parties and conform the instructions to applicable law. As outlined below, this court will hold a pretrial conference with the parties and discuss any objections to the court's proposed instructions at that time.

**A.      Burden of Proof**

The parties disagree regarding the appropriate instruction on the plaintiff's burden of proof in this case. This court finds that neither party's language is entirely clear and instead proposes its standard language on the burden of proof in a civil matter, which clearly sets forth the standard in this case and distinguishes it from the heightened standard in criminal matters.

**B.      General Instruction on Deprivation of a Federal Right**

The parties disagree regarding the proper language to describe deprivation of a federal constitutional right. As plaintiff explains, the "main difference" between the versions proposed to the court is that plaintiff's version omits language on state of mind whereas the version proposed by defendants includes it. See Pl.'s Mem. of Law in Supp. of Proposed Jury Instructions, Dkt. #154, at 2. Plaintiff contends that "an instruction on intent/recklessness has no place given the facts and defenses in this case and would only confuse and mislead the jury." Id. at 2-3. Given the importance of this issue, this order explores plaintiff's arguments in some detail.

Plaintiff first notes the parties' agreement that a plaintiff in a § 1983 case need not prove that any defendant had a specific intent to deprive the plaintiff of his or her constitutional rights. Id. at 3. According to plaintiff, intent is relevant in certain § 1983 cases but irrelevant in others. For example, plaintiff contends that intent is irrelevant—and therefore not charged—in typical false arrest cases because there is no dispute that the officer intended to arrest the plaintiff. Id.

Plaintiff contends that "an intent charge should not be given" where "the issue of intent is not in dispute." Id.

Plaintiff then explains why intent is not disputed based on the anticipated evidence in this case. With respect to the evidence fabrication claims against defendants, plaintiff asserts that evidence fabrication "is by definition an intentional act," making it "impossible" to fabricate evidence through mistake, accident, negligence, or another innocent reason. Id. With respect to the Brady claims, plaintiff points out that DeRienzo insists that he provided the lineup information concerning Kathleen Boyle—an eyewitness to the Caravan robbery—to the prosecutor, meaning he does not plan to argue that it was withheld through mistake, accident, negligence, or another innocent reason. Id. at 3-4. Plaintiff further notes that DeRienzo categorically denies that Ms. Boyle made exculpatory statements during the lineup procedure, rendering an intent charge inapposite. Id. at 4. Plaintiff concludes that "all references to intent . . . are confusing, misleading, have nothing to do with the facts, disputes, or defenses in this case, and should not be charged." Id.

Defendants insist that language on state of mind is necessary because the jury could find that DeRienzo "mistakenly neglected" to forward the lineup report to the prosecutor "in a timely fashion," thereby requiring the jury to decide "whether or not such conduct was reckless." See Defs.' Mem. of Law in Supp. of Defs.' Proposed Jury Instructions, Dkt. #156, at 3. Defendants do not address why or how the jury could determine that the other conduct in which the defendants allegedly engaged could be the product of mistake, accident, negligence, or another innocent reason.

This dispute touches upon an area of law that remains unsettled.

By way of background, the Supreme Court held in Brady v. Maryland "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87 (1963). The state's obligation to disclose favorable evidence under Brady extends to "evidence 'known only to police investigators and not to the prosecutor.'" Strickler v. Greene, 527 U.S. 263, 280-81 (1999) (quoting Kyles v. Whitley, 514 U.S. 419, 438 (1995)). A true Brady violation has three essential components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Poventud v. City of N.Y., 750 F.3d 121, 133 (2d Cir. 2014) (en banc) (quoting United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004)). Brady violations occur both in circumstances where the defense never received the evidence in question and where belated disclosure to the defense impairs its ability to use the information at trial. See Leka v. Portuondo, 257 F.3d 89, 101 (2d Cir. 2001).

"Although Brady issues typically arise in the context of criminal prosecutions, a Brady claim may be the basis of an affirmative § 1983 damages action." Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Jury Instructions § 9.01[A] Brady v. Maryland Violations (2016 Supplement). In that context, however, neither the Supreme Court nor the Second Circuit has squarely addressed the question of the state of mind with which the defendant must act. See Pl.'s Mem. of Law in Supp. of Proposed Jury Instructions, Dkt. #154, at 4 n.1; Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Jury Instructions § 9.01[A] Brady v. Maryland Violations (2016 Supplement). Furthermore, that question has generated conflicting answers among the circuit courts that have considered it. Id.

"The great weight of circuit court authority agrees with the 'majority' position" articulated in Jean v. Collins, 221 F.3d 656 (4th Cir. 2000) (en banc), cert. denied, 531 U.S. 1076 (2001). Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Jury Instructions § 9.01[A] Brady v. Maryland Violations (2016 Supplement). The majority position is that the "no fault" Brady standard does not apply to claims for damages. Id. However, courts disagree about the precise standard that does apply. Some courts require a plaintiff to show that the defendant acted in bad faith in order to prove a violation of that plaintiff's constitutional rights based on Brady. Id. "The rationale for this view is that the police officer's Brady obligation to the prosecutor is not identical, and should not be analyzed in the same manner, as the prosecutor's Brady obligation to the defense." Id. This view finds support in the Fourth, Eighth, and Eleventh Circuits. See Jean v. Collins, 221 F.3d 656 (4th Cir. 2000) (en banc), cert. denied, 531 U.S. 1076 (2001); Villasana v. Wilhoit, 368 F.3d 976 (8th Cir. 2004), cert. denied, 543 U.S. 1153 (2005); Porter v. White, 483 F.3d 1294 (11th Cir. 2006), cert. denied, 552 U.S. 1185 (2008).

The Seventh and Ninth Circuits, while agreeing that mere negligence does not support a Brady claim, have declined to impose a bad faith requirement. Steidl v. Fermon, 494 F.3d 623 (7th Cir. 2007); Tennison v. City and Cty. of S.F., 570 F.3d 1078 (9th Cir. 2009). Instead, these courts have determined that deliberate or reckless conduct suffices. Steidl, 494 F.3d at 631; Tennison, 570 F.3d at 1087. The Tennison court explained that "[t]his standard is consistent with the standard imposed in the substantive due process context, in which government action may violate due process if it 'shocks the conscience.'" Id. at 1089. Because "the level of culpability required to meet the conscience-shocking standard depends on context," that court examined whether the circumstances of a Brady claim are such that actual deliberation is practical; in such circumstances, courts have consistently held that reckless indifference is sufficient to sustain a

claim because the officials have an opportunity to deliberate alternatives prior to selecting a course of action. Id. Finding Brady claims "more akin to cases that apply a reckless indifference standard to due process claims" in light of the opportunity for deliberation, the Ninth Circuit rejected the bad faith requirement in favor of "deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." Id.[2]

It is unclear from plaintiff's submissions whether he argues that there is no intent requirement or that some intent requirement short of bad faith is appropriate here, as plaintiff ultimately argues that intent simply is not in dispute. This court disagrees with plaintiff. It is impossible at this juncture to hold that no reasonable jury could find that the evidence withheld or belatedly disclosed was done so as the result of mistake, accident, negligence, or any other innocent reason. Further, this court joins the view adopted by the Seventh and Ninth Circuit that, although bad faith is not a required element of a Brady claim under § 1983, deliberate indifference to or reckless disregard for an accused's rights can sustain such a claim. Accordingly, this court agrees with defendants that an intent instruction is appropriate as part of the general language concerning deprivation of a constitutional right. Plaintiff has not persuaded this court that such language reflects an incorrect statement of the law. Although plaintiff argues that such language may become duplicative if the jury adopts a particular view of the facts, this court cannot find that the language is necessarily duplicative or that any duplication renders the language improper, misleading, or confusing.[3]

---

[2] The First and Third Circuits have explicitly declined to reach the issue. See Drumgold v. Callahan, 707 F.3d 28, 43 n.10 (1st Cir. 2013) ("This is a difficult question that has engendered a range of views."); Smith v. Holtz, 210 F.3d 186 (3d Cir. 2000), cert. denied, 531 U.S. 880 (2000). The Sixth Circuit has held that the key question is not the intent of the police officer who suppressed the evidence but rather the nature of the evidence withheld: where the exculpatory value of the evidence is apparent, the duty is absolute. Moldowan v. City of Warren, 578 F.3d 351, 383-84 (6th Cir. 2009) (en banc), cert. denied, 561 U.S. 1038 (2010).

[3] Although the parties have not specifically addressed the intent requirement for the fair trial evidence fabrication claim, this court likewise finds that this instruction is appropriate for that claim based upon the same reasons

In light of the foregoing discussion on state of mind, this court cannot presently envision a scenario in which defendants would be entitled to qualified immunity notwithstanding a verdict of liability on any of the claims to be tried. This court has reviewed the most recent submissions from the parties on this matter and finds the arguments advanced by defendants unavailing. See Letter from Joshua J. Lax dated June 21, 2016, Dkt. #161, at 3-5. Accordingly, this court does not anticipate presenting a special verdict sheet on qualified immunity to the jury, but it reserves a final ruling on that matter until the close of evidence.

### C. Evidence Fabrication Claim

Plaintiff identifies two substantive disputes with respect to the charge on plaintiff's fair trial evidence fabrication claim. See Pl.'s Mem. of Law in Supp. of Proposed Jury Instructions, Dkt. #154, at 5-6. First, plaintiff argues that the jury should be charged that the self-identification statements are material as a matter of law because "no reasonable jury could conclude that the self-identification was not material." Id. Second, plaintiff argues that reference to plaintiff's conviction in the language proposed by defendants is misplaced in light of this court's prior order that "fair trial claims are not limited to recovery for convictions secured through the use of fabricated evidence at trial." Id. at 6 (citing Op. & Order, Dkt. #116, at 28).

Defendants recognize that language focused on plaintiff's conviction is inappropriate and propose alternative language asking the jury to determine "whether plaintiff's self-identification was likely to have influenced jurors at the criminal trial." Defs.' Mem. of Law in Supp. of Defs.' Proposed Jury Instructions, Dkt. #156, at 5. However, they insist that the jury be permitted to decide whether the self-identification statements were material. Id. at 4-5. According to

_____

discussed herein. See Morse v. Fusto, 804 F.3d 538, 543 (2d Cir. 2015) (during trial on evidence fabrication claim, district court instructed jury that requisite intent was that defendants acted knowingly or recklessly).

defendants, "given the vast amount of other evidence that can be fairly deemed incriminating, it is entirely possible that the criminal jury did not view the self-identification statements as being anywhere as significant as the identification of the plaintiff as the perpetrator of the robberies by his victims." Id. at 5.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). A plaintiff need not have been tried or convicted to assert a fair trial claim, as the constitutional violation occurs when the false information is transmitted to prosecutors. Id. at 127, 130 (denying summary judgment on fair trial claim where all criminal charges were dismissed pretrial). The parties and this court agree that an evidence fabrication claim has three essential elements: (1) that a defendant created false information; (2) that the defendant forwarded, or caused the information to be forwarded, to the prosecution; and (3) that the fabricated evidence was material, that is, that it would be likely to influence a jury's decision if a jury were to consider it. Accordingly, their only disagreement is whether the self-identification statements are material as a matter of law.

This court holds that they are. The evidence fabrication claim does not require that a criminal trial actually took place. Garnett v. Undercover Officer C0039, No. 13-CV-7083, 2015 WL 1539044, at *4 (S.D.N.Y. Apr. 6, 2015), appeal docketed, No. 15-1500 (2d Cir. May 6, 2015) ("In Ricciuti, the court did not require that the false information submitted to the prosecutor be used at trial, or even that a trial ever take place—the claim accrues when the officer forwards the false information to the prosecutors."). The materiality inquiry in the context

of this fair trial claim is more abstract than its Brady counterpart because it concerns the general quality of the false information and its probable effect on a hypothetical jury. The materiality inquiry for Brady claims, by contrast, considers the probable effect on the actual criminal trial that took place, taking into account the totality of the evidence presented to the jury. In other words, because the evidence fabrication claim is not tethered to an actual criminal trial—and serves to compensate plaintiff for all harm occasioned by the fabrication—the analysis of materiality is absolute rather than relative. It is forward-looking rather than retrospective. It asks whether a hypothetical jury would likely be swayed by evidence that the accused identified himself as the perpetrator of a crime.

This court has no difficulty resolving this materiality question as a matter of law. No reasonable jury could find that two independent self-identification statements, both tantamount to confessions to at least one crime, are not the type of evidence likely to influence a jury's decision if a jury were to consider it.[4] When considering a criminal trial in the abstract, as this evidence fabrication claim requires, it is difficult to imagine more powerful evidence of a criminal defendant's guilt than his statement that he was the person depicted mid-robbery in a photograph.

Defendants argue to the contrary, but the premise of their argument is flawed: they improperly focus on the potency of this evidence relative to "the vast amount of other evidence that can be fairly deemed incriminating" to suggest the possibility "that the criminal jury did not view the self-identification statements as being anywhere as significant as the identification of the plaintiff as the perpetrator of the robberies by his victims." See Defs.' Mem. of Law in Supp.

---

[4] There is some dispute regarding whether materiality analyses like this one are questions of fact for the jury or questions of law for the court. This court does not reach that question because, even assuming that the question is properly one for the jury, it holds that no reasonable jury could find against plaintiff on this element of his claims.

of Defs.' Proposed Jury Instructions, Dkt. #156, at 5. This argument is compelling in the context of a <u>Brady</u> claim, where materiality is determined by reference to evidence adduced at the criminal trial, but it is inapposite in the context of an evidence fabrication claim, where the materiality standard is different. Accordingly, the proposed instructions explain to the jury that this element of the evidence fabrication claim is satisfied as a matter of law.

### D.    <u>Brady</u> Claim

There are three substantive disagreements with respect to proposed language for the <u>Brady</u> claim. First, plaintiff argues that there is no reasonable dispute as to whether the evidence allegedly withheld was favorable to plaintiff, meaning that the jury should be instructed that Ms. Boyle's lineup report and statements were favorable to plaintiff as a matter of law. <u>See</u> Pl.'s Mem. of Law in Supp. of Proposed Jury Instructions, Dkt. #154, at 6-7. Second, plaintiff makes the same argument with respect to the materiality element. <u>Id.</u> at 7-8. Third, plaintiff contends that language about intent proposed by defendants is confusing and misleading. <u>Id.</u> at 9.[5]

Defendants do not counter the specific arguments advanced by plaintiff. <u>See</u> Defs.' Mem. of Law in Supp. of Defs.' Proposed Jury Instructions, Dkt. #156, at 5-6. Instead, defendants aver generally that "it is up to the jury" to decide each element. <u>Id.</u> at 6 (emphasis omitted).

As this court explained above, a true <u>Brady</u> violation has three essential components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Poventud</u>, 750 F.3d at 133 (quoting <u>Rivas</u>, 377 F.3d at 199). The governing law reveals uncertainty regarding how these components

---

[5] Plaintiff also argues that references to impeachment evidence are inappropriate since plaintiff is not alleging that defendants withheld impeachment material. <u>Id.</u> at 8. That argument is moot: defendants have agreed to withdraw the impeachment language based on plaintiff's representation that he will not argue that this evidence is impeaching. <u>See</u> Defs.' Mem. of Law in Supp. of Defs.' Proposed Jury Instructions, Dkt. #156, at 6.

of a Brady violation map onto elements of a claim for damages and which elements, if any, should be decided by the court as a matter of law. See Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims and Defenses § 3.23[E][4] Materiality (2016 Supplement) ("There is very little law on the issue, most likely because applications of Heck v. Humphrey, prosecutorial immunity, and principles of municipal liability, discussed below, prevent the great majority of § 1983 Brady claims from getting to a jury.").

With respect to the arguments outlined above, this court agrees with plaintiff that the evidence at issue is favorable as a matter of law, but disagrees with plaintiff that it is material as a matter of law.

Defendants have offered no reason why Boyle's nonidentification of plaintiff in the lineup procedure, and her related exculpatory statements, are not favorable to plaintiff. No reasonable jury could find that failure by an eyewitness to identify plaintiff as the perpetrator in a lineup is not exculpatory. That holding applies equally to the eyewitness's affirmative statement that plaintiff was definitely not the perpetrator. It similarly embraces the eyewitness's statement that the individual depicted in the Visio wanted poster was the same person who committed the Caravan robbery. As this court has explained, that statement is plainly favorable to plaintiff: "By stating that the perpetrators of the [two] robberies were one and the same, Boyle rendered other exculpatory evidence (i.e., her statement during the lineup procedure that plaintiff was not the perpetrator of the Caravan robbery) even more favorable to plaintiff, relevant to two robberies instead of just one." See Op. & Order, Dkt. #116, at 35. Accordingly, the court's proposed language instructs the jury that this element is satisfied as a matter of law.

A reasonable jury nonetheless could find that the evidence at issue was not material. The parties agree that materiality is satisfied "when there is a reasonable probability that, if the

evidence had been disclosed, it would have affected the outcome of the criminal trial, or where the evidence would have put the whole case in such a different light as to undermine confidence in the verdict." See Proposed Jury Charge, Dkt. #153, at 33; see also id. at 38. In arguing that this element is satisfied as a matter of law, plaintiff recites language from this court's order denying summary judgment to defendants on that claim. The context of that language is rejecting an argument that no reasonable jury could find for plaintiff on his Brady claims; it does not support the proposition that a reasonable jury must find for plaintiff on those claims. This court does not deny that plaintiff has adduced ample evidence through discovery that he may present to the jury supporting the materiality of the evidence allegedly withheld. However, this court cannot agree that the anticipated evidence compels that conclusion in light of other inculpatory evidence elicited at the underlying criminal trial. Accordingly, the court's proposed language leaves this determination to the jury.

Finally, with respect to intent, this court finds it unnecessary to repeat the state of mind requirement when discussing this claim as that requirement is introduced to the jury and applied to this claim earlier in the charge.

### E.      Causation

Plaintiff argues that the language proposed by defendants improperly states that the alleged evidence fabrication must proximately cause plaintiff's conviction. See Pl.'s Mem. of Law in Supp. of Proposed Jury Instructions, Dkt. #154, at 9. According to plaintiff, the evidence fabrication need only proximately cause the prosecution—not the conviction. Id. Defendants have offered no response to this position, and the court agrees with plaintiff's position.

**F.      Damages**

The parties disagree regarding the appropriate instruction on compensatory damages. Their primary dispute is the level of specificity: whereas plaintiff seeks to enumerate and define specific types of compensatory damages that the jury can consider, defendants seek to exclude that language. This court agrees with plaintiff that some explanation of the types of compensatory damages sought by plaintiff is proper, and that it will neither usurp the role of the jury nor suggest what the jury should find. See Defs.' Mem. of Law in Supp. of Defs.' Proposed Jury Instructions, Dkt. #156, at 6-7. The proposed language reflects the court's view.

The parties also disagree regarding the propriety of an instruction on nominal damages. Plaintiff contends that a nominal damages charge should not be given because it is for the plaintiff's benefit and because no reasonable jury could conclude that plaintiff did not suffer compensable damages if that jury finds defendants liable for violating plaintiff's fair trial rights. See Pl.'s Mem. of Law in Supp. of Proposed Jury Instructions, Dkt. #154, at 9-11. Defendants oppose this claim. See Defs.' Mem. of Law in Supp. of Defs.' Proposed Jury Instructions, Dkt. #156, at 7-8. In doing so, they focus too narrowly on plaintiff's claim for damages based on the alcoholism he attributes to his conviction and incarceration. Id. That is only a portion of the compensatory damages claimed by plaintiff, which also include physical harm or discomfort, emotional pain and suffering, loss of a normal life, and loss of liberty. See Proposed Jury Charge, Dkt. #153, at 43.

Whereas this court agrees with defendants that a reasonable jury could refuse to award compensatory damages to plaintiff based on his claimed alcoholism, this court cannot agree with defendants that a reasonable jury could find defendants liable but refuse to award compensatory damages entirely. See Morse v. Fusto, No. 07-CV-4793, 2013 WL 4647603, at *22 (E.D.N.Y.

Aug. 29, 2013), aff'd, 804 F.3d 538 (2d Cir. 2015) (finding no error in decision to remove nominal damages charge from jury instruction on evidence fabrication claim because the claim itself requires plaintiff to show deprivation of liberty caused by the evidence fabrication and therefore leaves no room for situation contemplated by nominal damages charge); see also Kerman v. City of N.Y., 374 F.3d 93, 124 (2d Cir. 2004) ("where the plaintiff was indisputably deprived of his liberty, and the conduct of the defendant responsible for the deprivation was found to be unlawful, we have held that the plaintiff is entitled to compensatory, not merely nominal, damages"). Accordingly, this court does not include a nominal damages charge in its proposed language.

It is evident from their most recent submissions that the parties also disagree about the scope of damages plaintiff may recover. Defendants contend that "plaintiff is only entitled to damages for his claim for a denial of the right to a fair trial by fabrication of evidence from the date . . . that the alleged false evidence was communicated to the district attorney up until . . . [defendants] testified" at plaintiff's criminal trial. Letter from Joshua J. Lax dated June 21, 2016, Dkt. #161, at 1. According to defendants, because defendants enjoy absolute immunity for their trial testimony, their having testified at trial cuts off any damages that flow from the evidence fabrication. Id.

This argument is confounding. This court shares plaintiff's concerns regarding its timing and, more importantly, its merits. It is undisputed that plaintiff cannot recover based solely upon testimony offered by defendants at the criminal trial, for which they are absolutely immune from liability. But it does not follow from that fact that defendants can divest plaintiff of damages for their alleged misconduct simply by testifying to that alleged misconduct at a criminal trial. That

result is perverse and contrary to the law governing plaintiff's evidence fabrication claim. <u>See</u> Order, Dkt. #116, at 26-28.

Nor is this court persuaded by defendants' arguments regarding damages on plaintiff's claims for withholding evidence. Defendants argue that plaintiff's damages, should he prevail on his <u>Brady</u> claims, are limited to those occurring between the time of his conviction and the time of his motion pursuant to N.Y. Criminal Procedure Law § 440.01. <u>See</u> Letter from Joshua J. Lax dated June 21, 2016, Dkt. #161, at 2. Plaintiff argues that his damages on these claims are not limited to post-conviction harm, citing cases in which a plaintiff who was never ultimately tried or convicted was nonetheless permitted recovery due to suppression of evidence. <u>See</u> Letter from Joel B. Rudin dated June 23, 2016, Dkt. #162, at 2-3 (citing <u>Sanders v. English</u>, 950 F.2d 1152 (5th Cir. 1992); <u>Jones v. City of Chicago</u>, 856 F.2d 985 (7th Cir. 1988); <u>Russo v. City of Bridgeport</u>, 479 F.3d 196 (2d Cir. 2007)). As plaintiff acknowledges, however, those claims arise under a different legal theory based upon the plaintiff's Fourth Amendment rights. <u>Id.</u> at 3 & n.1.

Given this apparent confusion about the precise damages sought by plaintiff in connection with his claims, and the legal theories underpinning such claims, plaintiff is directed to submit a letter to the court no later than the deadline provided below for additional submissions. Plaintiff must clarify the legal basis for each claim and the damages he seeks in connection therewith. To the extent possible, plaintiff must designate the point at which each claim accrued as well as the timeframe for related damages.

## III.     Scope of Evidence at Trial

The parties have submitted numerous motions <u>in</u> <u>limine</u> regarding the proper scope of evidence admissible at trial.

## A.    Underlying Criminal Proceedings

Many of the motions <u>in</u> <u>limine</u> concern the underlying criminal prosecution and criminal trial. These motions require this court to define what evidence is relevant to <u>Brady</u> claims.

The crux of the <u>Brady</u> claim is how the addition of the allegedly withheld evidence would have affected the criminal trial. The jury will be called upon to determine whether the evidence at issue existed, whether it was withheld, and whether it was material. As the jury instructions explain, evidence is "material" within the meaning of this claim when there is a reasonable probability that, if the evidence had been disclosed, it would have affected the outcome of the criminal trial, or when the evidence would have put the whole case in such a different light as to undermine confidence in the verdict. A <u>Brady</u> claim requires that a criminal trial actually took place. It asks the jury to consider how injecting the evidence allegedly withheld into that trial might affect its outcome. In conducting this analysis, the jury must understand the nature and quality of the inculpatory evidence presented at the criminal trial to properly assess the reasonably probable effect of the evidence allegedly withheld.

In considering what evidence is relevant to these fair trial claims, this court is also cognizant that these claims include a state of mind requirement that defendants acted knowingly or recklessly. As discussed in greater detail above, defendants have signaled their plan to argue that at least some of the wrongful conduct alleged by plaintiff could have occurred as a result of mistake, accident, negligence, or another innocent reason. Because intent is an element of these claims, and because defendants dispute intent, plaintiff must be permitted to adduce evidence of the absence of mistake, accident, negligence, or another innocent reason.

With this legal framework in mind, this court turns to the specific motions <u>in</u> <u>limine</u> briefed by the parties.

As the foregoing discussion makes clear, plaintiff's actual innocence is irrelevant to his fair trial claims. Neither his claim for fabricating evidence nor his claim for withholding evidence requires plaintiff to show that he was actually innocent or that he would have been acquitted but for the misconduct alleged. Poventud, 750 F.3d at 133 ("'While Brady ensures a fair trial, a defendant's right to pre-trial disclosure under Brady is not conditioned on his ability to demonstrate that he would or even probably would prevail at trial if the evidence were disclosed,' much less that he is in fact innocent.") (quoting Osborne v. Dist. Att'y's Office for Third Jud. Dist., 521 F.3d 1118, 1132 (9th Cir. 2008), rev'd on other grounds, 557 U.S. 52 (2009)). Accordingly, evidence offered for that purpose is inadmissible because, to the extent it has any probative value, that probative value is substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting time. Fed. R. Evid. 403. This court excludes evidence of plaintiff's height, which plaintiff argues is relevant to his actual innocence.[6] This court likewise excludes opinions by any witnesses, whether lay or expert, about plaintiff's guilt or innocence. This holding also applies to any evidence that the "pattern" of robberies stopped after plaintiff's arrest.[7]

Certain evidence was presented to the jury in the criminal trial and therefore has relevance to the materiality element of plaintiff's Brady claims. This includes evidence regarding the lineups conducted by DeRienzo as well as the propriety of those lineups. This evidence is properly admissible for two reasons. First, it is relevant to the quality of the evidence adduced

---

[6] To the extent plaintiff seeks to introduce evidence of height differentials between the lineup participants in order to attack the quality of the lineup identifications, he may do so. He may also introduce evidence of plaintiff's height to demonstrate the state of mind of defendants: the fact that the eyewitnesses estimated the height of the perpetrator as somewhat shorter than plaintiff's height may have motivated defendants to fabricate evidence in order to diminish the importance of that discrepancy.

[7] Plaintiff may introduce evidence in the damages phase of the trial that he believes he is innocent of the crimes at issue. It is his belief in his innocence, rather than his actual innocence, that is relevant to the psychological damages he allegedly suffered.

against plaintiff at the criminal trial. Evidence regarding the lineup identifications was introduced at that trial as evidence supporting plaintiff's guilt. The jury in this trial is entitled to understand the nature and quality of that inculpatory evidence so it may properly assess the reasonably probable effect of the evidence allegedly withheld. See Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir. 2001) (in the context of an application for a writ of habeas corpus in which petitioner advanced Brady claim, court analyzed the materiality of the evidence withheld "in light of the evidence adduced against the defendant at trial," and judged that evidence's strength in part by considering the propriety of the eyewitness identifications). Second, this evidence is relevant to DeRienzo's state of mind: to the extent that he willfully and dramatically departed from standard lineup procedures, his defense that his challenged conduct was the product mistake, accident, negligence, or another innocent reason is less credible.

It is unclear to this court whether any or all of the Department of Homeless Services officials on the witness list proposed by defendants testified at the criminal trial. If so, the fact and nature of their testimony is relevant and admissible because it assists the jury in its materiality analysis of the Brady claim. If those witnesses did not testify at the criminal trial, however, they are excluded as witnesses in this trial because their testimony would bear solely on plaintiff's guilt or innocence. Defendants should clarify this point in their revised witness list, discussed below.

Returning to state of mind, this court agrees with plaintiff that the sufficiency of the evidence against plaintiff prior to the occurrence of the defendants' alleged misconduct is relevant to the defendants' states of mind. Plaintiff may not litigate probable cause for his arrest or prosecution, nor is that how he proposes to use this evidence. Instead, plaintiff argues that the paucity of evidence against him provided defendants with motive to fabricate evidence against

him and thereby improve their chances of a successful prosecution. Because this evidence is relevant to state of mind, and because defendants dispute that they acted with the requisite state of mind, such evidence is admissible.

Because it is the role of the jury in this case to determine materiality with respect to plaintiff's <u>Brady</u> claims, evidence regarding the opinions of others on that issue is improper and inadmissible. To the extent such evidence has any relevance to the jury's determination, its probative value is substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting time. <u>See</u> Fed. R. Evid. 403. What matters to the jury is the weight it assigns to the allegedly withheld evidence, not the weight assigned to it by the attorneys who prosecuted plaintiff or reviewed his conviction. Testimony regarding the latter poses a risk of polluting the jury's determination with the opinions of others. The fact that such opinions were held by lawyers, and presented to judges, makes that risk especially great.

Accordingly, proposed witnesses from the Center for Appellate Litigation may not testify regarding reasons for actions taken or not taken by the New York County District Attorney's Office. Specifically, they may not testify that the Conviction Integrity Unit in that office cited the alleged self-identification statements as a reason for not dismissing the criminal charges against plaintiff, nor may they reference the district attorney's comments on the relevance of Ms. Boyle's statements to its decision to recommend dismissal of charges. Such evidence is inadmissible because it intrudes upon the jury's role in assessing the materiality of the allegedly withheld evidence. For these reasons, proposed witnesses from the Center for Appellate Litigation will be permitted to testify only if they can offer relevant testimony that does not concern these excluded areas. In light of these rulings, however, the parties may wish to stipulate

regarding the pertinent chronology of the underlying criminal proceedings in lieu of calling such witnesses at trial.

The same applies to evidence regarding the "thought process" of prosecutors in the District Attorney's Office. Plaintiff presents technical reasons for excluding this evidence, including law of the case and judicial estoppel, see Pl.'s Mots. in Limine, Dkt. #148, at 6-10, but this court is more concerned with its relevance to the issues in this case. Defendants submit that this evidence is admissible because otherwise the jury will be misled about the reasons for vacatur and dismissal. Defs.' Mem. in Opp'n to Pl.'s Mots. in Limine, Dkt. #155, at 3-4. Specifically, defendants are concerned that plaintiff will suggest, or the jury will speculate, that plaintiff was found actually innocent of the crimes at issue. Id. However, this court has already ruled that evidence regarding plaintiff's actual innocence is inadmissible. If defendants request, this court will consider an instruction to the jury that plaintiff's guilt or innocence is irrelevant to this trial, and that the jury should not concern itself with plaintiff's guilt or innocence or with the reasons why his conviction was vacated and his charges ultimately dismissed. But this court will not permit testimony from prosecutors regarding those matters because their opinions are not relevant and they intrude upon the role of the jury as the arbiter of materiality on the Brady claim. Likewise excluded is testimony and evidence concerning findings and opinions of any prosecutors regarding plaintiff's actual innocence. This court agrees with plaintiff that such evidence is irrelevant, prejudicial, and distracting.

The final issue raised by the parties concerns evidence that defendants seek to introduce in order to challenge the causal connection between the misconduct alleged and the injuries claimed. The first type of evidence is the jury's purported rejection of plaintiff's trial defense and trial testimony. According to defendants, "[i]t is clear that plaintiff was convicted because the

jury did not find his testimony credible and also did not find the testimony of his alibi witnesses to be credible." Defs.' Mem. in Opp'n to Pl.'s Mots. in Limine, Dkt. #155, at 5. The second type of evidence is the alleged ineffectiveness of plaintiff's criminal defense counsel. Defendants submit that they "should be permitted to introduce relevant evidence and to argue that the ineffective[ness] of plaintiff's trial counsel was an alternative cause of his conviction." Id. at 4-5. Plaintiff responds that all of this evidence is "irrelevant to the causation analysis and unduly distracting and prejudicial." Pl.'s Mots. in Limine, Dkt. #148, at 10. Specifically, plaintiff argues that neither the alleged ineffectiveness of plaintiff's counsel nor the alleged rejection of plaintiff's defense and testimony were superseding causes of the injuries he claims.

This court is persuaded by plaintiff's argument that the alleged ineffectiveness of plaintiff's counsel and the alleged rejection of plaintiff's defense and testimony were natural and foreseeable consequences—rather than superseding causes—of the injuries plaintiff claims. Plaintiff cites ample case law supporting the well-established proposition that intervening acts that were neither independent of, nor uninfluenced by, the alleged misconduct fail to break the chain of causation. See, e.g., Zahrey v. Coffey, 221 F.3d 342, 352 (2d Cir. 2000) ("it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty").[8] It is reasonably foreseeable that fabricating and

---

[8] The Zahrey court notes that "[t]he initial wrongdoer might avoid liability where the intervening decision-maker would have precipitated the deprivation of liberty, even in the absence of the antecedent misconduct; in that circumstance, 'but for' causation could be claimed to be lacking." Id. at 352 n.8. However, that language is tentative, and it describes an analysis that is virtually impossible in this context. The evidence that defendants allegedly fabricated was tantamount to two separate confessions by plaintiff to at least one of the pattern robberies. It would be difficult to overstate the impact of such evidence on the strategy adopted by criminal defense counsel. The same applies to its impact on the jury's analysis of the credibility of plaintiff and his alibi witnesses. This is also true for the evidence allegedly withheld from plaintiff's criminal defense counsel. Based on the circumstances presented here, this court holds that no reasonable jury could find that intervening actions and decisions broke the chain of causation.

withholding evidence of the type at issue in this litigation could set in motion the matters that defendants seek to elicit. Those matters are not new and independent forces; instead, they are probable consequences.[9]

      This is a sufficient basis to exclude evidence and argument regarding the alleged ineffectiveness of plaintiff's counsel and the alleged rejection of plaintiff's defense and testimony. This court also notes, parenthetically, that the emphasis defendants place on plaintiff's defense strategy and trial testimony is misplaced. The materiality and causation analyses under <u>Brady</u> must focus on the nature and quality of the inculpatory evidence adduced at the criminal trial.[10] A criminal defendant has no obligation to put forth any testimony at a criminal trial; the burden rests always with the government. Whether and how the defendant will cross-examine government witnesses, present an affirmative case, or choose to testify is largely if not entirely responsive to the case put forward by the government. Accordingly, although this court declines to hold that the evidence at issue could never be relevant to materiality or causation, it reiterates that the focus of the <u>Brady</u> analysis must remain on the nature and quality of the inculpatory evidence adduced at the criminal trial and the reasonably probable effect of the evidence withheld in the context of the inculpatory evidence adduced.

---

[9] This ruling means that, should defendants choose to depose plaintiff's criminal defense counsel in advance of trial, her alleged ineffectiveness as well as her trial strategy are beyond the scope of that deposition. In light of the limitations this order places on the scope of her testimony, this court doubts that a full deposition is necessary and urges defendants to instead secure the necessary information through her existing declaration or a supplemental one.

[10] The materiality and causation analyses are the same, but the burden of proof is different. As the First Circuit has explained, a § 1983 plaintiff asserting a <u>Brady</u> claim essentially proves causation twice:

> To recover damages in a civil trial based on such a violation, however, a § 1983 plaintiff must demonstrate a stronger causal link than is inherent in <u>Brady</u>'s materiality standard. Having already shown a reasonable probability that he would not have been convicted but for the withholding of evidence, the plaintiff must then make the same showing by a preponderance of the evidence. In other words, the factual causation inquiry essentially replicates the materiality inquiry with a heightened burden of proof.

<u>Drumgold</u>, 707 F.3d at 49.

### B.     Police Practices and Related Expert Testimony

Three disputes regarding police practices evidence and related expert testimony are pending before this court. The first concerns plaintiff's objections to a memorandum and order of the Honorable Roanne L. Mann, Chief Magistrate Judge. <u>See</u> Mem. of Law in Supp. of Pl.'s Objections to Judge Mann's Mem. & Order, Dkt. #133 (objecting to Mem. & Order, Dkt. #123). The second concerns the admissibility of the NYPD Patrol Guide ("Patrol Guide") and references thereto. <u>See</u> Defs.' Mem. of Law in Supp. of Defs.' Mots. in Limine, Dkt. #145, at 8. The third concerns the admissibility and scope of testimony by John Monaghan, the police practices expert whom defendants propose to call to rebut the testimony of Joseph Pollini.

In her memorandum and order, Chief Judge Mann ruled that plaintiff's police practices expert, Joseph Pollini, is permitted to give expert testimony at trial subject to specific limitations. <u>See</u> Mem. & Order, Dkt. #123, at 2. Plaintiff had proposed that Pollini be permitted to testify to the NYPD's guidelines on lineup procedures and on recording the statements of suspects. <u>Id.</u> at 7. However, Judge Mann limited the scope of this proposed testimony to preclude testimony on three subjects: deficiencies in the lineup procedures employed by DeRienzo, factual inferences regarding whether defendants fabricated the self-identification statements, and opinion testimony regarding whether the challenged conduct constitutes a violation of plaintiff's fair trial rights. <u>Id.</u> at 21.

Plaintiff objects only to the first limitation, arguing that Pollini should be permitted to testify regarding NYPD protocols for conducting investigative lineups and the manner in which the procedures DeRienzo employed in this case deviated from NYPD protocols. <u>See</u> Mem. of Law in Supp. of Pl.'s Objections to Judge Mann's Mem. & Order, Dkt. #133, at 1. According to plaintiff, such evidence will assist the jury in analyzing DeRienzo's state of mind as well as the

materiality component of plaintiff's Brady claim. Id. at 3. This court agrees for reasons discussed above and therefore vacates that portion of Chief Judge Mann's memorandum and order excluding such evidence. Pollini will be permitted to testify regarding lineup protocols and deviations therefrom. In vacating Chief Judge Mann's memorandum and order, this court is mindful of the high standard for doing so. See Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). However, the discussion above setting forth this court's understanding of the elements of plaintiff's fair trial claims leaves this court with the definite and firm conviction that it would be improper to exclude such evidence.

This court will also permit the parties to introduce relevant portions of the Patrol Guide and related testimony. Defendants seek to exclude such evidence because it contains guidelines that are distinct from standards imposed by the United States Constitution. See Defs.' Mem. of Law in Supp. of Defs.' Mots. in Limine, Dkt. #145, at 8-10. Accordingly, defendants argue, the jury could be misled that violations of the Patrol Guide establish violations of the federal constitution. Id. at 9. However, Chief Judge Mann has already ruled—in a memorandum and order unchallenged by defendants—that Patrol Guide evidence is admissible. See Mem. & Order, Dkt. #123, at 18. This court agrees and joins a growing number of courts holding that "[i]n constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful." Jimenez v. City of Chicago, 732 F.3d 710, 721 (7th Cir. 2013). As the Seventh Circuit has explained in a recent case affirming the district court's decision to admit such testimony in a trial of a Brady claim under § 1983, "[the expert's] testimony thus would have helped the jury conclude that the departures from reasonable police practices were so important, severe, and numerous that they supported an inference that

[defendant] acted deliberately to violate [plaintiff's] rights." Id. at 722. Relevant Patrol Guide evidence is therefore admissible, and the parties should designate the portions of the Patrol Guide they seek to use in the revised exhibit list, discussed below.

Plaintiff has moved to exclude, or alternatively to limit, the testimony of John Monaghan, whom defendants have proposed as their rebuttal expert on police practices. See Pl.'s Mots. in Limine, Dkt. #148, at 29. This court rejects plaintiff's Daubert challenge to Monaghan and finds that the arguments plaintiff advances regarding his qualifications are properly considered fodder for cross-examination rather than reasons to preclude his testimony altogether. However, this court will limit the scope of Monaghan's testimony in several respects. First, this court agrees that Monaghan may not testify beyond the scope of Pollini's testimony, as the former has been offered as a rebuttal witness to the latter.[11] Second, Monaghan may not offer any opinions regarding plaintiff's guilt or innocence. Third, Monaghan may not testify regarding the existence of probable cause to arrest or prosecute plaintiff. As the court has explained above, probable cause is relevant only to the mental state of the defendants, so what matters is their understanding of the existence or lack of probable cause, rather than Monaghan's expert opinion thereupon. Fourth, Monaghan may not testify regarding the credibility of others, as such opinions usurp the role of the jury. Fifth, Monaghan may not rely upon this court's summary judgment opinion in his testimony. Finally, Monaghan may rely upon only those portions of the Patrol Guide identified in the revised exhibit list this court orders the parties to submit.

---

[11] The scope of Pollini's testimony is delineated by the memorandum and order of Chief Judge Mann, as amended by this order. However, the remaining restrictions set forth in this paragraph for Monaghan's expert testimony apply equally to the testimony of Pollini at trial—that is, Pollini may not offer any opinions regarding plaintiff's guilt or innocence; may not testify regarding the existence of probable cause or the credibility of others; may not rely upon this court's summary judgment opinion in his testimony; and may rely upon only those portions of the Patrol Guide identified in the revised exhibit list this court orders the parties to submit.

### C. Character Evidence

Defendants have moved to exclude all evidence of their disciplinary histories and prior lawsuits. <u>See</u> Defs.' Mem. of Law in Supp. of Defs.' Mots. in Limine, Dkt. #145, at 4-7. In response, plaintiff seeks to impeach DeRienzo about his admitted involvement in an incident that resulted in suspension from duty.[12] <u>See</u> Pl.'s Responses to Defs.' Mots. in Limine, Dkt. #150, at 4-6. According to plaintiff, that incident entailed DeRienzo drinking while on the job, causing a car accident with a civilian, and failing to timely report the accident to a supervisor. <u>Id.</u> In his deposition, DeRienzo testified that he pled guilty to certain charges in 2003. <u>See</u> Deposition of Donald DeRienzo, Ex. 5 to Decl. of Samuel Shapiro in Opp'n to Defs.' Mots. in Limine, Dkt. #151 ("DeRienzo Dep.") at 103. He acknowledged that he "didn't report the accident to a supervisor" immediately, but he did not recall the specific charge or charges to which he pled guilty. <u>Id.</u> at 104, 114. This court therefore cannot discern based on the record before it whether DeRienzo's failure to report reflected a deliberate effort to conceal or misrepresent his conduct, thus making it probative of his character for truthfulness as plaintiff claims.[13] <u>See</u> Pl.'s Responses to Defs.' Mots. in Limine, Dkt. #150, at 5-6 (citing Fed. R. Evid. 608(b)). Accordingly, the parties are directed to submit all documentation they have discovered or can obtain regarding this particular incident so that the court can assess its admissibility. They must do so by the same deadline set forth below for additional submissions.

Plaintiff has moved to exclude evidence of his prior arrests, convictions, and alleged bad acts. <u>See</u> Pl.'s Mots. in Limine, Dkt. #148, at 19. He argues that such evidence is entirely

---

[12] This court therefore understands that plaintiff opposes defendants' motion to exclude such evidence only in this respect.

[13] Indeed, plaintiff failed to include in the deposition excerpts he submitted certain pages (including pages 118-19) of the deposition that he cites to support his position. Nor were these pages part of the record on summary judgment such that this court can access them there.

inadmissible at the liability phase of the trial. Id. He concedes, however, that his history of alcohol use and alcohol-related convictions may be relevant at the damages phase of the trial. Id. Defendants argue generally that such evidence rebuts plaintiff's claim that the alleged violations of his constitutional rights caused his depression-related alcohol use, as much of this evidence predated the alleged violations. See Defs.' Mem. of Law in Supp. of Defs.' Mots. in Limine, Dkt. #155, at 7. They further argue that plaintiff's criminal history is "necessary to avoid any misconception that jurors might otherwise have that plaintiff's arrest and robbery conviction were his first contact with law enforcement and the criminal justice system" and that this history, combined with other bad acts, is necessary to rebut a misperception that plaintiff's "character is one of a person who had never been in trouble with the law prior to his contact with the defendants in this case." Id. at 7-8.

This court considers the various pieces of evidence plaintiff seeks to exclude in reference to the phase of trial at which he seeks to exclude them.

All of the evidence discussed in plaintiff's motion is hereby excluded at the liability phase of the trial. Defendants have not argued that such evidence is relevant to an assessment of their liability, nor could they credibly do so. Accordingly, the following evidence is excluded from the liability phase of the trial: (1) plaintiff's 1999 and 2014 convictions for Driving While Ability Impaired by Alcohol ("DWAI"), a non-criminal traffic violation, see N.Y. Vehicle and Traffic Law § 1193.1; (2) plaintiff's 2000 conviction for attempted assault in the third degree, a Class B misdemeanor, see N.Y. Penal Law § 70.15; (3) plaintiff's 2014 and 2015 convictions for driving on a suspended license, a non-criminal traffic violation, see N.Y. Vehicle and Traffic Law § 509; (4) all evidence of plaintiff's prior arrests, see Stephen v. Handley, No. 03-CV-6226, 2009 WL 1471180, at *8 (E.D.N.Y. May 21, 2009); (5) all evidence of allegations that plaintiff

has committed domestic violence; and (6) all evidence of car accidents involving plaintiff. Further, because this court understands that the testimony of Dr. Steven Fayer, an expert for defendants, is only relevant to the damages phase of the trial, his testimony on any of these matters is likewise excluded at the liability phase.

At the damages phase, all evidence identified above at 2, 3, and 5 is likewise excluded. Neither defendants nor their psychiatric expert have shown that such evidence could be relevant to the damages claimed by plaintiff. As plaintiff points out, although Dr. Fayer references allegations of domestic violence in his expert report, as well as plaintiff's conviction for attempted assault, he does not draw a specific connection between those allegations and his conclusion that plaintiff does not suffer any significant detrimental effects as a result of his incarceration. See Pl.'s Mots. in Limine, Dkt. #148, at 25-26 (citing Expert Report of Dr. Steven Fayer, Ex. 6 to Decl. of Samuel Shapiro in Supp. of Pl.'s Mots. in Limine, Dkt. #149). Given the lack of such connection, and the extremely prejudicial nature of such allegations, this court precludes Dr. Fayer from testifying on this matter.[14]

This court also excludes all evidence of plaintiff's car accidents and arrests. Defendants insinuate that such evidence is relevant to rebutting plaintiff's claim that the events at issue in this suit precipitated his alcohol use. However, this court finds that whatever limited relevance this evidence has to the cause of plaintiff's damages is substantially outweighed by the danger of unfair prejudice to plaintiff. See Fed. R. Evid. 403. With respect to the car accidents, defendants have offered nothing more than speculation that plaintiff's consumption of alcohol played a role.

---

[14] Should plaintiff attribute loss of relationships with the particular individual(s) who alleged that he subjected them to domestic violence, defendants may ask the court to revisit the admissibility of evidence that such individual(s) accused him of domestic violence, an alternative cause of the loss of such relationships. However, plaintiff's mere mention in the liability phase of the reason he was staying at a homeless shelter when he encountered the police— i.e., that he had split with his live-in girlfriend—does not open the door to this alleged domestic violence.

Further, with respect to the arrests, the parties have not identified the specific charge or charges for which plaintiff was arrested, much less the relationship between the charge or charges and plaintiff's alcohol use. This evidence is excluded.

This court will permit the parties to inquire into plaintiff's 1999 and 2014 DWAI convictions at the damages phase, as they suggest plaintiff's consumption of alcohol in a problematic manner prior to the events at issue in this lawsuit, therefore challenging his attribution of his alcohol use to those events. Although the court acknowledges some prejudice to plaintiff in admitting this evidence, the probative value is not substantially outweighed thereby.

## IV.    Revised Witness and Exhibit Lists

This court hereby orders the parties to meet and confer regarding their proposed witnesses and exhibits in light of the in limine rulings issued in this opinion. The parties must submit revised witness and exhibit lists and revised exhibit binders to the court no later than 10:00 a.m. on Friday, July 1, 2016.

### A.    Revised Witness List

The revised witness list should clarify which witnesses each party intends to call, taking into account the rulings issued in this opinion. The list must state whether the party intends to call that witness in the liability phase, the damages phase, or both. It must also provide a reasonably detailed account of the witness's expected testimony as it pertains to the applicable phase.

On the subject of witnesses, this court now addresses the objection raised by plaintiff in his most recent letter regarding this court's order permitting defendants to depose Ms. Boyle. Both parties acknowledge that Ms. Boyle is an important witness, and this court will permit her deposition to go forward. However, in light of the fact that Ms. Boyle was identified on

plaintiff's Rule 26(a)(1) disclosures, and defendants nonetheless failed to depose her within the discovery period, this court will shift the costs of Ms. Boyle's deposition to defendants. If the deposition is conducted in Memphis, defendants must pay reasonable expenses for travel and accommodation of plaintiff's counsel. If the deposition is conducted in New York City, they must do the same for Ms. Boyle.

### B.      Revised Exhibit List and Exhibit Binders

In preparing the revised exhibit materials, the parties must comply with the following instructions: (1) each exhibit must appear on the exhibit list only once, with the understanding that either side may introduce any exhibit that appears on the list; (2) plaintiff's exhibits must be marked with numbers and defendants' exhibits with letters; (3) exhibits that a party intends to use for impeachment purposes, rather than in its direct case, must be listed separately under a heading for impeachment exhibits; and (4) electronic exhibits must be readable on PC computers, and any video files compatible with Windows or VLC media players.

Any objection to a proposed exhibit must include a detailed explanation of the basis of the objection, as well as a detailed response from the party offering the exhibit explaining why it is admissible. Generalized objections that merely cite a provision of the Federal Rules of Evidence without explanation of its application to that exhibit are insufficient and may result in this court deeming such objections waived.

Finally, the parties must ensure that all exhibits are appropriately redacted.

If the parties wish to retrieve the exhibit binders they previously submitted to the court, they may contact chambers via telephone to arrange pick-up.

## V.     Pretrial Conference

This court hereby schedules a pretrial conference for Wednesday, July 6, 2016 at 2:00 p.m. in Courtroom 8C. All counsel who will try the case must appear in person at that time. The court anticipates ruling, at least preliminarily, on the admissibility of each proposed exhibit. The court will also discuss its proposed jury instructions with the parties and any objections thereto. Trial counsel should be prepared to discuss these matters and any other pretrial issues they wish to raise with the court in advance of trial.

SO ORDERED.


_s/_ _____
Allyne R. Ross
United States District Judge


Dated:          June 27, 2016
                Brooklyn, New York